# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ROCCO CIOFOLETTI, on behalf of themselves and all others similarly situated,<br><br>              Plaintiff,<br><br>     -vs-<br><br>SECURIAN FINANCIAL GROUP, INC., MINNESOTA LIFE INSURANCE COMPANY, SECURIAN LIFE INSURANCE COMPANY and MINNESOTA MUTUAL COMPANIES, INC.,<br><br>            Defendants. | Case No.: 18-cv-03025-JNE-ECW |
| LARRY STOSPAL, on behalf of themselves and all others similarly situated,<br><br>              Plaintiff,<br><br>     -vs-<br><br>SECURIAN FINANCIAL GROUP, INC., MINNESOTA LIFE INSURANCE COMPANY, SECURIAN LIFE INSURANCE COMPANY and MINNESOTA MUTUAL COMPANIES, INC.,<br><br>            Defendants. | Case No.: 18-cv-03047-JNE-ECW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF ACTIONS AND APPOINTMENT OF INTERIM CO-LEAD COUNSEL**

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Consistent with the Manual for Complex Litigation §§ 10.123, 10.22, 11.63 (4th Ed. 2014) and pursuant to Fed. R. Civ. P. 1, 42(a) and 23(g), Plaintiffs in the above-captioned actions (collectively the "Minnesota Actions") move for the consolidation of the Minnesota Actions with the recently transferred *Harrison v. Securian Financial Group*, No. 18-CV-3274-JNE-ECW (the "Harrison Action")[1] and appointment of the law firms of Gustafson Gluek PLLC ("Gustafson Gluek") as Minnesota Co-Lead Interim Counsel and Squitieri & Fearon, LLP ("Squitieri Fearon"), and Wexler Wallace LLP ("Wexler Wallace")) to serve as additional Interim Co-Lead Counsel (collectively "proposed Co-Lead Counsel") in this proposed consolidated class action.

Federal courts in this jurisdiction, and elsewhere, routinely appoint leadership structures of the type proposed here under similar circumstances. *See e.g., In Re: SuperValu, Inc., Customer Data Security Breach Litigation,* Case No. 14-MD-2586-ADM-TNL (D. Minn. Apr. 21, 2015) (appointing two co-leads and a five firm executive committee); *In Re: National Hockey League Players' Concussion Injury Litigation,* Case No. 0:14-md-02551-SRN-JSM (D. Minn. Sept. 19,2014) (appointing three co-leads and an eight firm executive committee); *In Re: Medtronic, Inc. Implantable Defibrillators Litigation,*  Case No. 05-1726-JMR-AJB (D. Minn. Jan 24, 2006) (appointing two co-

---

[1] The Minnesota Actions and the Harrison Action are referred to collectively herein as "the Actions." The Harrison Action was transferred from the Northern District of Ohio to the District of Minnesota on November 29, 2018. On December 20, 2018, the Harrison Action was reassigned to Judge Ericksen as a case related to the Minnesota Actions, which were at that time pending before Judge Ericksen.

leads-including Gustafson Gluek-and 11 firms to steering committee). For the reasons discussed below, proposed Co-Lead Counsel respectfully submit that this Court should do the same.

The proposed Co-Lead Counsel share a breadth and depth of experience that is essential to the prosecution of the cases before this Court.  Each of the proposed Co-Lead Counsel possesses substantial expertise and a record of success in complex class actions including antitrust, and various consumer cases.

The primary goal in appointing leadership in a complex action "is achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litig.* § 10.221 (4th ed. 2004) *("Manual").* Appointing Gustafson Gluek, Squitieri Fearon, and Wexler Wallace as Co-Lead Counsel will best accomplish this goal because their experience and knowledge will enable them to manage this litigation efficiently and effectively.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in the Actions each purport to represent a class of Minnesota Life policy holders whose policies were financed through the Future Income Payments fraudulent funding scheme described in the Complaints.  Plaintiffs allege that Defendants' common wrongful scheme harmed Plaintiffs and class members.  Plaintiffs seek monetary damages, injunctive relief, and other remedies as appropriate.

Defendants moved to dismiss each of the Complaints, and the Parties (in all three actions) stipulated to dismissal of some of Plaintiffs' claims without prejudice with the understanding that Defendants would answer the remaining claims within thirty (30)

3

days and that the Parties would conduct a Rule 26 pretrial scheduling conference within ten (10) days. *See* Stipulation, Dkt. No. 30. On, January 14, 2019, The Court ordered that relief. *See* Order, Dkt. No. 32.

