UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ROCCO CIOFOLETTI, and LARRY STOSPAL, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>-vs-<br><br>SECURIAN FINANCIAL GROUP, INC., MINNESOTA LIFE INSURANCE COMPANY, SECURIAN LIFE INSURANCE COMPANY and MINNESOTA MUTUAL COMPANIES, INC.<br><br>            Defendants. | Case No.: 18-cv-03025<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Rocco Ciofoletti and Larry Stospal ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, Squitieri & Fearon, LLP, Wexler Wallace, LLP, and Gustafson Gluek PLLC, bring this complaint against the Defendants based upon investigation of counsel and Plaintiffs' information and belief:

## INTRODUCTION

1.  This is an action to recover damages on behalf of Plaintiffs and members of the proposed class, defined below (the "Class"), who purchased insurance from Defendants using loans from Future Income Payments, LLC (or its subsidiaries) ("FIP") and suffered harm as a result of Defendants' participation in a massive illegal loan scheme perpetrated by FIP and facilitated by the "Securian Financial Network" (defined at ¶¶ 32–39) of agents and brokers.

2. FIP's illegal loan scheme was spread nationwide by Defendants' Securian Financial Network, its army of affiliated financial advisors who steered Plaintiffs and other Class members into FIP products on the premise and promise that cash flow from FIP products would finance Plaintiffs' and Class members' purchases of life insurance products from Defendants MLIC and SLIC.

3. Plaintiffs bring this action as a class action on behalf of themselves and all similarly affected policyholders of Defendants to recover the millions of dollars in premiums paid to Defendants plus monies lost by Class members in the FIP illegal loan scheme.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. In addition, the sum or value of the claims in this case, exclusive of interest and costs, exceeds $5,000,000 and Plaintiffs and other Class members are citizens of states different than the Defendants. Therefore, this Court has jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1332(d).

5. At all relevant times, the claims arose in this District because Defendants are based here and conduct their operations here. As such, the unlawful conduct alleged herein originated in and arose out of this District. Furthermore, Defendants reside and/or maintain a principle place of business in this district. Venue in the District of Minnesota is therefore proper pursuant to U.S.C. § 1391(a).

## PARTIES

6. Plaintiff Rocco Ciofoletti is a resident of the state of South Carolina. Plaintiff purchased an Indexed Universal Life Policy product from Defendants in or about late 2016 through a broker/agent in the Securian Financial Network in conjunction with an "investment" (which was actually an illegal loan) in FIP structured by the agent/broker.

7. Plaintiff Larry Stospal is a resident of the state of Texas. Plaintiff purchased an Indexed Universal Life Policy product from Defendants in or about late 2016 through a broker/agent in the Securian Financial Network in conjunction with an "investment" (which was actually an illegal loan) in FIP structured by the agent/broker.

8. Defendant Securian Financial Group, Inc. ("Securian") is Delaware corporation with its headquarters in Saint Paul, Minnesota. Securian is the holding company of a group of affiliated companies including Defendants Minnesota Life Insurance Company ("MLIC") and Securian Life Insurance Company ("SLIC").

9. Defendant Minnesota Life Insurance Company ("MLIC") is a wholly owned subsidiary of Securian which is domiciled in the state of Minnesota. MLIC sells life insurance and annuity products including the policies and products described here. MLIC operates in 49 states of the United States not including New York.

10. Defendant Securian Life Insurance Company ("SLIC") is a wholly owned subsidiary of Securian which is domiciled in the state of Minnesota. SLIC sells life insurance and annuity products including the policies and products described here. SLIC operates only in New York.

11. Defendant Minnesota Mutual Companies, Inc. ("MMCI") is headquartered in the state of Minnesota. MMCI is the holding company parent of Securian, MLIC and SLIC. MMCI is a mutual company owned by its "members", including, indirectly, policyholders of its insurance subsidiaries products that confer "member" status upon the purchase of a policy such as the policies at issue herein.

## CLASS ACTION ALLEGATIONS

12. The action is brought and may properly be maintained as a class action pursuant to Rules 23(a), 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure. This action is brought pursuant to 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

13. This suit is a class action brought on behalf of a Class consisting of and defined as all purchasers of Defendants' life insurance or annuity products whose premium payments were funded in whole or in part by FIP products from 2012 through the present.

14. Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and the officers, directors, legal representatives, heirs, successors, subsidiaries and/or assigns of any such individual or entity or the owners of the constituents of the Securian Financial Network involved in the scheme.

15. The members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical. Plaintiffs believe that there are hundreds (if not thousands) of proposed Class members.

