# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ROCCO CIOFOLETTI, et al., on behalf
of themselves and all others similarly
situated,

               Plaintiff,

        -vs-

SECURIAN FINANCIAL GROUP, INC.,
et al.,

               Defendants.

Case No.:  18-cv-03025

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
CLASS CERTIFICATION**

Lee Squitieri (*pro hac vice*)
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022

*Attorneys for Ciofoletti Plaintiff*

Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
Amanda M. Williams (#341691)
Daniel J. Nordin (#392393)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN  55402

*Attorneys for Ciofoletti and Stospal Plaintiffs*

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603

*Attorneys for Stospal Plaintiff*

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................ 4

III.  THE CLASS SHOULD BE CERTIFIED ..................................................... 5

A. Rule 23(a)'s Requirements Are Met ..................................................... 6

1.  The Class Is Sufficiently Numerous ................................................ 6

2.  The Claims Present Questions Of Law And Fact Common To The Class ... 6

3.  Plaintiff's Claims Are Typical Of Those Of The Class ................................. 8

4.  Plaintiffs And Their Counsel Will Adequately Represent The Clas ............. 9

(a) Plainiffs' Counsel Is Qualified ................................................. 9

(b) Plainiffs' Do Not Have Interests Antagonistic To The Class ............... 10

B. The Class Meets The Requirements Of Rule 23(b) ......................................... 10

1.  Injunctive Relief Certification Under Rule 23(b)(2) Is Appropriate ........... 10

2.  Certification Of An 23(b)(3) Class Is Appropriate ...................................... 11

(a) Breach Of Fiduciary Duty Claim ............................................................. 12

i.      The Existence Of A Fiduciary Duty ............................................. 12

ii.     Breaching Conduct ........................................................................ 14

iii.    Causation and (4) Damages ......................................................... 15

(b) Unjust Enrichment ................................................................................... 15

(c) Vicarious Liability And Aiding And Abetting Claims ............................ 17

i

(d) Choice Of Law .......................................................................... 18

  i.  Minnesota Has Significant Contacts With Class Members'
    Claims ....................................................................... 18

  ii.  Potentially Applicable Laws Are Substantively Similar
    And Therefore Minnesota Law May Be Applied ....................... 20

3. A Class Action Is Superior To Other Available Methods For
  The Fair And Efficient Adjudication Of The Controversy ......................... 24

 (a) Class Members' Interest Controlling
   The Prosecution Of Separate Actions ..................................... 24

 (b) Commencement Of Other Litigation ..................................... 25

 (c) Desirability Of Concentrating Claims In One Forum ........................... 26

 (d) Manageability Of The Class Action ..................................... 26

IV.  CONCLUSION.................................................................. 27

## I.    INTRODUCTION

This class action is brought on behalf of purchasers of products issued by defendants Minnesota Life Insurance Company ("MLIC") (licensed in all states except New York) and/or Securian Life Insurance Complaint ("SLIC") (licensed only in New York), both wholly owned subsidiaries of defendant Securian Financial Group, Inc. ("SFG") and defendant Minnesota Mutual Companies, Inc. (collectively the "Securian Defendants" or "Securian") from May 1, 2013 (the date the State of Colorado began investigating FIP) through December 31, 2018. Plaintiffs and class members purchased these policies through Securian agents and brokers who sold and marketed the policies as part of a package that included an illegal financial product from a fraudulent enterprise known as Future Income Products, Inc. ("FIP").[1] The FIP product was marketed to plaintiffs and class members by Securian agents and brokers who promoted it as a way to finance the insurance policy premiums for the policies on which the Securian agents and brokers would earn commissions.

That illegal financial product exposed the class members to tax liability, loss of capital, and illegal fees and charges. When FIP eventually collapsed under the weight of over 20 state regulatory agency suits and sanctions and a suit by the United State Consumer Financial Protection Bureau, plaintiffs and class members' source of premium payment financing was lost as was class members " investment " in FIP products.

---

[1] Future Income Products, Inc. is not named as a defendant and its presence in the case is superfluous inasmuch as over 20 states have declared its products illegal and prohibited the sale thereof.

Plaintiffs and class members suffered severe loss and damage in the form of lost monies spent on the FIP product, tax liabilities for monies withdrawn from "qualified" accounts to buy the FIP product and/or to pay premiums on the policies; the actual premium payments for policies being illegally sold by Securian agents and brokers; and valuable accrued policy benefits and other benefits of the polices. The foregoing constitutes some or all the losses suffered by plaintiffs and class members.

The Securian Defendants were fiduciaries of plaintiffs and class members as a result of defendants' conduct, superior knowledge, their marketing and promotion of their financial expertise and their entreaties to the public in promotional materials to engage with the "Securian Financial Network" to address class members' insurance needs and available products. The fiduciary duties breached by Defendants upon which the claims are based flowed from the fiduciary relation between plaintiffs and class members on the one hand and the Securian Defendants on the other hand. The fiduciary relationship directly between Securian and class members (or indirectly between class members and Securian via Securian's network of financial advisers who were Securian's agents and defendant Shurwest), can be established as to all class members through the common proof of uniform broker and agent contracts between Securian and proof of Securian's self-created and promoted "Securian Financial Network" and Securian's own admissions about the function and purpose of the Securian Financial Network.

