## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ROCCO CIOFOLETTI, et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> -vs- <br><br> SECURIAN FINANCIAL GROUP, INC., et al., <br><br> Defendants. | Case No.:  18-cv-03025 |

### DECLARATION OF LEE SQUITIERI
### IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

I, Lee Squitieri, submit this declaration in support of plaintiffs' motion for class certification and declare pursuant to 28 USC 1746 and under the penalty of perjury that the foregoing is true and correct.

1.      I am one of the Court-appointed Co-Lead Counsel for the plaintiffs and the putative class in this action.  I make this declaration in support of plaintiff's motion for class certification.

### Index Of Exhibits

2.      Attached hereto as Exhibit 1 is a true and correct copy of Plaintiffs' [Proposed] Second Amended Class Action Complaint.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Organizational Chart of Minnesota Mutual companies as of January 1, 2019 (ML 0000641-642).

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Master Brokerage Agency agreement ("BGA") between Shurwest, LLC and SLIC (ML 653-660).

5.      Attached hereto as Exhibit 4 is a true and correct copy of Broker Agreement between Shurwest and MLIC (ML 643-651).

6.      Attached hereto as Exhibits 5(a)-(j) are true and correct copies of regulatory actions by the States of  Colorado, Washington, Pennsylvania, California, Massachusetts, North Carolina, New York, Iowa, Indiana and Minnesota. (arranged chronologically) barring sales of FIP Products in the respective States and sanctioning FIP for violations of applicable laws, rules and regulations of the respective States.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a screenshot from Securian's website describing its insurance marketing, distribution and sales operations. www.securian.comabout-us-/ou-comapny.html( last accessed Dec. 2, 2019).

8.      Attached hereto as Exhibit 7 is a true and correct copy of a screenshot from Seurian's website describing its services. www.securian.com/about-us/mrkets-we-serve.html ( last accessed Dec. 2, 2019 ).

9.      Attached hereto as Exhibit 8 is a true and correct copy of screenshot "IUL Life Insurance Solutions, Annexus...."www.annexus.com/life-insurance-solutions. html.

10.      Attached hereto as Exhibit 9 is a true and correct copy of screenshot "Indexed Universal Life, securian.com...."www.securian.com/indexed-universal-life. html. ( last accessed Dec. 2, 2019 ).

11.     Attached hereto as Exhibit 10 is a true and correct copy of a screenshot form Securian's website "Securian Financial Network. www.securian.com/contact-us/fnd-an-advisor. Html. ( last accessed Dec. 2, 2019 )

12.     Attached hereto as Exhibit 11 is a true and correct copy of the transcript of the deposition of Securian 30 (b)(6) witness Seth Detert.

13.     Attached hereto as Exhibit 12 is a true and correct copy of screenshot "Universal Life insurance, securian.com..."www.securian.com/univrsal-life-insurance. html.

14.     Attached hereto as Exhibit 13 is a true and correct copy of screenshot "Securian financial Network" https://advisor.securian.com/userservices/

15.     Attached hereto as Exhibit 14 is a true and correct copy of a screenshot "Find A Financial Advisor." www.secrian.com/cntact -us/find-an-advisor.html ( last accessed Dec. 2, 2019 )

16.     Attached hereto as Exhibit 15 is a true and correct copy of screenshot "Proprietary Solutions, Shurwest...."www.shurwest.com/advisor-services. ( last accessed Dec. 2, 2019 )

17.     Attached hereto as Exhibit 16 is a true and correct copy of an FIP contract.

18.     Attached hereto as Exhibit 17 is a true and correct copy of Detert Exhibit 6 "FIP -Linked Policies" (ML1485-1490.)

19.     Attached hereto as Exhibit 18 is a true and correct copy of Detert Exhibit 5 "IRA Reboot" email (ML 0002292-93).

3

20.     Attached hereto as Exhibit 19 are true and correct copies of emails discussing structured cash flows. (ML 1601-1603).

21.     Attached hereto as Exhibit 20 is a true and correct copy of Securian "policies and procedures "Detert Ex, 9, (ML788-813).