## III.  THE COURT SHOULD CONSOLIDATE THESE ACTIONS FOR THE EFFICIENT PROSECUTION OF THESE RELATED MATTERS

Federal Rule of Civil Procedure 42(a) provides that the Court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *Doe YZ v. Shattuck-St. Mary's Sch.,* Nos. 15-1151 ADM/SER, 15-1154 ADM/SER, 15-1155 ADM/SER, 2016 WL 6594077, at *1 (D. Minn. Nov. 4, 2016) ("[T]he critical consideration[] . . . is whether there is at least one common question of law or fact to justify bringing the actions together." (quoting 9A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer & Adam N. Steinman, Fed. Practice & Procedure, § 2384 (3d ed. 2008)). In exercising  its "broad discretion" to consolidate multiple actions,  the Court should weigh the risk of "prejudice and possible confusion" against the "risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources of common factual and legal issues, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Fratzke v. IC Sys., Inc.,* No. 05-cv-1115 (JRT/RLE), 2007 WL 1114155, at *2 (D. Minn. Apr.  13, 2007) (noting that "the

purpose of consolidation is to encourage convenience and economy of administration of cases and avoid unnecessary cost or delay").

Where, as here, the actions involve "common parties, overlapping legal issues, and related factual scenarios, and the consolidation itself [will] not cause unfair prejudice," then "[c]onsolidation is appropriate." *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.,* 580 F.3d 755, 768 (8th Cir. 2009); *E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 550-51 (8th Cir. 1998) (consolidation appropriate to "avoid the inefficiency of separate trials involving related parties, witnesses, and evidence"); *Arctic Cat, Inc. v. Polaris Indus. Inc.,* Nos. 13-cv-3579 (JRT/FLN), 13-cv-3595 (JRT/FLN), 2014 WL 5325361, at *16 (D. Minn. Oct. 20, 2014) (consolidation appropriate where actions "raise identical issues of law and fact").

Consolidation is appropriate here because these three cases present nearly identical questions of fact and similar questions of law.  Each action is premised on the same factual predicate.  As currently plead, the Minnesota Actions seek to represent the same classes of policyholders and assert claims for, *inter alia,* vicarious liability for wrongful conduct of agents and brokers and unjust enrichment. The Harrison Action seeks to represent largely the same class of policyholders as the Minnesota Actions asserting different claims albeit for similar conduct.

 Consolidating the Actions would greatly improve the efficiency and judicial economy of the litigation by combining discovery, motion practice, and trial and reduce costs for the named parties and the proposed class.  These cases are particularly well-

suited for consolidation because they remain in their earliest phases.  Moreover, there is no risk of prejudice because Defendants have consented to consolidation and the interests of the Plaintiffs in the Minnesota Actions are aligned with the interests of the Plaintiff in the Harrison Action.[2]

## IV.    THE COURT SHOULD APPOINT INTERIM CO-LEAD COUNSEL

### A.    Standard for the Appointment of Lead Counsel Under Rule 23

Selection of interim lead counsel early in the litigation facilitates "efficiency and economy without jeopardizing fairness to the parties." *See Manual* at § 10.22 (interim counsel "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel"). In matters such as this, appointing seasoned lead counsel is one of the Court's key organizational tools. *Id.* §§ 10.224, 21.272. The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* § 21.11. Because lead counsel is charged with the ultimate responsibility of acting on behalf of the class throughout the entire litigation, the Court must appoint lead counsel who is fully capable and qualified to fairly and adequately represent the interests of the class, including through trial if necessary. *Id.* §§ 21.271-72.

---

[2] Counsel expect to file a consolidated, amended complaint for all three actions once the Court has determined the leadership issues.

Under Federal Rule of Civil Procedure 23(g)(3), this Court may "designate interim counsel to act on behalf of a putative class *before* determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3) (emphasis added); *see also Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687, 13-2944, 2014 WL 835174, at *2 (D. Minn. March 4, 2014); *Levitte v. Google, Inc.,* No. 08-cv-03369, 2009 WL 482252, at *2 (N.D. Cal. Feb. 25, 2009). "Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members." *Paraggua v. LinkedIn Corp.,* Nos. 5:12-cv-03088, 5:12-cv-03422, 5:12-cv-03430, 5:12-cv-03557, 2012 WL 3763889, at *1 (N.D. Cal. Aug. 29, 2012) (quoting *White v. TransUnion,* LLC, 239 F.R.D. 681, 683 (C.D. Cal. 2006)).