16. There are numerous questions of law and fact common to Plaintiffs and the Class, including:

    A. whether Defendants conspired to, and/or did participate in FIP's illegal loan scheme;

    B. whether Plaintiff and the Class suffered monetary damages as a result of the Defendants' scheme; and

    C. the proper measure of damages caused by Defendants' scheme.

17. Plaintiffs' claims are typical of the claims of the members of the Class, and they are members of the Class described herein.

18. Plaintiffs are willing and prepared to serve the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to, or which conflict with, the interests of other members of the Class.

19. Plaintiffs' interests are co-extensive with and not antagonistic to those of the absent Class members. Plaintiffs will undertake to represent and protect the interests of absent Class members.

20. Plaintiffs have engaged the services of the undersigned counsel who are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent Class members.

21. The questions of law and fact common to the Class, as summarized above, predominate over any questions affecting only individual members, in satisfaction of rule 23(b)(3), and each such common question warrants class certification under rule 23(c)(4).

22. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Compared to the individualized actions, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

23. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

24. A class action is superior to other available methods for the adjudication of this controversy. Individualized litigation increases the delay and expense to all parties and the court system given the complex legal and factual issues of the case, and judicial determination of the common legal and factual issues essential to this case would be more far more fair, efficient, and economical as a class action maintained in this forum than in piecemeal individual determinations.

## SUBSTANTIVE ALLEGATIONS

**A.** **FIP Illegal Loan/Pension Monetization Scheme**

25. From 2012 through 2018, FIP was conducting the foregoing illegal loan scheme involving the "purchase" of pension payment streams from "consumers" which in reality were illegal, usurious loans. FIP marketed its "product" to consumers as a purchase and sale of a portion of that consumer's future pension stream at a "discount" in

exchange for providing the consumer with a lump sum payment.  The consumer is obligated to repay to FIP a larger total amount through a series of monthly payments.  That series of payments in the aggregate is always larger than the lump sum received by consumers.  FIP represents to consumers, among other things, (i) that these lump-sum payments are not "loans", (ii) that there is no applicable interest rate, and (iii) that the cost of the lump-sum advance is less than that of potential alternative sources of funds, such as credit cards.

26.     In fact, FIP's product is a loan and is more costly than alternative financial products to which FIP draws comparisons.  FIP misrepresents material aspects of their product.  FIP has thus engaged in deceptive acts and practices as well as other violations of Federal consumer financial law.

27.     FIP raised funds from a variety of sources including from "investors," such as Class members, to provide contracting consumers with lump sum payments for their pensions.  Class members, who "purchase" through FIP the consumer's pension-generated cash flow, used that cash-flow to invest in life insurance policies from Defendants through the structure described below.

28.     FIP offers and provides the income streams from these consumers to third-party "investors", usually as 60- or 120-month cash flow payments, at interest rates between 7% and 12% for their investment.  In connection with the illegal loan scheme alleged herein, Plaintiff and Class members are the "investors."

29. The illegal loan scheme was fueled by agents and brokers in the Securian Financial Network who structured the FIP products together with Defendants' products and sold same to "investors."

**B.    Securian's Participation In The FIP Scheme Helps Life Policy Sales**

30. FIP solicits "investors" and receives referrals from financial advisors. After an investigation, the Bureau of Consumer Financial Protection alleged in its Complaint that FIP "receives referrals from financial advisors." Complaint ¶ 45, Case No. 8:18-cv-01654, *Bureau of Consumer Financial Protection v. Future Income Payments, LLC et al.* (C.D. Cal.).

31. "Investors," including Plaintiffs and members of the Class, paid a lump sum to FIP to obtain a stream of structured cash flows, which under the structure created by the Securian Financial Network agents and brokers was used on behalf of Plaintiffs and the Class to purchase life insurance policies from defendants, MLIC and SLIC.

32. MLIC and SLIC through agents and brokers in the Securian Financial Network, sold such policies to Plaintiffs and members of the Class and the same agents and brokers structured the life insurance policy sales so that the payment stream from FIP would be directed to MLIC or SLIC to pay for the life policy sold to Plaintiffs and members of the Class.

33. MLIC offers to connect customers with "a financial advisor associated with the Securian Financial Network . . . to provide expertise and create strategies to help you and your family achieve your financial goals." Defendants, on their website, boast: "[we] serve nearly 19 million customers through 5300 employees and representatives." Several

of the financial advisors implicated in the offering and sale of FIP loans were/are part of the Securian Financial Network.