The fiduciary breach can be established from the common proof of the indisputable fact that the FIP products were outlawed as illegal products by over 20 states beginning in 2015. A fiduciary surely breaches fiduciary duties to plaintiffs and class

2

members when the fiduciary sells an illegal financial instrument and directly or indirectly profits from class members purchase thereof and/or use thereof to produce insurance products from MLIC and/or SLIC.   Nonetheless, Securian Defendants allowed their agents to market and sell these products to class members as a vehicle for premium financing means.   The liability of defendants Minnesota Life Insurance Company ("MLIC") and Securian Life Insurance Company ("SLIC") and Securian financial Group, Inc either directly or vicariously through Shurwest LLC ("Shurwest")[2] and/ or Securian Defendants'[3] nationwide network of agent/broker financial advisors arises from  a core background of operative facts.   Accordingly establishing defendants' fiduciary relationship with plaintiffs and class members and duties as a result thereof  And breaches of such duties  and the  class members' purchase of insurance policies in conjunction with the illegal FIP product can all be established through common proof.

---

[2] Shurwest is named as an additional defendant in Plaintiffs' Proposed Second Amended Consolidated Complaint motion for leave to amend filed on December 2, 2019 ("SACC").  *See* Declaration of Lee Squitieri dated December 2, 2019 "Sq. Decl." Ex. 1 ([Proposed] Second Amended Consolidated Complaint).   Although Plaintiffs are not currently seeking certification of a class as to Shurwest, Plaintiffs allege in the SAAC (as reflected here) that Shurwest played an integral role in the alleged breaches of fiduciary duty and unjust enrichment, either directly, vicariously, or as an aider and abettor of the Securian Defendants. Plaintiffs intend to seek certification of the class as to Shurwest as soon as is practicable after Shurwest joins issue in this action.

[3] The Securian Defendants are part of a family of companies whose ultimate parent holding company is Defendant Minnesota Mutual Companies, Inc. ("MMCI") *See* Decl. Ex. 2 (ML0000641 – Organizational Chart of Minnesota Mutual Companies, Inc. as of January 1, 2019). Defendant Securian Financial Group ("SFG") is a subsidiary of MMCI. *Id.* Minnesota Life Insurance Company (MLIC) is wholly owned subsidiaries of SFG.  *Id.* Securian Life Insurance Company (SLIC) is a wholly owned subsidiary of MLIC. *Id.*

As explained in detail below, class certification is appropriate because each of Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are met. The proposed class is comprised of hundreds of members whose joinder is impracticable due to their geographic dispersion. Moreover, Plaintiffs injuries, which resulted from Securian Defendant's common course of conduct, are identical (except to amount) to those of the Class. Plaintiffs have no conflicts of interest that would impede the vigorous prosecution of the case. Proposed Class Counsel possesses the requisite experience and resources to successfully prosecute this matter as a class action.

Additionally, the predominance and superiority requirements of Rule 23(b)(3) are also satisfied. Each of the elements of the breach of fiduciary duty claims, aiding and abetting claims, vicarious liability claims, and unjust enrichment claims predominate over any individual issues and can be proved on a class-wide basis based on common facts. This class action is also a superior means of litigating Class Member claims because it is easily manageable, provides redress to Class members, many of whom would otherwise be unable to effectively pursue individual claims, and allows for the most efficient use of judicial resources. Finally, the 23(b)(2) requirements are also satisfied as demonstrated herein.

Accordingly, class certification is appropriate under both Rule 23(b)(2) and (b)(3).

## II.    STATEMENT OF FACTS

The Statement of Facts set forth in the Declaration of Lee Squitieri dated December 2, 2019 is the source of facts set forth in this Memorandum of Law.

### III.   THE CLASS SHOULD BE CERTIFIED

Federal courts have "broad discretion in determining whether or not to certify a class under Rule 23." *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995). *See also Rilley v Money Mutual*, LLC 329 FRD 211,215 (D. Minn. 2019) (same). In exercising its discretion, the district court must conduct a "rigorous analysis to ensure that all requirements of Rule 23 have been met." *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015) (citation omitted). The court's analysis "may overlap with the merits" of the parties' claims and defenses because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). ("Class certification is not the time to address the merits of the parties' claims and defenses.") However, "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

To the extent the court considers the merits, it should not resolve merits disputes at the class certification stage. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011). Courts may look beyond the pleadings only to inquire into whether questions affecting the class are susceptible to common proof in light of the evidence. *Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005) ("the court must look only so far as to determine whether... common evidence could suffice to make a prima facie

case for the class."). "When a question arises as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class." *Khoday v Symantec Corp.*, No 11-180, 2014 WL 1281600, (Mar. 13, 2014 D. Minn.), *quoting City of Farmington Hills, supra* 281 FRD at 31.

### A.   Rule 23(a)'s Requirements Are Met

#### 1.   The Class Is Sufficiently Numerous

The court must first decide whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Based on data provided by the Securian Defendants, there are hundreds of class members whose joinder is impracticable due to the geographic dispersion of the class members and the relatively small size of their claims. *See* Ex. 17 (List provided by the Securian Defendants of individuals who Financed MLIC an SLIC life insurance policies with FIP Products).