22.     Attached hereto as Exhibit 21 is a true and correct copy of Securian "policies and procedures 2017 Detert Ex. 10 (ML748-771).

23.     Attached hereto as Exhibit 22 is a true and correct copy of the  January 8, 2016, United States Consumer Finance Protection Board's injunction order  against FIP describing the illegal structured cash flow product sold to Plaintiffs and class members as a premium financing device to pay the premiums to MLIC and SLIC on policies sold to Plaintiffs and class members.

24.     Attached hereto as Exhibit 23 is a true and correct copy of the "Producer Appointment " by MLIC for Mr. Stospal's financial advisor. (ML 1239-1253).

25.     Attached hereto as Exhibit 24 is a true and correct copy of "Producer Appointment " by MLIC for the Ciofoletti's 's financial advisor. (ML 1343-1354).

26.     Attached hereto as Exhibit 25 is a true and correct copy of Wade Allen deposition.

27.     Attached hereto as Exhibit 26 is a true and correct copy of materials describing the March 2017 presentation by speakers including Securian [title] Wade Allen on "Premium financing" (ML 2330-2335;2316-2327;2935-36;2517-2520;2503-204).

28.     Attached hereto as Exhibit 27 is a true and correct copy of documents discussing FIP among defendants' personnel. (ML 2301-2302; 2305-2306;2308-2313).

29.     Attached hereto as Exhibit 28 is a true and correct copy of a published report reporting that as many as 370 financial advisors may have sold FIP products to buyers of Securian insurance products. August 23, 2018, Investment News.

30.     Attached hereto as Exhibit 29 is a true and correct copy of the Indexed Universal Life insurance policy plaintiff Ciofoletti purchased from Defendants and which was issued by MLIC. (ML 0000001-0000055)

31.     Attached hereto as Exhibit 30 is a true and correct copy of the correspondence between the Ciofoletti's and Securian offering  rescission and no release of claims.

32.     Attached hereto as Exhibit 31 is a true and correct copy of the Indexed Universal Life insurance policy plaintiff Stospal purchased from Defendants. ML 344-385).

33.     Attached hereto as Exhibit 32 is a true and complete copy of the agreement between Stospal and Future Income Products Inc. ("FIP") for Stospal's purchase of FIP Products (as that term is defined in the SAC).

34.     Attached hereto as Exhibit 33 is a true and correct copy of Stospal's correspondence with Securian accepting rescission offers but not releasing any claims.

35.     Attached hereto as Exhibit 34 is a true and correct copy of the firm resume of Wexler & Wallace, LLP.

36.     Attached hereto as Exhibit 35 is a true and correct copy of the firm resume of Squitieri & Fearon, LLP.

37.     Attached hereto as Exhibit 36 is a true and correct copy of the firm resume of Gustafson Gluek, PLLC.

## Statement Of Facts

### A.     Introduction

38.     Throughout the class period, Securian Defendants (and/or their agents and brokers) marketed and sold the Securian Defendants' products in conjunction with 'structured cash flow' products ("FIP Products").  Securian Defendants' and Shurwest's agents and brokers, who were also promoted financial advisors, proposed FIP Products to class members as a premium financing device, *i.e.* to fund the payment of premiums for the Securian policies. Shurwest, a Securian "Master Broker General Agent" and "Broker Agreement" pursuant to written contracts, (*see* Sq. Decl. Exhibits 3 and 4, respectively) caused, or allowed its employees and/or agents to sell FIP products to class members in conjunction with Securian products.