Fed. R. Civ. P. 23(g)(1) outlines the considerations pertinent to the appointment of class counsel at the time the class is certified and applies equally to the appointment of interim class counsel before certification. *See In re Shop-Vac Mktg. & Sales Practices Litig.,* No. 4:12-MD-2380, 2013 WL 183855, at *1 (M.D. Pa. Jan. 17, 2013) ("The same factors governing the appointment of class counsel apply when appointing interim class counsel."); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United. Potato Growers of Idaho, Inc.,* No. 4:10-CV-307, 2010 WL 3928544, at *1 (D. Idaho Oct. 4, 2010) ("Courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A) when appointing interim counsel."); *Four In One Co. v. SK Foods, L.P.,* Nos. 2:08-cv-03017, 2:09-cv-00027, 2:08-cv-03074, 2:09-cv-00442, 2009 WL 747160, at *1 (E.D. Cal. Mar. 20, 2009) (citing Rule 23(g)(1)'s

requirements and appointing class counsel at initial proceedings); *In re Air Cargo Shipping Servs. Antitrust Litig.,* 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (same, citing cases).

Rule 23(g) sets forth four considerations for the appointment of interim lead class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed R. Civ. P. 23(g)(1)(A)(i)-(iv).  No single factor is determinative; all factors must be weighed to determine who can best represent the class.  Fed. R. Civ. P. 23 Advisory Committee Notes (2003 Amendments).  The primary goal in appointing leadership in a complex action "is achieving efficiency and economy without jeopardizing fairness to the parties."  *Manual* at § 10.221.

The most common and desirable means of selecting class counsel is "private ordering," *See Manual* at § 21.272, where "[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves should be encouraged. *Id.* § 10.22. Plaintiffs' Counsel in the Minnesota Actions here tried to achieve private ordering.  They offered counsel in the Harrison Action a co-lead slot in the leadership organization (one Co-Lead Counsel position for each case). Harrison Action Plaintiff's Counsel refused, instead telling Minnesota Actions Plaintiffs' counsel that they intended to seek sole leadership that excluded counsel from the Minnesota-filed cases.

**B.      Gustafson Gluek, Squitieri Fearon, and Wexler Wallace Meet Rule 23(g)'s Considerations for the Appointment as Interim Co-Lead Counsel**

**1.      The Proposed Interim Co-Lead Counsel are Adequate and Able to Adequately Represent the Interests of the Class**

The Interim Leadership proposes a leadership structure for this case that consists of Dan Gustafson from Gustafson Gluek as Minnesota Interim Co-Lead Counsel[3] and Lee Squitieri from Squitieri Fearon, and Ken Wexler from Wexler Wallace as additional Interim Co-Lead Counsel to lead this litigation on behalf of the proposed class.

Courts in the District of Minnesota have routinely approved similar lead counsel structures in similar circumstances.  *See, e.g., In re: Target Corporation Customer Data Security Breach Litigation,* No. 0:14-md-02522-PAM-JJK (D. Minn. May 15, 2014) (appointing  leadership group consisting of multiple lead counsel); *In re: SuperValu, Inc., Customer Data Security Breach Litigation,* No. 14-MD-2586-ADM- TNL (D. Minn. Apr. 21, 2015) (appointing  two co-leads); *In re: National Hockey League Players' Concussion Injury Litigation,* No. 0:14-md-02551-SRN-JSM (D. Minn. Sept. 19, 2014) (appointing three co-leads); *In re: Medtronic, Inc. Implantable Defibrillators Litigation,* No.  05-1726-JMR-AJB (D. Minn. Jan 24, 2006) (appointing two co-leads).