34. MLIC is an active participant in this "network" as it admits on its website, "We equip our financial advisors with suitable choices to serve clients and their unique situations."

35. MLIC, according to its website, offers and sells products through "a network of more than 1,100 registered financial advisors" who "offer a range of life insurance, annuities, and wealth management solutions."

36. According to published reports, approximately 370 financial advisors put their clients in FIP's products who were then steered to utilize the FIP monthly payments to fund insurance products such as MLIC's indexed universal life insurance policies.

37. Among the financial advisors there are numerous advisors in The Securian Financial Networks, JB Marshall Financial; Secure Investment Management; Founders Group, Inc.; Linklater Financial Group; Horner, Townsend & Kent; Future Secured Financial; DTS Financial Services; Shorwest LLC; and Christopher Dixon.

38. In or about April 2018, FIP ceased making payments to income stream purchasers, *i.e.*, Plaintiffs and Class members, and as a result the Minnesota Life policies purchased by Plaintiffs and the Class could no longer be funded and subsequently Plaintiffs and other Class members suffered lapse of policies, surrender charges and other penalties in addition to having paid for policies which never accumulated enough value to provide the Plaintiffs and Class members with a source of retirement income, the objective of the life insurance policy purchase.

**C.     Defendants Had Actual And Constructive Notice Of The FIP Scheme**

39.     As demonstrated below, Defendants had ample notice of FIP's illegal loan scheme through reports of actions by state regulatory agencies' enforcement actions against FIP and its convicted felon founder Scott Kohn. In addition, Defendants had legal obligation under the USA Patriot Act and/or the Bank Secrecy Act to be aware that the Securian Financial Network was utilizing the FIP illegal loan scheme to finance the purchase of MLIC and SLIC life insurance products. Finally, Defendants had ample opportunity and ability to bar its agents and brokers in the Securian Finance Network from using the FIP illegal loan scheme to finance life insurance policy purchases by Class members.

40.     FIP has been the subject of state regulatory investigations since 2014, with various states including New York, alleging that FIP's business model of "buying pensions" was actually an illegal lending scheme.

41.     Numerous other state and local regulators and agencies also have concluded that FIP's product is a loan for purposes of applicable state laws and have ordered FIP to cease its operations. These agencies include the California Department of Business Oversight; the Los Angeles City Attorney's Office; the Minnesota Attorney General; the Colorado Attorney General; the Massachusetts Attorney General; the North Carolina Attorney General; the Iowa Attorney General; the Virginia Attorney General; the Oregon Attorney General; the Oregon Department of Consumer and Business Services; the Illinois Attorney General; the Illinois Department of Financial and Professional Regulation; the Maryland Attorney General; the Maryland Commissioner of Financial

Regulation; the Pennsylvania Department of Banking and Securities; the New York State Department of Financial Services; and the State of Washington Department of Financial Institutions.

42.     In mid-2017, Minnesota Attorney General Lori Swanson filed a lawsuit against FIP and a subsidiary alleging that FIP was making illegal loans disguised as purchases of pensions which obligated the borrowers ("sellers" of pension rights) to repay the loans, termed "purchases", at effective rates of 240% and at average rates of 139% annually.

43.     Insurers who sell "covered products" such as SLIC and MLIC and their parent companies are subject to compliance and reporting requirements of the USA Patriot Act.  The "covered products" include life insurance products with cash value or investment features and/or non-group annuity contracts.  Under these regulations, each insurance company must develop and implement a risk-based anti-money laundering ("AML") policy reasonably designed to prevent the company from being used to facilitate money laundering "and other financial crimes associated with the insurance company's products."

44.     The scope and objective of these AML laws is not limited to money laundering or terrorist financing only.  In or about 2005, Director of Financial Crimes Enforcement Network ("FinCEN") William J. Fox announced:

> These rules represent key steps in ensuring that the Bank Secrecy Act is applied appropriately to these businesses and in protecting the insurance industry from potential abuse by those seeking to launder money or finance terrorism or other illicit activity.

11

45. Also, according to regulators, the insurer's AML program must encompass the activities of agents or brokers who sell "covered products" because insurance agents or brokers are an integral part of the insurance industry due to their direct contact with customers" and therefore the insurer's AML "policies, procedures and internal controls" must be designed "to integrate its agents and brokers into its anti-money laundering program and to monitor their performance with its program."

46. In early 2012, FinCEN and the National Association of Insurance Commissioners ("NAIC") reached an agreement to incorporate the initial BSA/AML examination within the regulatory examinations performed by the Department of Insurance of each company's domiciliary state.  NAIC Financial Condition Examination Handbook 2012, Section 1.c., pp. 98–101.