#### 2.   The Claims Present Questions Of Law And Fact Common To The Class

Next, Rule 23(a)(2) requires Plaintiffs to demonstrate the existence of common questions of law and/or fact.  A common question is one "for which a prima facie case can be established through common evidence." *Zurn*, 644 F.3d at 618. The requirement does not mandate that all such questions be common to every member of the Classes or that individuals be identically situated. A plaintiff satisfies the commonality requirement when a legal question linking the class members drives the resolution of the litigation. *Dukes*, 564 U.S. at 350; *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1031 (D. Minn. 2007); *accord Cruz v. TMI Hosp., Inc.*, No. 14-CV-1128 (SRN/FLN), 2015

6

WL 6671334, at *7 (D. Minn. Oct. 30, 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). A common question exists where plaintiffs "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation omitted). Here, common evidence will be used to prove (among other things) whether Defendants were fiduciaries; whether the Securian Defendants sold illegal FIP Products to class members to finance their MLIC and SLIC policies; whether Plaintiffs and the class were injured as a result of Securian Defendants' conduct; and the proper measure of damages caused by Defendants' conduct; whether the Securian Defendants were unjustly enriched from the sale of MLIC and SLIC life insurance policies financed by FIP Products; whether the Securian Defendants are liable vicariously for the acts and omissions of their agents, including Shurwest and the Securian Financial Network financial advisors with whom class members dealt to purchase their policies; and whether Plaintiffs and the class suffered monetary damages as a result of the Securian Defendants' fiduciary breaches, and other wrongful conduct. *See* Sq. Decl. Statement of Facts, ¶¶ 40-58; 60-64.

Common questions underlying this litigation focus solely on Securian Defendants' uniform course of conduct to establish the elements of plaintiffs' and class members' claims. The conduct of any individual class member other than the objective facts of whether they purchased FIP products and used same to finance premiums for Securian products is not at issue as there are no issues of reliance or class members' knowledge relevant to establishing the claim. As detailed in the Statement of Facts, Plaintiffs will

prove the elements of their claims and class members' claims through common proof. *See* Sq. Decl. ¶¶ 62-64.

These common questions regarding Securian Defendants' conduct under the claims of all class members. Thus, Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement.

### 3.    Plaintiffs' Claims Are Typical Of Those Of The Class

The typicality requirement of Rule 23(a)(3) focuses on the similarity of the legal and remedial theories behind the claims of the Plaintiffs and the class members, not on their personal characteristics. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982), *cert. denied*, 460 U.S. 1083 (1983). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). *See also Soderstrom v. MSP Crossroads Apts., LLC,* 2018 U.S. Dist. Lexis 17110, *14 (D. Minn. Feb. 2, 2018) ("typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff."). Further, a finding of typicality does not require that plaintiffs' and class members' damages be exactly the same; the extent of injury may differ. *See Mund v. EMCC, Inc.* 259 F.R.D. 180, 185 (D. Minn. 2009) ("While their damage claims will likely differ, there are no indications that those differences . . . otherwise override the advantages of resolving the common, disputed contract question in a common proceeding"); *Midwestern Mach. v. Northwest Airlines, Inc.*, 211 F.R.D. 562, 570 (D. Minn. 2001).

8

Here, proof of Plaintiffs' and class members' claims will require the same evidence – evidence that the Securian Defendants were fiduciaries (through their agents) sold illegal FIP Products to class members to finance their policies. Plaintiffs satisfy the typicality requirement because each class member purchased a MLIC or SLIC policy along with a FIP Product intended to finance the policy.

### 4. Plaintiffs And Their Counsel Will Adequately Represent The Class

The named Plaintiffs satisfy Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement Plaintiffs must show that (1) the representative party's attorney is qualified, experienced, and generally able to conduct litigation, and (2) that the suit is not collusive, and plaintiff's interests are not antagonistic to the class. *In re Workers 'Comp.*, 130 F.R.D. 99, 107 (D. Minn. 1990). Both requirements are met here.

#### (a) Plaintiffs' Counsel Is Qualified

Plaintiff counsel's has substantial experience in litigating, trying, and successfully resolving class action litigation. Sq. Decl. Exhibits 34, 35 and 36, firm resumes of Plaintiff's counsel. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3.24 at 3-133 n.353. Counsel here satisfy this requirement.

9

**(b)** **Plaintiffs Do Not Have Interests
Antagonistic To The Class**

Here, Plaintiffs have no interests that are antagonistic to the interests of the proposed class. Although Plaintiffs have accepted MLIC's offers of rescission they have not released any claims against any of the defendants.' *See* Sq. Decl. Ex. 34. Each Plaintiff is aware of his or her duties as a class representative and has already assumed those duties. These representatives, with the assistance of their counsel, will vigorously and capably press the claims of the class.

**B.** **The Class Meets The Requirements Of Rule 23(b)**

**1.** **Injunctive Relief Certification
Under Rule 23(b)(2) Is Appropriate**

Certification for injunctive relief is appropriate under Rule 23(b)(2). A Rule 23(b)(2) class is appropriate when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The (b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro-North Commuter R.R. Co.*, 276 F.3d 147, 162 (2d Cri. 2001). "Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safe guard absent class members 'interests and thereby satisfy the strictures of due process." *Id.* at 165.

10

Here, the Securian Defendants have acted and refused to act on grounds that apply generally to the class. Plaintiffs seek injunctive relief requiring the Securian Defendants to rescind the class members 'policies and refund their premium payments as well as any other moneys Defendants have unjustly retained.