39.     As early as 2015, State regulatory agencies investigated the FIP Products and determined them to constitute illegal usurious loans. Securian Defendants and Shurwest, however, continued to sell FIP Products in conjunction with Securian products through 2018, by which time over 20 states had determined that FIP products were unlawful loan products. (*See* Sq. Decl. Exhibit 5(a)-(j) arranged chronologically).  When FIP ceased operations as a result, Plaintiffs and the Class not only lost their investments in FIP Products, but also lost, or were at risk of losing, the life insurance policies

purchased from the Securian Defendants.  Without the cash flows from the FIP Products,

Plaintiffs and class members could no longer pay premiums or had to pay from sources

other than the FIP products which were marketed and sold to them as premium finance

vehicles. Throughout the Class Period, Securian Defendants and Shurwest knew or

should have known that the FIP Products were an illegal means of financing the Securian

products sold to class members'. Nevertheless, Securian Defendants and Shurwest

continued to promote and sell to the class insurance products whose premiums were

funded with the illegal FIP Products sold to plaintiffs and class members in conjunction

with the insurance products, thereby unjustly enriching themselves and causing damages

to Plaintiffs and the class.

**B**.   **The Securian Defendants' Insurance Products Are Highly Sophisticated Financial Instruments Which Are Marketed And Sold To Plaintiffs And Class Members Through Financial Advisors**

40.   Securian Defendants are in the business of marketing, brokering, and/or

selling insurance products of various types, including insurance policies indexed to stock

market investments. *See* Sq. Decl. Ex. 6.  The Securian Defendants are issuers of such

policies, which they markets, promotes, and sells to consumers through its brokers and

agents, such as Shurwest.  *See* Ex. 7 **.**

41.   Indexed Universal Life insurance policies such as those which Plaintiffs

purchased are complex financial instruments described by Annexus, a Shurwest affiliate,

at its website, as follows:

7

### What is IUL?

Indexed Universal Life Insurance is a form of permanent life insurance that provides a tax-free death benefit upon your death.  It also offers tax-advantaged cash value growth you can access throughout your life.  Your cash value earns interest based on the positive performance of an underlying stock market index like the S&P 500.  Interest would be credited at the end of an index segment (or term), with common segments of a 1-year, 2-years or up to 5-years.  If the index performance is negative during any segment, your cash value is protected from any negative market return.

See Ex. 8 (*IUL Life Insurance Solutions*, Annexus, http://annexus.com/iul-life-insurance-solutions/(last visited November 15, 2019)).  Similarly, Securian describes IUL products as follows:

### Balancing risk and cash value growth

Indexed universal life insurance offers cash value growth that is tied to the movement of an underlying index but does not participate in the market.

Minimum and maximum interest crediting limits act as guardrails, which make indexed universal life less risky than variable universal life insurance, while potentially producing greater interest crediting than fixed universal life insurance.

See Ex. 9 (*Indexed Universal Life*, securian.com, https://www.securian.com/products-services/life-insurance/universal-life-insurance/indexed-universal-life-insurance.html (last visited November 15, 2019)).

### C.   Securian Promotes The Use Of Their "Financial Advisors" To Advise Insureds With Respect To IUL

42.   Not surprisingly, in its website page the Securian Defendants invite, encourage and facilitate insureds 'use of FINANCIAL ADVISORS in the purchase of

8

IUL policies.  Exhibit 10.  Securian witness, Seth Detert at his deposition admitted that Securian agents were providing "financial literacy or financial advice" to insurance purchasers.  Sq. Decl. Ex. 11, Detert Tr. At 23.

43.     Securian's website acknowledges that its ILU products are complicated financial instruments for which insureds will require the services of financial advisors, it states:

> Types of universal life insurance.  What type is right for you? If you and your financial advisor determine universal life insurance is a good choice, Securian offers three variations to choose from – fixed, indexed and variable.
>
> The main difference between the products is the risk/return associated with their cash value growth potential.   When choosing the ideal product for your needs, you and your advisor should consider your level of risk tolerance.

See Sq. Decl. 12, *Universal Life Insurance*, securian.com, http://securian.com/products-services/life-insurance/universal-life-insurance.html (last visited   November 6, 2019). This page invites visitors to "Ask a professional," promising that" A financial advisor can help you analyze your needs and help you choose the insurance that's rights for you." The page includes a link labeled" Find an advisor," which when clicked directs a visitor to a member of the Securian Financial Network in the visitors' vicinity.