The Interim Leadership recommended and supported by the Minnesota Plaintiffs is comprised of attorneys who have previously held leadership positions in many complex cases, including antitrust, securities, consumer, insurance products, and ERISA

---

[3] By "Minnesota" Co-Lead Counsel, Mr. Gustafson and his firm would be the point of contact with the Court and Defendants and otherwise perform the role of a "liaison counsel" or "local counsel" in addition to his duties as Co-Lead Counsel.

litigations, and whose law firms have obtained significant recoveries and have committed, and will continue to commit, the resources necessary to see this litigation to a successful conclusion.

Lee Squitieri (Squitieri Fearon) and Ken Wexler (Wexler Wallace) have invested substantial resources in the investigation of the factual and legal bases for the claims here. As you can see by comparing the Minnesota Actions' complaints with the Harrison Action, this is not a mere copycat filing.  Before filing, Squitieri and Wexler (and their colleagues) researched and evaluated the misconduct at issue in this case over a period of many months. They conferred with counsel handling similar claims arising out of the Future Income Payments products loan scheme, researched the infiltration of Future Income Payments products into financial advisers' lineup of products, researched the manner in which financial advisers promoted Future Income Payments products as vehicles to finance insurance premium payments, researched the case docket of *Bureau of Consumer Financial Protection v. Future Income Payments, LLC*, Case No. 8:18-cv-01654 (C.D. Cal.), researched Attorney General press releases and other public materials concerning the state investigations into Future Income Payments (e.g., Pennsylvania, New York, Minnesota, and California), reviewed the file of the New York State Department of Financial Services for *In the Matter of Future Income Payments, LLC*, served FOIA (and state equivalent) requests to obtain investigatory materials, discussed and retained experts and considered the: (i) geographic areas that the Defendants' alleged misconduct affected; (ii) the manner and means of Defendants' participation; and (iii) the extent and activities of advisers within the "Securian Financial Network."  Squitieri filed

10

the first case in Minnesota on October 26, 2018, captioned *Ciofoletti v. Securian Fin. Grp., Inc.*, No. 0:18-cv-03025.  Wexler filed the second case on October 30, 2018, captioned *Stospal v. Securian Fin. Grp., Inc.*, No. 0:18-cv-03047.  Gustafson Gluek PLLC is local Minnesota counsel on both cases.

The complaints filed by Proposed Co-Lead Counsel evidence their extensive pre-filing investigation.  In addition, Proposed Co-Lead Counsel have sought to work cooperatively with Harrison Action Plaintiff's Counsel and with the Defendants to consolidate related cases and to schedule Defendants' time to respond to multiple complaints.

> **2.     Proposed Co-Lead Counsel Have Substantial Experience Successfully Leading Complex Class Actions, Knowledge of the Applicable Case Law, and the Resources to Prosecute This Action Vigorously for the Proposed Class**

As is plain from the attached firm resumes, the Gustafson, Squitieri and Wexler firms each enjoy national reputations for excellence and success in complex commercial litigation and various class action litigations.  *See* Gustafson Declaration, Exhibit A, B and C.  Of course, the Gustafson firm also is well known to this Court from the many cases the firm has prosecuted in this district.

The Minnesota Actions Plaintiffs' proposed Co-Lead Counsel all have substantial experience in leading class actions and repeatedly demonstrate their ability to devote the time and resources needed to best represent class members.  Proposed Co-Lead Counsel have spent many months investigating the facts underlying Defendants' Securian Financial Network through which the Future Income Payments

product scheme was utilized to drive sales of Defendants' products including extensive legal research, communicating with Minnesota Actions Plaintiffs' other attorneys, and by reviewing government files to understand and develop the factual allegations concerning Defendants' practices.

Because Minnesota Actions Plaintiffs' proposed Interim Leadership performed important work that has already inured to the benefit of the Class and performed a broad investigation into Defendants' practices, the first factor of the Rule 23(g) analysis supports appointing Plaintiffs' proposed Interim Leadership.  This dedication to the Class will continue.  Furthermore, the firm biographies, demonstrate that proposed Co-Lead Counsel's law firms are well-funded and well-staffed, having represented plaintiffs in some of the largest class actions in the country.  They are willing and able to commit to this litigation process regardless of its length or complexity.  This factor favors appointment of the proposed Co-Lead Counsel.