47. The United States Treasury Department's "bottom line" was explained in its "Frequently Asked Questions", Anti Money Laundering Program And Suspicious Activity Reporting Requirements For Insurance Companies":

> <u>Under the Bank Secrecy Act, financial institutions are required to identify assess, and mitigate risk that their businesses will be abused by criminals</u>.

48. Accordingly, Defendants were legally mandated to monitor their own activities as well as those of the Securian Financial Network to prevent FIP's and broker/agent's promotion of financial crimes utilizing Defendants' products.

**FIRST CAUSE OF ACTION**

**AGAINST ALL DEFENDANTS UNDER THE DOCTRINE OF RESPONDENT SUPERIOR GIVING RISE TO STRICT**

## VICARIOUS LIABILITY FOR THE WRONGFUL CONDUCT OF AGENTS AND BROKERS IN THE SECURIAN FINANCIAL NETWORK

49. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if more fully set forth herein.

50. At all times relevant to this action a principal/agent relationship existed between Securian, SLIC and MLIC on the one hand and the agents/brokers in the Securian Financial Network on the other hand.

51. The broker/agents in Securian Financial owed fiduciary duties to Plaintiffs and Class members in connection with the transactions at issue herein.

52. The acts and omissions of the broker/agents in the Securian Financial Networks constitute *per se*, breach of fiduciary duties owed to Plaintiffs and Class members. All agents/ brokers in the Securian Financial Network had apparent authority to use FIP illegal loan scheme payments to fund SLIC and/or MLIC premium payments. Inclusion of agents/brokers in the Securian Financial Network caused Plaintiffs and Class members to reasonably, and objectively believe that the agents/brokers had Defendants' authority to put Class members into the FIP illegal loan scheme in order to finance the premium payments for MLIC and SLIC products purchased by Class members.

53. Defendants are strictly liable for the acts of their agents/brokers in the Securian Financial Network because such acts (i) inured to the benefit of Defendants who sold more policies than they otherwise would have; (ii) were ratified by MLIC and SLIC; (iii) Defendants created the appearance that such acts were authorized; (iv) such acts

were within the actual authority of the agents/brokers in the Securian Financial Network; (v) it was only as a result of the agent/broker's role in the Securian Financial Network that the agent/brokers could accomplish the illegal loan and insurance scheme; and (vi) Defendants had actual or constructive knowledge of FIP's illegal loan scheme.

54. Defendants involved their clients in the FIP illegal loan scheme which could not be justified, excused nor could any responsibility be shifted to, or borne by Plaintiffs or Class members.

55. The wrongful acts or omissions of the agents/brokers in the Securian Financial Network in connection with the FIP illegal loan scheme to finance premium payments to MLIC and/or SLIC all occurred within the scope of the agreement between Defendants and the agents/brokers and/or was ratified by Defendants, expressly or impliedly through Defendants consent or knowing acquiescence.

56. As a result of the acts and/or omissions of agents and brokers in the Securian Financial Network, Plaintiffs and Class members have suffered loss and damage.

57. As a result of the foregoing, all Defendants are jointly and severally liable to Plaintiffs and the Class.

## SECOND CAUSE OF ACTION

### UNJUST ENRICHMENT

58. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs with the same force and effect as if more fully set forth herein.

59.   Defendants have unjustly benefitted through their illegal loan scheme that Defendants acquired only as a result of perpetuating and participating in the FIP scheme.

60.   Defendants earned these benefits at the expense of Class members and cannot justly retain them.

61.   Equity and good conscience require full restitution of the monies received by Defendants, directly and indirectly, from Class members.  This includes not only the monies of the Class members, but also any profits made from its use of this money.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs respectfully request that the Court enter judgement against the Defendants, as follows:

A.   Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiffs and the Class, as a result of the Defendants' vicarious liability for wrongful acts;

B.   Order disgorgement of all monies received by Defendants as a result of sales of policies in connection with the illegal loan scheme;

C.   Awarding Plaintiffs and the Class their reasonable attorney's fees and costs, to the fullest extent allowed by law; and

D.   Granting all such additional or further relief as this court deems just and equitable under the circumstanes.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

| | |
|---|---|
| Dated:  March 22, 2019 | s/Daniel E. Gustafson |

Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
Daniel J. Nordin (#392393)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dnordin@gustafsongluek.com

Lee Squitieri (*pro hac vice*)
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
lee@sfclasslaw.com

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

*Interim Co-Lead Counsel for Proposed Class*