### 2.   Certification Of An 23(b)(3) Class Is Appropriate

Under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" in order to certify a class. Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "when generalized evidence proves or disproves the elements of the claim on a class-wide basis, because such proof obviates the need to examine each class member's individual position." *Rilley v. MoneyMutual, LLC,* 329 F.R.D. 211, 218 (D. Minn. 2019), *quoting Buetow v. A.L.S. Enters.,* 259 F.R.D. 187, 190 (D. Minn. 2009) (citation and quotations omitted). The purpose of the predominance requirement is to "achieve economy and efficiency in the settlement of disputes." *Rilley,* 329 F.R.D. at 218, *quoting Vernon J. Rockler & Co., Inc. v. Graphic Enters., Inc.*, 52 F.R.D. 335, 344 (D. Minn. 1971) (citing Fed. R. Civ. P. 23 advisory committee's note). As shown below Plaintiffs will prove the Class' claims through common proof, such that common questions predominate over individual ones. Nor is predominance undermined by the fact that class members had individual dealings with Securian agents and brokers. As previously discussed, such interactions are not relevant.   Rather, the focal point of the class members' claims establishing Securian Defendants' liability is the Securian Defendants conduct in selling to class members illegal FIP Products to finance their MLIC and SLIC policies which, in

11

no circumstance, was appropriate. *See* Sq. Decl. ¶¶ 49-52. The Securian Defendants'

agents need not be named parties in the case since a principal's liability for the actions of

its agent is joint and several. *See Schneider v. Buckman*, 433 N.W.2d 98, 101 (1988);

*Kisch v. Skow*, 305 Minn. 328,332, 233 N.W.2d 732,734 (1975). Where liability is joint

and several, a plaintiff can proceed individually in separate actions against each of the

principal and/or agent. *Schneider, supra* at 101.

### (a)    Breach Of Fiduciary Duty Claim

To prove a claim for breach of fiduciary duty under Minnesota law, a party must

show: (1) the existence of a fiduciary duty; (2) breach of that fiduciary duty; (3)

causation; and (4) damages. *Hot Stuff Foods, LLC v. Dornback,* 726 F. Supp. 2d 1038,

1043 (D. Minn. 2010) (citing *Padco, Inc. v. Kinney & Lange,* 444 N.W.2d 889, 891

(Minn. Ct. App. 1989)). Each of the elements for breach of fiduciary duty is susceptible

to common proof.

### (i)    The Existence Of A Fiduciary Duty

A fiduciary relationship can arise in various contexts. *State v. Campbell*, 756

N.W.2d 263, 270 (2008). "Generally, such relationship exists 'when confidence is

reposed on one side and there is resulting superiority and influence on the other." *Id.*,

*citing and quoting Tombs v Daniels*, 361 N.W. 2d 801,809 (1989). An agent is a

fiduciary, *See, e.g. Church of the Nativity of our Lord v. Watpro, Inc.* 491 N.W. 2d 1, 5

(Minn. 1992) *overruled on other grounds*, *Ly v. Nystrom* 615 N.W.2d 302, 314 n. 25

(Minn. 2000). Under Minnesota law, "[d]isparity of business experience and invited

confidence could be a legally sufficient basis for finding a fiduciary relationship. *Tombs v*

*Daniels*, 361 N.W. 2d 801,809 (1985) (quoting *Murphy v. Country House*, Inc., 307 Minn. 344, 240 N.W. 2d 507 (1976)). Here, the evidence of "invited confidence" is overwhelming in the form of Securian Defendants' own admissions, promotional materials, and internal documents. *See* Sq. Decl. ¶¶ 42-45. Here the principal, Securian, held out that the financial advisors (its agents and brokers) had authority by manifesting such authority to the community through signs, advertising, and authorizing the agent to represent that it had authorization. *See e.g., Duluth Herald news Tribune v Plymouth Optical Co.*, 286 Minn. 495, 500, 176 N.W. 2d 552, 556 (1970) (finding agency relationship where the principal held out its agents authority by manifesting the authority to the community through signs, advertising and by allowing agent to represent it had authorization).

Here, each class member purchased a life insurance policy from the Securian Defendants along with a FIP Product intended to finance the premiums on the policy. The Network Agents and brokers from whom class members purchased the policies and FIP Products were financial advisors, from the Securian Network, appointed by and acting on behalf of Securian. Securian knew or should have known that the FIP Products were illegal and/or improper but, nevertheless, directed, instructed and/or allowed their agents to sell the products to the class to finance their policies. *See* Sq. Decl. ¶¶ 49-52. Thus, the Securian Defendants' position with respect to class members imposed universal fiduciary duties to all class members. *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 779 (Minn. Ct. App. 2006) ("Minnesota law imposes on a fiduciary the highest obligation of good faith, loyalty, fidelity, fair dealing, and full disclosure of

13

material matters affecting the client's interests). Fiduciary duty is the highest standard of duty under the law. *See D.A.B. v. Brown*, 570 N.W. 2d 168 (Minn. Ct. App. 1997). Class-wide proof of Securian Defendants' fiduciary duties will include evidence of the agents status as a fiduciary based as their role as financial advisors, their status as agents and acting within their agency on behalf of the Securian Defendants, the Securian Defendants' superior knowledge of the facts regarding the FIP Products, and the propriety of using FIP Products to finance the class members' MLIC and SLIC insurance premiums.

(ii)     **Breaching Conduct**

Plaintiffs allege the Securian Defendants breached their fiduciary duties to Plaintiffs and the class members by allowing their agents to advise and sell to class members illegal FIP Products the Securian Defendants knew or should have known were illegal and improper.  It is the Securian Defendants' conduct, not the conduct of any individual class member, that is the focal point of the fiduciary duty claim. Common issues include, for example, whether the Securian Defendants knew or should have known that the FIP Products were illegal and whether the Securian Defendants, nevertheless, allowed their agents to finance the sale of their UIL policies with Illegal FIP Products, anyway. *See e.g., City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347 (D. Minn. 2012) (holding common questions predominated where the defendant allegedly knew or should have known that investments it selected did not comport with investment mandates, and failed to monitor to ensure investments were not overly risky or illiquid); *AFTRA Ret. Fund v. J.P. Morgan Chase Bank, N.A.,*

14

269 F.R.D. 340, 349-50 (S.D.N.Y. 2010) (holding that common questions predominate when the [investments at issue] were too risky an investment for *any* securities lending participant by virtue of the basic, low-risk, high quality structure that a securities lending program entailed.") (emphasis in original).