### D.     The Securian Defendants And The Securian Financial Network

44.     At all times relevant, the Securian Defendants' financial products were sold by advisors in the Securian Financial Network, and others.  The Securian Defendants state on their website that the "Securian Financial Network, the marketing name for the sales and distribution arm of Securian Financial Group, Inc., its subsidiaries and

affiliates, is a nationwide network of financial services firms. Products and services are offered and sold only by appropriately licensed entities and financial representatives." *See* Sq. Decl. Ex. 13 (https://advisor.securian.com/userservices/ (last accessed 10/15/2019)). They tout the Securian Financial Network as a "long-term resource to provide expertise and create strategies to help you and your family achieve your financial goals." *See* Sq. Decl. Ex. 14 (*Find a Financial Advisor*, securian.com, https://www.securian.com/contact-us/find-an-advisor.html (last visited November 15, 2019)). Its advisors "support your everyday moments and major milestones and approach your finances from a holistic standpoint." *See id.* According to the Securian website, an advisor in the Securian Financial Network:

> • listens to your goals, visions, dreams – and even your fears
>
> • analyzes financial resources and opportunities
>
> • devises a roadmap to help you reach your goals

*See id.*

45.     The Securian Defendants 'website further represents:

> At Securian Financial, we equip our financial advisors with suitable choices to serve clients and their unique situations.  Our advisors offer a range of life insurance, annuities and wealth management solutions to help you put family first.
>
> * * *
>
> With access to a network of more than 1,100 registered financial advisors, building your secure tomorrow is just a click away.

*See id.*  The Securian Defendants, on their website, also boast: "[we] serve nearly 19 million customers through 5300 employees and representatives."   Sq. Decl. Ex. 10.

Securian witness Detert, at his deposition described the Securian Financial Network and testified that the "Network" is made up of financial advisors who signed contracts with Securian.  Sq. Decl. Ex. 11, Detert Tr. at 16-20.

### E.   Shurwest's Role

46.   Shurwest was a "broker" pursuant to contracts with MLIC and SLIC (*See* Sq. Decl. Ex. 4) and "Master Brokerage General Agent" ("MGA")for both MLIC and SLIC pursuant to contracts with each.   *See* Sq. Decl. Ex. 3.   Shurwest was, upon information and belief a member of the Securian Financial Network. Shurwest marketed, promoted and sold life insurance products and FIP Products to insureds and assisted and directed members of the Securian Financial Network in the marketing, promotion, and sale of life insurance policies.   Shurwest also served as an Independent Marketing Organization ("IMO").  As one court explained the function of IMOs:

> Insurance companies generally do not recruit independent insurance agents to sell their products.   Instead, IMOs recruit independent insurance agents to sell [fixed index annuities] and other types of insurance products to the independent agents' clients.   An IMO serves as a third-party intermediary between the agents and the insurance companies, providing product education, marketing, and distribution services. Insurance companies generally compensate IMOs for their support services based on a percentage of agent sales volume.

*Mkt. Synergy Group, Inc. v. United States Dep't of Labor*, 16-CV-4083-DDC-KGS, 2016 WL 6948061, at *3 (D. Kan. Nov. 28, 2016).   In its IMO role to agents and brokers, Shurwest promotes itself as follows:

PROPRIETARY SOLUTIONS

Shurwest gives you access to a complete array of insurance carriers offering the most advances . . . indexed universal life insurance strategies available today.  By choosing us as your partner you also gain access to patented limited distribution solutions that set you apart from your competition.

EDUCATION AND TRAINING

- Webinars
- Onsite visits to come to meet our team
- Personal coaching
- Peer to peer idea sharing

*See* Sq. Decl. Ex. 15 (*Proprietary Solutions*, Shurwest, http://shurwest.com/advisor-services#/proprietary-solutions (last visited November 20, 2019)).