> **a.    Dan Gustafson Of Gustafson Gluek PLLC is Clearly Adequate and Able to Represent the Interests of the Class.**

Gustafson Gluek is a law firm committed to the representation of injured individuals, consumers, and small businesses. Cases that the firm has been involved in a leadership role include everything from defective medical devices, to price-fixed products and services, to consumer cases and civil-rights litigation.  The diversity of the firm's practice areas and leadership combined with its wealth of experience has produced settlements and judgments in the hundreds of millions of dollars for various class

members and recently in a $1.51 billion-dollar settlement in the *Syngenta* litigation on behalf of classes of corn farmers and other grain handlers.

As the Court is aware, Gustafson Gluek's practice focuses almost exclusively on plaintiff's complex class actions and related cases. The firm has repeatedly been appointed to leadership positions in complex litigation matters both nationally and in Minnesota federal and state courts. Below are a few of the cases in which Gustafson Gluek has been appointed as part of the leadership:

- *In re Syngenta Litig.*, No: 27-CV-15-3785 (Minn. Dist. Ct.) (co-lead counsel in state court action representing classes of farmers and businesses against Syngenta for release of unapproved GMO corn in key export markets, lowering the US corn prices) (recent approval of $1.51 billion class settlement);

- *In Re Medtronic, Inc. Implantable Defibrillators Products Liability Litig.*, MDL No. 1726 (D. Minn.) (co-lead counsel recovering nearly $100 million on behalf of plaintiffs);

- *In Re: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litig.*, MDL No. 1905 (D. Minn.) (as sole lead counsel, negotiated $268 million settlement on behalf of over 14,000 individual plaintiffs);

- *Precision Associates v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP (E.D.N.Y.) (co-lead counsel, recovering over $360 million in settlements for plaintiffs);

- *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal. and multiple state court actions) (co-lead counsel for indirect purchasers achieving $310 million in settlements);

- *The Shane Group, Inc., et al., v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (E.D. Mich.) (co-lead counsel recovering $30 million on behalf of plaintiff class);

- *In re Vitamin C Antitrust Litigation*, MDL No. 1783 (E.D.N.Y.) (co-lead counsel representing the indirect purchaser class in the national antitrust litigation);

The firm has been involved in dozens and dozens of additional cases in various leadership roles (i.e. Plaintiff's executive committee) across the country.

Dan Gustafson taught pretrial litigation as an adjunct professor at the University of Minnesota for more than ten years and has been named as a leading Minnesota lawyer many times by various industry groups. He will lead Gustafson Gluek's team assigned to this case, which will include the necessary attorneys, paralegals, and support staff. Without a doubt, Gustafson Gluek has the necessary experience and resources needed to successfully lead a complex class action case such as this. A copy of the firm's resume is attached to the Declaration of Daniel Gustafson as Exhibit A.

> **b.    Lee Squitieri of Squitieri Fearon is Clearly Adequate and Able to Represent the Interests of the Class**.

Squitieri Fearon is a nationally recognized class action law firm headquartered in New York. The Firm was founded in 2001 and has always been dedicated to complex and class action litigation, representing individuals and businesses that have suffered from corporate fraud and wrongdoing. The Firm has been lead counsel in numerous successful class action matters:

- *In Re SunTrust Banks, Inc. ERISA Litig.*, 1:08-cv-03384-RWS (N.D. Ga.) (multi-millions dollar recovery for a class of retirement plan participants after years of litigation and appeals, as the parties were preparing for trial);

- *In Re: AIG II ERISA Litigation*, 08-CV-5722 (S.D.N.Y.) (recovered 40 million dollars for plan participants arising out of claims for imprudent offering of employer securities during the financial crisis);

- *In Re: AIG I ERISA Litigation*, 04-CV-9387 (S.D.N.Y.) (recovered 25 million dollars for plan participants arising out of AIG accounting scandal leading to resignation of Chairman M Greenberg);

14

- *Rudell v. Heartland Payment Systems*, 3:16-cv-02229-AET-LHG (D.N.J.) (multi-millions recovery for nationwide class of consumers in a deceptive trade practices class action);

- *DCG&T, et al v. Knight, et al.*, 3:14-cv-00067 (E.D. Va.) (obtained $12 million of additional compensation for shareholders on the eve of trial);

- *Damon Trust v. Ford*, 03-CV-135 (W.D. Mich.) (recovery of $6 million cash in shareholder derivative action just days before trial);