### (iii)   Causation And (iv) Damages

Proof that Securian Defendants' conduct proximately caused damages to the class can be proved with class-wide evidence. The damages here are simple to understand and calculate.  As a result of the Securian Defendants 'scheme, class members paid for and lost their initial investment in FIP used to finance the premiums on their MLIC or SLIC policies. Other types of loss and damage from lapse policies were identified by Securian's Seth Detert at his deposition.  *In re Worker's Comp. Antitrust Litig.,* 130 F.R.D. 99, 108 (D. Minn. 1990) ("Mere existence of individual damage questions will not preclude certification as long as there is some 'common proof 'to adequately demonstrate some damage to each plaintiff.")

### (b)   Unjust Enrichment

Unjust enrichment occurs when a benefit, which would be inequitable to retain, has been conferred on the defendant.  *Klass v. Twin City Fed. Sav. & Loan Ass'n,* 190 N.W.2d 493, 494-95 (Minn. 1971). Unjust enrichment requires conduct on the part of the defendant that can be considered morally wrong or stemming from a bad motive on the part of the defendant. *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).   Common questions predominate in unjust enrichment claims when the defendant's conduct is the same as to all members of the class. *James D. Hinson Elec.*

15

*Contr. v. BellSouth Telecommunications, Inc.* 275 F.R.D. 638, 647 (M.D. Fla. 2011). *See e.g., Khoday v. Symantec Corp.*, 2014 U.S. Dist. LEXIS 43315, \*100 (D. Mar. 31, 2014) (finding predominance satisfied for unjust enrichment and Minnesota Consumer Fraud Act claims based on Defendant's uniform conduct in providing documents containing misrepresentations, which documents were signed by all Plaintiffs); *Rilley v. MoneyMutual, LLC*, 329 F.R.D. 211, 219 (D. Minn. 2019) (holding common issues predominated in unjust enrichment and statutory claim centered on common question of whether Defendants were unjustly enriched by profiting off the sale of leads to lenders where the "core of Defendants' liability here is based on their actions relating to the information they provided on the MM Website and their alleged arranging of consumer short-term loans").

In this case, the Securian Defendants' liability centers on the common question of whether they were unjustly enriched by profiting from the sale of MLIC and SLIC life insurance policies financed by illegal FIP Products. All class members were impacted by the Securian Defendants 'inequitable actions, and proof related to those actions will apply equally to all members of the class.

Common proof, based on Securian Defendants 'conduct and not class member conduct, will establish that it was unjust in *every* case for the Securian Defendants to have retained the class members' SLIC and MLIC premiums and commissions. Furthermore, the *amount* by which the Securian Defendants were unjustly enriched can be proved with data records from the Securian Defendants.

16

**(c)    Vicarious Liability And Aiding And Abetting Claims**

Common issues predominate with respect to Plaintiffs 'aiding-and-abetting and vicarious liability claims.

*Aiding-and-abetting.*   Aiding and abetting requires: "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Rilley,* 329 F.R.D. at 217, *quoting Zayed v. Associated Bank*, N.A., 779 F.3d 727, 733 (8th Cir. 2015).   The court in *Rilley* held that common issues predominated with respect to aiding-and-abetting claims because liability hinged on whether the defendants knew about and substantially assisted each other in making illegal loans to class members.   329. F.R.D. at 219.   Likewise, here, the aiding and abetting claims turn on whether the Defendants knew about and substantially assisted each other in marketing and selling to class members UIL policies funded with illegal FIP Products.

*Vicarious Liability.*   A "principal is generally liable for any act of an agent that was committed within the scope of the agency relationship and caused injury." *Michaels v. First USA Title, LLC,* 844 N.W.2d 528, 534 (Minn. Ct. App. 2014) (holding notary's negligent notarization of signatures on fraudulent home mortgages was within the scope of the agency relationship and supported lower court's legal conclusion that the insurance company was liable for the harm caused by the notary's negligence), *citing Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 535 (Minn. 1992). A defendant's vicarious liability for its agents "has little relevance to the predominance inquiry." *See e.g., Joint Equity*

17

*Comm. Of Investors of Real Estate Partners, Inc. v. Coldwell Banker,* 281 F.R.D. 422, 432-433 (C.D. Cal. 2012) (granting investor's motion for class certification where sales pitches and investment fund brochures were sufficiently similar to justify an inference of class-wide reliance and holding the issue of defendants 'subsequent ratification of its agents 'acts was common to the class and did not preclude a finding of predominance). The inquiry focuses on the Securian defendants not the individual agents with whom Plaintiffs and class members dealt because under Minnesota law " the proof of the agents' apparent authority must be found in the conduct of the principal not the agent." *Truck Crane Service Co., v Barr-Nelson , Inc.,* 329 N.W. 2d 824, 826 (Minn. 1983).