47.    Under the BGA with SLIC and MLIC, (*see* Sq. Decl. Exhibits 3 and 4), Shurwest was authorized to recommend to SLIC and MLIC "producers" who SLIC and/or MLIC should appoint to be their agents. Thus producers " recommended " by Shurwest when accepted by Securian became part of the Securian Financial Network Shurwest was also authorized by Securian under broker and agent agreements to "provide service" to "product owners" of SLIC and MLIC "products."  *See* Sq. Decl. Ex. 3. The services Shurwest provided to "product owners" (*i.e.*, the Plaintiffs and class members) included premium finance products and services.  *Id.*  As the IMO recruited by the Securian Defendants to be their agent, Shurwest provided education, marketing, and distribution services to both agents and brokers in the Securian Financial Network. When insurance brokers and/or financial advisers who used Shurwest's services sold a Securian

Defendant's product, the Securian Defendants paid a portion of the commissions to Shurwest pursuant to the agreements.  *See* Sq. Decl. Ex. 3  and 4.

48.    Under the BGA Agreements with MLIC and SLIC, Shurwest contracted to perform "the activities," including in relevant part, supervising brokers it recommended who became Securian agents; complying with laws and resolutions applicable to sales of Securian products and servicing thereof; reviewing applications prior to submitting to Securian.  *See* Sq. Decl. Ex. 3.

**F.    The FIP Illegal Loan Scheme Produced "Structured Cash Flows" Used To Pay Securian Premiums**

49.    From 2012 through 2018, FIP engaged in an illegal loan scheme that involved FIP's premium financing products which were promoted and sold to class members as a way to pay policy premiums for Securian products. Seth Detert at his deposition described how premium financing works.  *See* Sq. Decl. Ex. 11, Detert Tr. at 70-72;76-81.  FIP products were clearly "structured cash flow" arrangements whereby class members purchased financial instruments from FIP which entitled class members to receive regular periodic payments which were used for Securian policy premiums.  *See* Sq. Decl. Ex. 16.  There are hundreds of "FIP linked policies" identified by Securian. *See* Sq. Decl. Ex. 17, Detert Ex. 6.  The premium finance scheme also targeted class members' Individual Retirement Accounts ("IRAs").  This aspect of the scheme was known as the "IRA Reboot" [cite] and Securian was aware of it as early as November 2015.  *See* Sq. Decl. Ex. 18, Detert Ex. 5, (ML0002292-93).

### G.     All Defendants Knew The Dangers of Financial Loss To Class Members From The FIP Premium Financing Products

50.     Whether or not the Defendants knew that it was FIP was behind the premium financing products being peddled by their agents and brokers is almost besides the point because the dangerous effects of these products were known and understood by Defendants.   The evidence proves it beyond dispute.   Securian witness Seth Detert testified that using IRAs to finance premiums is detrimental to insureds.  Sq. Decl. Ex. 11, Detert Tr. __.   The dangers were discussed in emails between among Securian employees and Securian agents.  Sq. Decl. Ex. 19, Detert Ex. 5.   Securian internal "Policies And Procedures" in the 2015, 2017 and 2018 edition (Sq. Decl. Exs. 20 and 21 (Detert Exs. 9 and 10), recognized that premium financing should only be allowed though financial institutions on Securian's "Premium Financial Lender List" (Detert at 10) and Detert testified that FIP was <u>not</u> on that list.   (Sq. Decl. Ex. 11, Detert at 80-81). Securian's stated policies also recognized the dangers of, and prohibited use of retirement account withdrawals (which was the mechanism of the IRA Reboot strategy {cite} to pay premiums and structured cash payments.  Sq. Decl. Exs. 20 and 21.

### H.     Securian Defendants' Participation In The FIP Scheme Helps Life Policy Sales

51.     FIP obtained "investors" in FIP Products through referrals from financial advisors including from Securian Defendants 'agent, Shurwest and its employees. *Bureau of Consumer Financial Protection v. Future Income Payments, LLC et al.* (C.D. Cal.), Case No. 8:18-cv-01654, Complaint ¶ 45. *See* Sq. Decl. Ex. 22. To offer MLIC and SLIC life insurance policies financed by FIP Products, Network Agents signed broker

agreements with MLIC or SLIC wherein Shurwest was the Master Broker Agent. Among other things, those agreements required Network Agents to remit policy applications and initial premiums to Shurwest, which in turn forwarded them to the Securian Defendants. *See* Sq. Decl. Exs. 23 and 24, Broker Agreement. At all relevant times, the Securian Financial Network Agents acted within the scope their respective agency agreements with Shurwest and the Securian Defendants, with the actual or apparent authority of both Shurwest and the Securian Defendants.