- *CA, Inc. Shareholders' Derivative Litigation Employee Option Action*, No. 06-5026 (E.D.N.Y.) (negotiated the implementation of significant corporate governance enhancements, including a "Clawback Policy" allowing Board Committee to direct CA to recover compensation awards after final results restated);

- *In Re Schering Plough Corporation Shareholders Derivative Litigation*, 01-CV-1412 (D.N.J.) (significant changes to Company's corporate governance structure and management level changes described by Court as "significant" and "substantial" involving "wholesale restructuring of a major corporation's governance and compliance functions.");

- *Bredthauer v. Lundstrom*, 4:10-cv-03132 (D. Neb.) ($4.5 million recovery for participants in the TierOne Corp. retirement plans);

- *Veera v. Ambac Plan Administrative Comm. et. al.*, 10-cv-04191 (S.D.N.Y.) (recovery of $2.55 million cash settlement for participants in Company's 401(k) Plan);

- *In re National City Corp. Sec., Deriv. & ERISA Litig.*, 09-NC-70002-SO (N.D. Ohio) (recovery of $5.6 million cash settlement for participants in Company's ESOP Plan);

- *In re Jamster Marketing Litigation*, MDL No. 1751, Master File No. 05- CV-0819 (S.D. Cal.) (appointed to the Executive Committee for plaintiffs and the Class. Negotiated refunds for a nationwide class of wireless telephone subscribers for unauthorized charges relating to mobile content from Jamster, such as ringtones and wallpaper for mobile phones.);

- *In re Bristol Myers Squibb Company Derivative Litigation*, 02-CV-8571 (S.D.N.Y.) (facilitated recovery of $200 million on behalf of Company and negotiated the implementation of significant corporate governance enhancements for the Company); and

- *Laufer v. Lucent Technologies, Inc.*, 01-CV-5229 (D.N.J.) (recovery of approximately 35% of bond purchasers' losses).

Partners Stephen J. Fearon, Jr. and Lee Squitieri have been named as among the best mass tort/class action lawyers by *The New York Magazine* and *The Best Lawyers In America, Super Lawyers* for most of the last six years and are "AV" rated by Martindale Hubbell. The partners of the firm have received commendations from many courts before whom they have appeared, including:

- *Taylor, v. McKelvey, et al.*, 06-CV-8322 (S.D.N.Y. 2009): approving a proposed settlement of an ERISA class action, the court commended the lawyers by saying "…this is a complex case. The use of ERISA and the antifraud statute of ERISA is novel, and you exploited that novelty by advancing your case effectively."

- *Damon Trust v. Ford*, 03-CV-135 (W.D. Mich. 2003) (J. Quist): $6 million recovery on behalf of Mackinac Financial Corporation f/k/a North Country Financial Corporation in shareholders derivative action. Case settled just 10 days from jury selection and opening statements. This firm (one of two trial counsel) was lauded by the court: ". . . the plaintiffs' lawyers did a good job . . . they were successful almost a hundred percent."

- *In re Waste Management, Inc. Securities Litigation*, 97-CV-7709 (N.D. Ill. 1999): $220 million settlement in which the court favorably commented on the lawyers who actually litigated the case, including Lee Squitieri:

  > "…[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases … in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here … I would say this has been the best representation that I have seen. But I really mean that."

- *In Laufer v. Lucent Technologies, Inc.*, O1-CV-5229 (D.N.J.): Judge Joel A. Pisano in approving a settlement obtained by Squitieri & Fearon as lead counsel noted that Squitieri & Fearon, LLP was "highly experienced in handling complex, sophisticated securities litigation."

- *In In re Seagate Technology, Inc.*, C.A. No. 17932-NC (Del. Ch. Ct. 2002): Vice Chancellor Leo E. Strine commented: "Clearly, plaintiffs hit upon some-some

very interesting facts, and they put in a lot of – a lot of time, and they did highly skilled work against highly skilled opposition."

Squitieri Fearon and its attorneys have a proven leadership record in MDL and class cases, serving as lead or co-lead counsel and achieving significant results on behalf of consumers injured by fraudulent and anticompetitive conduct. Lee Squitieri, individually, has successfully represented clients in securities, ERISA, and consumer litigation throughout the United States. A copy of the firm's resume is attached to the Gustafson Declaration at Exhibit B.