### (d)   Choice Of Law

Minnesota law may be applied to the class members 'claims against the Securian Defendants.  As a multi-state class action, more than one state has contacts with the claims at issue and, therefore, the court must analyze choice of law issues. In ascertaining the appropriate law to apply in diversity cases the court applies the forum state's choice of law rules.  *Whitney v. Guys, Inc.,* 700 F.3d 1118, 1123 (8th Cir. 2012).  Therefore, Minnesota's choice of law rules apply here.

### (i)   Minnesota Has Significant Contacts With Class Members 'Claims.

As an initial matter, for a state's law to apply, the state must have "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of

18

[forum] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-313 (1981)).

Minnesota has sufficient contact with all class members 'claims for the court to apply forum law to the claims against the Securian Defendants. The Securian Defendants have their national headquarters and principal place of business in St. Paul, Minnesota. *See* Ex. 1, SAC ¶ __. Defendants MMCI, MCIL, and SCIL are all organized under the laws of Minnesota. *See* Ex. 2 (ML000641-642 - Organizational Chart of Minnesota Mutual Companies, Inc. as of January 19, 2019).

There is "no doubt" that under such circumstances an individual class member could sue a company in Minnesota and apply Minnesota law and, therefore, it is also constitutionally permissible to apply Minnesota law in the class action context.[4] *In re St. Jude Med., Inc.* 2006 WL 2943154, at *4 (D. Minn. Oct. 13, 2006), *rev'd on other grounds,* 522 F.3d 836 (8th Cir. 2008). *See also In re Target Corp. Customer Data Sec. Breach Litig.,* 309 F.R.D. 482, 486 (D. Minn. 2015) (certifying nationwide class under Minnesota law and holding that Minnesota defendant that made decisions material to class members 'harm in Minnesota was subject to application of Minnesota law under U.S. Constitution).

---

[4] Having sold FIP linked products to customers in Minnesota, conducted business in Minnesota, and acted at all relevant times in its capacity as an agent of the Securian Defendants, Shurwest also has sufficient contacts with Minnesota such that application of Minnesota law to claims against Shurwest is not arbitrary or unfair. *See, e.g., Glover v. Merck & Co., Inc.,* 345 F. Supp.2d 994, 998 (D. Minn. 2004)(finding defendant that did business in Minnesota and sold the product at issue in Minnesota had sufficient contacts with Minnesota to constitutionally apply Minnesota law to claims asserted against it).

**(ii)     Potentially Applicable Laws Are Substantively Similar And Therefore Minnesota Law May Be Applied**

Under Minnesota choice of law principles, the court need not engage in a choice of law analysis regarding claims that are substantively similar across the relevant jurisdictions – in other words, an actual conflict must exist before a choice of law analysis is required. *See Shutts,* 472 U.S. at 816. *See also See Phillips v. Marist Soc. of Washington Province,* 80 F.3d 274, 276 (8th Cir. 1996) (finding that when the relevant laws of two different jurisdictions do not differ, the court need not engage in a choice-of-law analysis); *Superior Edge, Inc. v. Monsanto Co.,* 964 F. Supp. 2d 1017, 1034 n.5 (D. Minn. 2013) (noting the District of Minnesota's "approach of applying the law of the forum in the absence of an outcome determinative conflict between the substantive laws of interested states"). A conflict exists if a difference in the state's laws is "outcome determinative." *Glover v. Merck & Co., Inc.*, 345 F. Supp.2d 994, 997 (D. Minn. 2004). There are no such conflicts here.

*Breach of Fiduciary Duty.* State laws governing breach of fiduciary duty claims "do not vary significantly, since common principles underlie them." *See Bresson v. Thompson McKinnon Secur., Inc.*, 118 F.R.D. 339, 343-344 (S.D.N.Y. 1988) (noting that state laws governing breach of fiduciary duty do not vary significantly and disagreeing with defendant's position that differences in fiduciary law would preclude class

certification).[5] *Cf. City of Farmington Hills Empls. Ret. Sys. v. Wells Fargo Bank, N.A.*,

281 F.R.D. 347 (D. Minn. 2012) (certifying breach of fiduciary duty class applying

---

[5] Indeed, the breach of fiduciary duty laws of different states is substantially similar. *See e.g., PharMerica Chicago, Inc. v. Meisels,* 772 F. Supp. 2d 938, 960 (N.D. Ill. 2011) ("Under Illinois law, ... recovery for a breach of fiduciary duty requires proof of three elements: `[1] a fiduciary duty exists, [2] that the fiduciary, duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains.") (citations omitted); *Myers v. Alliance for Affordable. Servs.,* 371 F. App'x 950, 957 (10th Cir. 2010) ("Under Colorado law, a plaintiff must plead the following elements to state a claim for breach of fiduciary duty: (1) the defendant was acting as a fiduciary of the plaintiff; (2) the defendant breached a fiduciary duty to the plaintiff; (3) the plaintiff incurred damages; and (4) the defendant's breach of fiduciary duty was a cause of the plaintiffs damages.") (citation omitted); *Corporate Express Office Prods., Inc. v. Brown,* No. 00-C-608-C, 2001 WL 343811110, at *13 (W.D. Wis. July 18, 2001) (Under Wisconsin law, "[t]he elements of the tort of breach of fiduciary duty are 1) a duty of care owed to the principal by the agent; 2) a breach of duty by the agent; and 3) an injury to the principal resulting proximately from the breach."); *Meisel v. Grunberg,* 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (Under New York Law, "[t]he elements of a breach of, fiduciary duty claim are (1) that a fiduciary duty existed "between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach.") (citations omitted); *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,* 593 F. Supp. 2d 1153, 1169 (S.D. Cal. 2008) (In California,"[t]he elements of a cause of action for breach of fiduciary duty are: `(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.") (citations omitted); *BlackmoreICannon Dev. Co., LLC v. U.S. Bancorp dlbla U.S. Bank,* No. 2:08-CV-370 CW, 2010 WL 1816275 (D. Utah May 3, 2010) (noting that to properly plead a breach of fiduciary claim in Utah, a plaintiff must allege facts showing: (1) the existence of a fiduciary relationship; (2) breach of that duty; and (3) damages) (citations omitted); *Richter v. Van Amberg,* 97 F. Supp. 2d 1255, 1261 (D.N.M. 2000) (noting that the elements to be proven to establish a claim for breach of fiduciary duty are (1) existence . of a fiduciary relationship, (2) breach of that fiduciary relationship and (3) breach of that relationship as the proximate cause of loss to the plaintiff); *Joyce v. Garnaas,* 983 P.2d 369, 376 (Mont. 1999) (Hon. J. Trieweiler, in dissent) (citation omitted) (noting that elements of a claim for breach of fiduciary duty includes (1) a fiduciary relationship, (2) breach of that fiduciary relationship and (3) causation of damages); *Channell Const. Co., Inc. v. Rubin,* No. A-09-1165, 2010 WL 3958846 (Neb. Ct. App. Sept. 28, 2010) (noting that a fiduciary relationship, breach of a duty arising under that relationship and damages are material issues of fact in a breach of fiduciary duty claim); *Scottsdale ins. Co. v. Mkt. Finders*