52.     Under its own stated policies and practices , Securian allowed only brokers under contract to MLIC or SLIC to market and offer ILU products to insureds. Using typical Securian marketing material, Securian's agent Shurwest marketed the FIP Products to MLIC and SLIC brokers at conferences, webinars and face to face meetings as a method for financing the premiums of life insurance policies issued by the Securian Defendants. *See* Sq. Decl. Ex. 25, Allen Deposition Transcript.

53.     Shurwest employees introduced brokers/advisers, including Serv. Network Agents, to the FIP Products during meetings at the Shurwest's corporate headquarters and/or conferences held nearby. *See* Sq. Decl. Ex. 26. At these meetings, Shurwest specifically pitched the FIP Products to agents, brokers and Securian Defendants ' employees as means of funding life insurance policies issued by the Securian Defendants.

54.     Shurwest employees represented to brokers and financial advisors who had contracted with SLIC and/or MLIC, including Securian Financial Network financial advisors that FIP product was legal. *See* Sq. Decl. Ex. 27.

55.     One of the meetings at Shurwest headquarters took place in early March 2017. *See* Sq. Decl. Ex. 26. At that meeting, Shurwest marketed the use of FIP Products to finance the purchase of MLIC and SLIC universal life insurance policies. "Special guest speakers" at the meeting included Securian's Wade Allen, Advanced Marketing Consultant, Securian Financial Group, whose topic was noted as "Premium Finance"; and David McCoy, Senior Life Product Research Specialist, Securian Financial Group. *See* Sq. Decl. Ex. 26.

56.     These advisors and brokers then offered FIP products to Plaintiffs and the Class as a vehicle to finance the premiums for life insurance policies issued by the Securian Defendants. Network Agents were further directed by Shurwest to arrange for Plaintiffs and members of the Class to pay a lump sum to FIP to obtain the stream of structured cash flows it was offering, which – in turn – would be used to fund premiums for the life insurance policies.

57.     According to published reports, approximately 370 financial advisors put their clients in FIP Products and steered those clients to utilize the FIP monthly payments to finance insurance products such as the Securian Defendants 'indexed life insurance policies. *See* Sq. Decl. Ex. 28.

58.     In or about April 2018, FIP ceased making payments to Plaintiffs and the class members. As a result, Plaintiffs and the Class could no longer fund their life insurance policies. Consequently, Plaintiffs and other Class members suffered the lapse of their policies, incurred surrender charges and other penalties, and had paid for policies which never accumulated enough value to provide the Plaintiffs and Class members with

16

a source of retirement income, the objective of the life insurance policy purchase.  At the same time, Plaintiffs and Class members lost whatever they had paid to FIP, which was supposed to – but did not -- yield a steady stream of cash flows that would have funded the life insurance now lapsed.

### I.      Securian Defendants Had Actual And Constructive Notice Of The FIP Scheme

59.      Securian Defendants had actual and constructive knowledge of the illegal FIP loan scheme.  Furthermore, the Securian Defendants knew or should have known of FIP's illegal loan scheme because their high-ranking employees had been present at Shurwest events promoting the scheme as a means of funding life insurance premiums, as well as through reports of actions by state regulatory agencies' enforcement actions against FIP and its founder Scott Kohn, who is now under federal indictment. In addition, the Securian Defendants had a legal obligation under the USA Patriot Act and/or the Bank Secrecy Act to be aware that the Securian Financial Network was utilizing the FIP illegal loan scheme to finance the purchase of life insurance policies issued by the Securian Defendants.  Finally, Securian Defendants had ample opportunity and ability to bar its agents and brokers in the Securian Financial Network from using the FIP illegal loan scheme to finance life insurance policy purchases by Class members.  FIP has been the subject of state regulatory investigations since 2015, with various states including New York, alleging that FIP's business model of "buying pensions" was an illegal scheme. Numerous other state and local regulators and agencies also have ordered FIP to cease its operations.  These agencies include the California Department of Business