### c. Kenneth Wexler Of Wexler Wallace LLP Is Clearly Adequate and Able to Represent the Interests of the Class.

Wexler Wallace is well-qualified to represent the putative class due to its substantial experience in class action litigation. A copy of the firm's resume is attached to the Gustafson Declaration at Exhibit C.

Kenneth A. Wexler is the founder of Wexler Wallace LLP, which is recognized nationally as a leading firm in complex class action and multidistrict litigation. Mr. Wexler has been practicing complex class action litigation for the better part of his thirty-eight years as a lawyer, and he has been at the forefront of the fight against unscrupulous conduct throughout his career. He has helped pioneer cases targeting the monopolization of pharmaceutical markets, and he has remained in the vanguard of complex antitrust litigation as the law has developed as to both class certification and merits of cases protecting consumer welfare. Mr. Wexler has been designated an Illinois "Super Lawyer" for multiple years running, maintains a top rating on AVVO.com, has taught Complex Litigation as an adjunct professor at Loyola

17

University Chicago School of Law, and has been a panelist on a variety of issues, including the recent changes to the Federal Rules of Civil Procedure, the antitrust implications of reverse payment patent settlements, and consumer class actions.

Wexler Wallace is nationally recognized for its work in complex class action and multidistrict litigation. The firm is regularly asked by co-counsel to work with them and their clients on cases of wide-ranging importance. The firm, which has an AV rating from LexisNexis Martindale-Hubbell and has been named a Highly Recommended Illinois litigation firm since the inaugural edition of *Benchmark Plaintiff* in 2011, has worked hard to earn the respect of judges, co-counsel, and its clients. A description of some of the firm's cases is in the firm's resume, attached to the Gustafson Affidavit as Exhibit C.

Wexler Wallace has served as lead class counsel in federal and state courts throughout the country, repeatedly demonstrating its ability to act in this capacity, A few of the cases on which Mr. Wexler has worked or is working include:

- *Maplevale Farms, Inc. v. Koch Foods, Inc., et al.*, No. 1:16-cv-08637 (N.D. Ill.) (price-fixing in Poultry industry) (pending; Liaison Counsel for commercial and institutional indirect purchasers);

- *In re Pet Food Products Liability Litigation,* MDL Docket No. 1850 (D.N.J) (multi-millions dollar cross-jurisdictional settlement with by U.S. and Canadian classes in connection with manufacture and distribution of tainted pet food; Co-Lead Counsel);

- *District 37 Health and Securities Fraud v. Medi-Span*, No. 07-10988 (D. Mass. 2007) (published inflated pharmaceutical prices) (settlement resulted in a major change in pricing for prescription drugs; Co-Lead Counsel);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (generic suppression reverse payment antitrust case) (pending; Co-Lead Counsel);

- *In re Lipitor Antitrust Litig.*, No. 12-cv-02389 (D.N.J.) (generic suppression reverse payment and *Walker Process* antitrust case) (pending; Co-Lead Counsel);

- *In re Effexor XR Antitrust Litig.*, No. 11-cv-5590 (D.N.J.) (generic suppression reverse payment and *Walker Process* antitrust case) (pending; Plaintiffs' Executive Committee);

- *In re Nexium (Esomeprazole) Antitrust Litig.*, 12-md-02409 (D. Mass.) (generic suppression reverse payment antitrust case tried to verdict) (Co-Lead Counsel);

- *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 2:13-md-02445 (E.D. Pa.) (pharmaceutical product-hop antitrust litigation) (pending; Interim Co-Lead Counsel);

- *In re Hypodermic Products Antitrust Litigation*, Master Docket No. 05-cv-1602 (D.N.J. 2005) (2014 multi-millions dollar antitrust class action settlement on behalf of indirect purchasers in connection with bundling of hypodermic products; Co-Lead Counsel);

- *In re BP Prods. North America*, MDL No. 1801 (N.D. Ill.) (successful settlement of case alleging manipulation of TET propane trading market; Co-Lead Counsel for indirect purchasers).

### 3. Proposed Co-Lead Counsel Will Implement Practices and Procedures to Ensure the Efficient but also Effective Prosecution of the Action

Because of their vast experience leading complex litigation, Gustafson, Squitieri and Wexler are committed to litigating the case efficiently and economically to streamline the litigation. Proposed Co-Lead Counsel are well-versed in using case management strategies to focus litigation. If appointed, Proposed Co-Lead Counsel intend to implement a timekeeping and cost reporting protocol and will avoid duplicating efforts or overstaffing case assignments. And they fully intend to involve Ohio counsel in the prosecution of these cases even though they declined to participate in a three-way co-lead structure that included one firm from each case.