Minnesota law). Because breach of fiduciary duty laws are fundamentally similar, Minnesota law may be applied. *See Shutts,* 472 U.S. at 816.

Furthermore, numerous states recognize that a fiduciary relationship arises in cases involving a financial advisor relationship (as here), and/or cases involving the sale of questionable products to a vulnerable population. *See Maybank v. BB&T Corp.*, Civ. A. No. 6:12-cv-00214-JMC, 2012 U.S. Dist. LEXIS 108480, at *7-12 (D.S.C. Aug. 3, 2012) (plaintiff engaged defendants to devise retirement investment plan that reflected plaintiff's goals of diversification, steady income, tax sheltering, and ability to protect wealth for heirs); *Western Reserve Life Assurance Co. v. Graben*, 233 S.W.3d 360, 373 (Tex. App. Fort Worth 2007, *no pet.*) (upholding finding of existence of fiduciary relationship between investment advisor and client in connection with sale of variable annuities). *Tonzi v. Nichols*, 24 Misc. 3d 1249[A], 899 N.Y.S.2d 63, 2009 NY Slip Op 51924[U], *2-4 (N.Y. Sup. Ct. 2009) (defendant, plaintiff's accountant and financial advisor for over twenty years, advised plaintiff to roll over 401K and invest in viatical contracts, which are essentially life insurance policies surrendered for cash value by terminally ill or elderly policyholders); *Negrete v. Fid. and Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1003 (C.D. Ca. 2006) (insurance company targeted senior citizens and sold insurance policies disguised as investments that matured after purchasers' actuarial life expectancy); *Murphy v. Nw. Mut. Ins. Co.,* No. 03-0864-CV-W-HFS, 2005 U.S. Dist.

---

*Ins. Corp.,* No. CV 04-118, 2008 WL 4217679 at *6 (D. Ariz. Sept. 12, 2008) *affd in part, rev'd in part on other grounds,* 359 F. App'x 888 (9th Cir. 2009) (noting that "in a breach of duty claim, the plaintiff must set forth evidence to establish the defendant had a duty, the defendant breached the duty, and the breach caused damages.").

LEXIS 43627, at *11 (W.D. Mo. June 13, 2005) (life insurance agent contacted plaintiff to discuss retirement planning and sold plaintiff insurance policies described as retirement plan); *Cunningham v. PFL Life. Ins. Co.*, 42 F. Supp. 2d 872, 888 (N.D. Ia. 1999) (insurance agents introduced themselves as investment counselors; described products as investment vehicles similar to mutual funds or individual retirement accounts and concealed that products were life insurance). *Cf. City of Farmington Hills Empls. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347 (D. Minn. 2012) (certifying breach of fiduciary duty class applying Minnesota law). Because breach of fiduciary duty laws are fundamentally similar, Minnesota law may be applied. *See Shutts,* 472 U.S. at 816.

*Unjust Enrichment.* Considering the issue recently, this District held that "[t]he substantive law of unjust enrichment is consistent across all jurisdictions" and applied Minnesota unjust enrichment law to a massive data breach case against Target Corporation. *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp.3d 1154, 1178 (D. Minn. 2014). *See also e.g., Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous [federal] courts [sitting in diversity] have held that unjust enrichment laws do not vary in any substantive manner from state to state... Since no actual conflict exists, [forum state] law will be applied to all Plaintiffs' unjust enrichment claim."); *Penn. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010) ("states' [unjust enrichment] laws do not create an actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) ("there are no actual conflicts among the laws of unjust enrichment"); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009), *as modified on reconsideration*, No. CIV. 07-2720

23

DRD, 2010 WL 2976496 (D.N.J. July 22, 2010) ("differences [in unjust enrichment laws] are not material and do not create an actual conflict"). As noted above, where there is no outcome determinative conflict, Minnesota law may be applied to the claims of all class members.[6] *See Shutts,* 472 U.S. at 816.