Oversight; the Los Angeles City Attorney's Office; the Minnesota Attorney General; the Colorado Attorney General; the Massachusetts Attorney General; the North Carolina Attorney General; the Iowa Attorney General; the Virginia Attorney General; the Oregon Attorney General; the Oregon Department of Consumer and Business Services; the Illinois Attorney General; the Illinois Department of Financial and Professional Regulation; the Maryland Attorney General; the Maryland Commissioner of Financial Regulation; the Pennsylvania Department of Banking and Securities; the New York State Department of Financial Services; and the State of Washington Department of Financial Institutions. In mid-2017, Minnesota Attorney General Lori Swanson filed a lawsuit against FIP and a subsidiary alleging that FIP was making illegal loans disguised as purchases of pensions which obligated the borrowers ("sellers" of pension rights) to repay the loans, termed "purchases," at effective rates of 240% and at average rates of 139% annually.

60.    Securian also would have acquired knowledge of FIP illegal activities through Securian's procedures to ensure compliance with various federal anti-money laundering rules and regulations. Insurers who issue "covered products" such as the Securian Defendants are subject to compliance and reporting requirements of the USA Patriot Act. The "covered products" include life insurance products with cash value or investment features and/or non-group annuity contracts. Under these regulations, each insurance company must develop and implement a risk-based anti-money laundering ("AML") policy reasonably designed to prevent the company from being used to

18

facilitate money laundering "and other financial crimes associated with the insurance company's products."[1]

_____

[1] The scope and objective of these AML laws is not limited to money laundering or terrorist financing only.  In or about 2005, Director of Financial Crimes Enforcement Network ("FinCEN") William J. Fox announced:

> These rules represent key steps in ensuring that the Bank Secrecy Act is applied appropriately to these businesses and in protecting the insurance industry from potential abuse by those seeking to launder money or finance terrorism or other illicit activity.

Also, according to regulators, the insurer's AML program must encompass the activities of agents or brokers who sell "covered products" because "insurance agents and brokers are an integral part of the insurance industry due to their direct contact with customers" and therefore the insurer's AML "policies, procedures and internal controls" must be designed "to integrate its agents and brokers into its anti-money laundering program and to monitor their performance with its program."

In early 2012, FinCEN and the National Association of Insurance Commissioners ("NAIC") reached an agreement to incorporate the initial BSA/AML examination within the regulatory examinations performed by the Department of Insurance of each company's domiciliary state.  NAIC Financial Condition Examination Handbook 2012, Section 1.c., pp. 98–101.

In explaining the requirements for an anti-money laundering program, FinCEN states:

> Under the Bank Secrecy Act, financial institutions are required to identify assess, and mitigate risk that their businesses will be abused by criminals.

*Anti-Money Laundering Program and Suspicious Activity Reporting Requirements for Insurance Companies Frequently Asked Questions*, Financial Crimes Enforcement Network, https://www.fincen.gov/resources/statutes-regulations/guidance/anti-money-laundering-program-and-suspicious-activity (last visited November 22, 2019). Accordingly, Defendants MLIC and SLIC were legally mandated to monitor their own activities as well as those of the Securian Financial Network to prevent FIP's and broker/agent's promotion of financial crimes utilizing Securian Defendants 'products.

61.     SLIC and MLIC agent and broker contracts with Shurwest required Shurwest to comply with AML Laws and to assist MLIC and SLIC's compliance therewith.