Proposed Co-Lead Counsel suggest that the Co-Lead Counsel have the following duties throughout the course of this consolidated litigation:

1. Formulate, determine and present the position of Plaintiffs on substantive and procedural issues that arise during the litigation;

2. Present such positions in written submissions and oral argument to the Defendants and the Court;

3. Organize and supervise the efforts of Plaintiffs' counsel to ensure that the prosecution of Plaintiffs' claims is conducted effectively and economically;

4. Delegate work responsibilities and monitor the activities of Plaintiffs' counsel to assure that schedules are met and unnecessary expenditures of time and expense are avoided;

5. Speak on behalf of Plaintiffs at all court conferences and hearings;

6. Initiate and conduct discussion and negotiations with counsel for Defendants on all matters, including settlement;

7. Coordinate the initiation of and conduct discovery on behalf of all Plaintiffs consistent with the requirements of the Federal Rules, including the preparation of interrogatories and request for production of documents, the organization and review of documents produced by Defendants and non-parties, and the examination of witnesses via deposition;

8. Consult with and employ experts, as necessary for Plaintiffs;

9.  Review and initiate communications with the Court, including receiving orders, notices, correspondence and telephone calls;

10. Be the primary contact for all communications between Plaintiffs and Defendants;

11. Coordinate the preparation and presentation of all the Plaintiffs' claims and coordinate all proceedings;

12. Encourage full cooperation and efficiency among all Plaintiffs' counsel;

13. Assess Plaintiffs' counsel for the costs of the litigation;

14. Consult with other Plaintiffs' counsel as necessary;

15. Allocate any Court award of attorneys' fees or expenses among Plaintiffs' counsel; and

16. Perform such other duties as are necessary in connection with the prosecution of this litigation.

Proposed Co-Lead Counsel will also seek an order that would establish a protocol for the submission and review of attorneys' fees and expenses as the case proceeds. Proposed Co-Lead Counsel will propose that order require the maintenance of contemporary and detailed time and expense records that would be submitted to Co-Lead Counsel on a monthly basis. Only time and expenses authorized by Co-Lead Counsel and incurred on the matter would be considered compensable. Further, Interim Co-Lead Counsel will propose that certain categories of time would not be compensated. For example, proposed Interim Co-Lead Counsel will suggest that the following categories of time should not be compensable:

21

1.  Read and review time for persons not overseeing or directly participating in a project.

2.  Time spent by each firm creating and compiling the monthly time and expense reports in this Order.

3.  Time related to prosecution of claims for individual clients.

4.  All time and expense descriptions that are incomplete.

5.  Clerical time related to file maintenance.

6.  Time billed by two or more people in the same firm unless both people are required to attend the same court hearing or meeting or are specifically requested to attend or work on a project together.

Additionally, proposed Interim Co-Lead Counsel will closely monitor expenses to ensure that unnecessary or unreasonable expenses are not incurred and/or not compensated.  By proposing these time and expense protocols now, proposed Interim Co-Lead Counsel intend to promote an efficient and economical prosecution of this case from start to finish.

## V.   CONCLUSION

Gustafson, Squitieri and Wexler have the experience, resources and qualification to best carry out the duties of Interim Co-Lead Counsel, pursuant to the guidelines set forth in Manual for Complex Litigation and the Federal Rules of Civil Procedure. Further, consolidation of these cases and the leadership structure they have proposed will ensure efficient management of this case. Accordingly, Minnesota Plaintiffs respectfully move this Court to consolidate these actions and appoint Gustafson, Squitieri, and Wexler as Interim Co-Lead Counsel for the putative class pursuant to Rule 23(g).

Dated: January 15, 2019          Respectfully submitted,


*s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
Daniel J. Nordin (#392393)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dnordin@gustafsongluek.com

Lee Squitieri
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553
lee@sfclasslaw.com

Kenneth A. Wexler
Kara A. Elgersma
**WEXLER WALLACE LLP**
55 W Monroe Street
Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

***Proposed Interim Co-Lead Counsel and***
***Attorneys for Minnesota Action Plaintiffs***