### 3.   A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy

The "superiority" requirement of Rule 23(b)(3) is also satisfied. To determine whether a class action is superior to other methods of adjudication, courts consider four factors: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability or undesirability of concentrating claims in one forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Application of the Rule 23(b)(3) factors warrants a finding of superiority.

### (a)   Class Members' Interests Controlling The Prosecution Of Separate Actions

Courts have held that superiority is met where the probative costs of prosecuting a class action "compared to the relatively small potential recoveries, make it unlikely that class members would want or be able to prosecute their claims on an individual basis, or that it would be more efficient for them to do so." *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 522 (D. Minn. 2015). Following the United States Supreme Court's

---

[6] The broker contracts between MLIC and SLIC on the one hand, and Shurwest, and the agents on the other hand, contain a choice of law Minnesota law provision applicable to the vicarious liability claims. *See* Sq. Decl. Ex. 4 at ML 0000646.

lead, this Court has also stated that "[a] class action is a superior form of litigation if it is capable of addressing 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 378 (D. Minn. 2014), *quoting Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

Here, the putative class is comprised of hundreds of individuals who purchased Securian Defendants 'life insurance policies financed with illegal FIP Products. Putative class members 'individual claims are relatively small compared to the substantial costs, expenses, and outlay of time and effort needed to prosecute an individual action, which limits them from individually suing the Securian Defendants. Under the circumstances, this factor weighs in favor of class certification. *See e.g., City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.,* 281 F.R.D. 347, 356-57 (D. Minn. 2010) (finding putative class members 'interests in individually controlling litigation minimal where class members "may not have the financial means to bring suit against Wells Fargo on their own.")

### (b)     Commencement Of Other Litigation

There are relatively few individual actions pending against the Securian Defendants. *See In re Prudential Ins. Co. America Sales Practices Litig. Agent Actions,* 148 F.3D 283, 316 (3d Cir. 1998) (affirming district court conclusion that the "relatively small number of individual suits pending against Prudential indicated that individual policyholders lacked a compelling interest to control the prosecution of their own claims.").

(c)    **Desirability Of Concentrating Claims In One Forum**

Concentrating claims in a single forum is extremely desirable.   In this case, hundreds of putative class members affected by the Securian Defendants 'scheme are located throughout the country.   If all these persons were forced to bring individual actions, they would have to perform unnecessary and duplicative work.   Thus, certifying the class in this jurisdiction, where the Securian Defendants, and many of the relevant witnesses and documents are located, would benefit the class through the economy of resources. In addition, potential individual actions would be a waste of judicial resources and could lead to inconsistent adjudications.

(d)    **Manageability Of The Class Action**

Whether a class action is manageable turns on whether a class action will create relatively more management problems than any of the alternatives, including (in this case) hundreds of separate lawsuits by class members. *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 648 (D. Minn. 2011). Courts are generally reluctant to deny class certification based on speculative problems with case management and even potentially severe management issues have not defeated class certification. *Id. See also In re McDonnell Douglas Corp. Sec. Litig.*, 98 F.R.D. 613, 621 (E.D. Mo. 1982) (finding that even an alleged "Frankenstein Monster" class action was manageable).   There is no reason to expect any difficulties in management of this case involving a relatively small class of hundreds (versus millions) as a class action.  For this reason, the "manageability" factor favors class certification.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Plaintiffs' motion

be granted in its entirety.

Dated:  December 2, 2019

*s/ Lee Squitieri*

Lee Squitieri (*pro hac vice*)

**SQUITIERI & FEARON, LLP**

32 East 57th Street

12th Floor

New York, New York 10022

Tel: (212) 421-6492

lee@sfclasslaw.com

***Attorneys for Ciofoletti Plaintiff***

Daniel E. Gustafson (#202241)

Karla M. Gluek (#238399)

Amanda M. Williams (#341691)

Daniel J. Nordin (#392393)

**GUSTAFSON GLUEK PLLC**

Canadian Pacific Plaza

120 South Sixth Street, Suite 2600

Minneapolis, MN  55402

Tel: (612) 333-8844

dgustafson@gustafsongluek.com

kgluek@gustafsongluek.com

awilliams@gustafsongluek.com

dnordin@gustafsongluek.com

***Attorneys for Ciofoletti and Stospal Plaintiffs***

27

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

***Attorneys for Stospal Plaintiff***

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ROCCO CIOFOLETTI, et al., on behalf
of themselves and all others similarly
situated,

Case No.:  0:18-cv-03025-JNE-ECW

Plaintiffs,

-vs-

SECURIAN FINANCIAL GROUP, INC.,
et al.,

Defendants.

## RULE 7.1 COMPLIANCE CERTIFICATE

The undersigned hereby certifies that, pursuant to Local Rule 7.1(f), Plaintiffs'

Memorandum in Support Motion for Class Certification contains 7,740 words, as

determined through the word count feature of the Microsoft Office Word 2016 word

processing software used to prepare the memorandum.  The word processing program has

been applied specifically to include all text, including headings, footnotes, and quotations.

The memorandum was prepared in 13-point font in accordance with the type size

limitation of Local Rule 7.1(h).

Dated:  December 2, 2019

*s/ Lee Squitieri*
Lee Squitieri (*pro hac vice)*
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
lee@sfclasslaw.com

***Attorneys for Ciofoletti Plaintiff***

Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
Amanda M. Williams (#341691)
Daniel J. Nordin (#392393)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
awilliams@gustafsongluek.com
dnordin@gustafsongluek.com

*Attorneys for Ciofoletti and Stospal Plaintiffs*

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

*Attorneys for Stospal Plaintiff*