**J.     The Class Representatives Suffered The Same Type Of Losses Suffered By All Other Class Members**

62.     The named Plaintiffs, like the rest of the putative Class, all purchased MLIC UIL policies whose premium payments were funded in whole or in part by FIP Products from 2012 through the present. Eleanor and Rocco Ciofoletti ("Ciofoletti"), residents of the State of South Carolina, purchased their UIL Policy (*see* Sq. Decl. Ex. 29) in conjunction with a FIP Product in late 2016 (*see* Sq. Decl. Ex. 30).[2] Plaintiff Larry Stospal ("Stospal"), a resident of the State of Texas, also purchased UIL Policy (*see* Sq. Decl. Ex. 31) from MLIC in conjunction with a FIP Product in late 2016 (*see* Sq. Decl. Ex. 32).  In each case, the Plaintiff purchased the FIP Product as a premium finance vehicle (which was actually an illegal loan) promoted, offered, and sold by Shurwest from a broker/advisor in the Securian Financial Network "appointed by" MLIC.  *See* Sq. Decl. Exs. 23 and24 ( "producer Appointments for   Plaintiffs' financial advisors).  **Plaintiffs have been allowed by Securian to rescind their policies and receive back all of their premium payments,** *See* **Sq. Decl. Ex. 32. Plaintiffs have not been required to provide releases to Securian, nor has Securian sought same.** *Id.* **but Securian has not made plaintiffs whole for the losses suffered through the purchase of the illegal FIP premium funding product . Nor has Securian recompensed**

_____

[2] Ciofoletti has accepted MLIC's offer of rescission but has not released any claims against any of the defendants' herein.

**plaintiffs for all the policy benefits lost to them by the termination of the policies.** *See* **Sq. Decl. Ex.30,2 and  11, Detert Tr. at 56-65.  Likewise, even if some class members have been offered rescission, and even if they have accepted same, such class members still have unrecompensed losses flowing from the wrongful conduct which is the subject of the plaintiffs' claims herein.** Plaintiffs like all other class members suffered the same type of loss.  Securian's Detert testified in detail to losses from policy lapses.  *See* Sq. Decl. Ex. 11, Detert Tr. at 56-65.

### K.   Defendants Fiduciary Relationship With Class Members And Defendants' Breaches  Arose From A Common Course Of Conduct, Not In Individualized Transactions

63.   Defendants' fiduciary relationship with Plaintiffs and class members arose out of facts common to all class members:  (a) Securian's sale of sophisticated financial products through the Securian Financial Network of "financial advisors" whom Securian encouraged class members to rely upon in uniform marketing materials on websites; (b) Securian's invitations to class members to rely on their expertise and advice; (c) Securian's agent relationship with Shurwest and financial advisors such as those who provided financial advise and assistance to Plaintiffs.  Securian's contracts with Shurwest and other financial advisors gave Securian control over the agents.  Sq. Decl. Exs. 3 and 4.  Securian's Detert testified to Securian's power over the agents through "cease and desist orders" (*see* Sq. Decl. Ex. 11, Detert Tr. at 39), which unfortunately were never here exercised to stop the victimization of class members.

64.   The fiduciary breaches likewise were uniformly inflicted on class members: (a) Securian's agents' act of selling   illegal FIP products to class members is itself a

fiduciary breach; (b) Securian's conflict of interest with class members; (c) FIP products allowed Securian to sell more products, (d) after the sale to class members of the illegal products to finance premiums, Securian's conflict was exacerbated by the fact that, as Detert testified, Securian needed the policies to stay "in-force" (*i.e.* paid for) for a least 4-5 years for Securian to break even.  *See* Sq. Decl. Ex. 11, Detert Tr. at 58,63.  Thus even as states were explicitly outlawing FIP products starting in 2015, Securian did not step in and protect, the class members.  Securian's agents  were likewise conflicted because cancellation of the FIP linked Securian policies would have resulted in the agents' obligation to return commissions to Securian or else Securian would "chargeback" the commission to Shurwest and agents.  *See* Sq. Decl. Ex. 11, Detert Tr. at 54-55.  Detert recognized and admitted that agents subject to chargebacks were less likely to continue selling Securian products – even legitimately financed products.  *See* Sq. Decl. Ex. 11, Detert Tr. at 56. That constituted an additional conflict and fiduciary breach.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York, this 2nd day of December, 2019.


*s/*Lee Squitieri
Lee Squitieri