# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ELEANOR and ROCCO CIOFOLETTI, and LARRY STOSPAL on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-vs-<br><br>SECURIAN FINANCIAL GROUP, INC., MINNESOTA LIFE INSURANCE COMPANY, SECURIAN LIFE INSURANCE COMPANY, SHURWEST LLC and MINNESOTA MUTUAL COMPANIES, INC.,<br><br>Defendants. | Case No.:  18-cv-03025<br><br>**CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Eleanor Ciofoletti, Rocco Ciofoletti, and Larry Stospal ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, Squitieri & Fearon, LLP, Wexler Wallace LLP, and Gustafson Gluek PLLC, bring this Consolidated Second Amended Class Action Complaint against Defendants Securian Financial Group, Inc. ("SFG"), Minnesota Life Insurance Company ("MLIC"), Securian Life Insurance Company ("SLIC"), and Minnesota Mutual Companies, Inc. ("MMCI") (collectively, the "Securian Defendants" or "Securian"), along with Shurwest LLC ("Shurwest"), based upon investigation of counsel and Plaintiffs' information and belief:

## INTRODUCTION

1.     This is an action to recover damages on behalf of Plaintiffs and members of the proposed class, defined below (the "Class"), who purchased MLIC or SLIC indexed universal life insurance policies ("IUL") through the Securian Defendants' nationwide network of agents and brokers which included Defendant Shurwest and other financial services firms and advisors, (the "Securian Financial Network").

2.     Defendants marketed and sold the life insurance policies in conjunction with structured cash flow products ("FIP Products") to be purchased by the insureds from Future Income Payments, LLC (or its subsidiaries) ("FIP").  The FIP Products were proposed as a premium financing device to class members by financial advisors who were agents and/or brokers of Securian.  Said brokers and agents were introduced to FIP Products by employees of Shurwest at the time Shurwest was a Securian "Master Broker General Agent" and "Broker" pursuant to written contracts.

3.     State regulatory agencies investigated the FIP Products and determined them to constitute illegal usurious loans as early as 2015.  Defendants, however, continued to sell FIP Products in conjunction with Securian IUL products through 2018, by which time over 20 states had determined that FIP products were unlawful loan products.  When FIP ceased operations as a result, Plaintiffs and the Class not only lost their investments in FIP Products, but also lost or were at risk of losing the life insurance policies purchased from the Defendants because, without the cash flows from the FIP Products, they could no longer pay for them or had to pay from sources other than the FIP products which were marketed and sold to them as premium finance investments.

4.      Plaintiffs bring this action as a class action on behalf of themselves and all similarly affected purchasers of the Securian Defendants' IUL policies who financed their policy premiums through FIP Products, to recover the millions of dollars in premiums paid to Defendants, plus monies lost by Class members in the FIP Products illegal loan scheme.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. 1367 because the sum or value of the claims in this case, exclusive of interest and costs, exceeds $5,000,000 and Plaintiffs and members of the Class are citizens of states different than the Defendants.

6.      The claims arose in this District because the Securian Defendants are based and conduct their operations here.  Shurwest was the Securian Defendants' agent and at all times acted on behalf of the Securian Defendants.  All Defendants acted to promote, market and effectuate the sale of the Securian Defendants' life insurance products.  As such, the unlawful conduct alleged herein originated in, and arose out of, this District. Venue in the District of Minnesota is therefore proper pursuant to 28 U.S.C. § 1391(a) and (b) and 18 U.S.C. 1965(a) and (b).

7.      This Court has personal jurisdiction over Defendants as a result of acts of Defendants occurring in this State in connection with Defendants offerings, solicitation, sales, and issuance of insurance investment products from the State of Minnesota.

## PARTIES

8.      Plaintiffs Eleanor and Rocco Ciofoletti ("Ciofoletti") are residents of the state of South Carolina. In or about late 2016 the Ciofolettis' purchased an Indexed Universal Life Policy from a "broker" appointed by MLIC in the Securian Financial Network.  In conjunction with the sale of the policy the Ciofolettis' were solicited to purchase the FIP Product as a premium finance vehicle (which was actually an illegal loan) promoted, offered, and sold by Shurwest. Ciofoletti has accepted MLIC's offer of rescission but has not released any claims against any of the defendants' herein.

9.      Plaintiff Larry Stospal ("Stospal") is a resident of the state of Texas. In or about late 2016 Stospal purchased from a broker appointed by MLIC in the Securian Financial Network an Indexed Universal Life Policy from MLIC.  In conjunction with the sale of the policy, Stospal was solicited to purchase the FIP product as a premium finance vehicle (which was actually an illegal loan) promoted, offered, and sold by Shurwest. Stospal has accepted MLIC's offer of rescission but has not released any claims against any of the defendants' herein.

10.      Defendant SFG is Delaware mutual holding company with its headquarters in Saint Paul, Minnesota. SFG is the holding company of a group of affiliated companies including Defendants MLIC, SLIC..

11.      Defendant MLIC is a wholly owned subsidiary of SFG which is domiciled in the state of Minnesota. MLIC issues life insurance and annuity products including the policies and products described here. MLIC operates in 49 states of the United States not including New York.

12.     Defendant SLIC is a wholly owned subsidiary of MLIC which is domiciled in the state of Minnesota. SLIC issues life insurance and annuity products including the policies and products described here. SLIC operates only in New York.

13.     Defendant MMIC is headquartered in the state of Minnesota. MMCI is the ultimate holding company parent of SFG, MLIC and SLIC.

14.     Defendant Shurwest is an Arizona limited liability company. Shurwest was at all relevant times a "Master Brokerage General Agent" and "Broker" pursuant to contracts with MLIC and SLIC throughout the Class Period.  In that capacity it engaged in the activities described herein.

## CLASS ACTION ALLEGATIONS

15.     The action is brought and may properly be maintained as a class action pursuant to Rules 23(a), 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure.

16.     This suit is brought on behalf of a Class consisting of and defined as all purchasers of the Defendants' insurance policies whose premium payments were funded in whole or in part by FIP Products from 2012 through the present.

17.     Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and the officers, directors, legal representatives, heirs, successors, subsidiaries and/or assigns of any such individual or entity or the owners of the constituents of the Securian Financial Network  (defined at paragraph 32) involved in the scheme.

18.     The members of the Class are so numerous that joinder of all members individually, in one action or otherwise, are impractical.  Plaintiffs are informed and

believe that there are at least hundreds of proposed Class members geographically dispersed across the United States.

19.     There are numerous questions of law and fact common to Plaintiffs and the Class, including:

      a.   whether Defendants breached their fiduciary duties owed to Plaintiffs and class members by, inter alia, participating (directly or through their agents and brokers) in the promotion, distribution and sale of illegal FIP Products as premium financing vehicles for MLIC and SLIC IUL products;

      b.   whether Shurwest is liable to Plaintiffs and the class for promoting and offering and selling FIP products directly and/or indirectly to Plaintiffs and the class;

      c.   whether Shurwest and the Securian Defendants substantially assisted each other's breach of fiduciary duties owed to Plaintiffs and class members and thereby aided and abetted fiduciary breaches;

      d.   whether the Securian Defendants and Shurwest are liable vicariously for the acts and/or omissions of their respective brokers and agents;

      e.   whether Defendants were unjustly enriched at the expense of Plaintiffs and the Class;

f.  whether Plaintiffs and the Class suffered monetary damages as a result of the Defendants' fiduciary breaches, participation in FIP's illegal loan scheme, and other wrongful conduct; and

g.  the proper measure of damages.

20.  Plaintiffs' claims are typical of the claims of the members of the Class, and they are members of the Class described herein.

21.  Plaintiffs are willing and prepared to serve the proposed Class in a representative capacity with all of the obligations and duties material thereto.  Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to, or which conflict with, the interests of other members of the Class.

22.  Plaintiffs' interests are co-extensive with and not antagonistic to those of the absent Class members.  Plaintiffs will undertake to represent and protect the interests of absent Class members.

23.  Plaintiffs have engaged the services of counsel who are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent Class members.

24.  The questions of law and fact common to the Class, as summarized above, predominate over any questions affecting only individual members, in satisfaction of Rule 23(b)(3).

25.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  Compared to the

hundreds of individual actions, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

26.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

27.     A class action is superior to other available methods for the adjudication of this controversy. Individualized litigation increases the delay and expense to all parties and the court system given the complex legal and factual issues of the case, and judicial determination of the common legal and factual issues essential to this case would be more far more fair, efficient, and economical as a class action maintained in this forum than in piecemeal individual determinations.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

28.     Defendants are in the business of marketing, brokering, and/or selling insurance policies of various types, including Indexed Universal Life ("IUL") policies indexed to stock market investments. The Securian Defendants are issuers of such policies, while Shurwest markets, promotes, and sells policies to both consumers and insurance professionals.

29.     Indexed Universal Life insurance policies such as those which are the subject of this action are complex financial instruments described by Annexus, a Shurwest affiliate, at its website, as follows:

**What is IUL?**

Indexed Universal Life Insurance is a form of permanent life insurance that provides a tax-free death benefit upon your death. It also offers tax-advantaged cash value growth you can access throughout your life. Your cash value earns interest based on the positive performance of an underlying stock market index like the S&P 500. Interest would be credited at the end of an index segment (or term), with common segments of a 1-year, 2-years or up to 5-years. If the index performance is negative during any segment, your cash value is protected from any negative market return.

30.    Similarly, Securian describes IUL products as follows:

**Balancing risk and cash value growth**

Indexed universal life insurance offers cash value growth that is tied to the movement of an underlying index but does not participate in the market.

Minimum and maximum interest crediting limits act as guardrails, which make indexed universal life less risky than variable universal life insurance, while potentially producing greater interest crediting than fixed universal life insurance.

31.    Not surprisingly, in its website page the Securian Defendants invite, encourage and facilitate insureds' use of financial advisers in the purchase of IUL policies as alleged in more detail hereinafter.

A.    <u>The Securian Defendants and the Securian Financial Network</u>

32.    At all times relevant, the Securian Defendants' indexed life insurance policies were sold through "advisors" in the Securian Financial Network, and others.

33.

34.    The Securian Defendants also state the "Securian Financial Network, the marketing name for the sales and distribution arm of Securian Financial Group, Inc., its subsidiaries and affiliates, is a nationwide network of financial services firms. Products

and services are offered and sold only by appropriately licensed entities and financial representatives." They tout the Securian Financial Network as a "long-term resource to provide expertise and create strategies to help you and your family achieve your financial goals." Its advisors "support your everyday moments and major milestones and approach your finances from a holistic standpoint." According to the Securian website, an advisor in the Securian Financial Network:

> • listens to your goals, visions, dreams – and even your fears
>
> • analyzes financial resources and opportunities
>
> • devises a roadmap to help you reach your goals

35.    The Securian Defendants' website further represents:

> At Securian Financial, we equip our financial advisors with suitable choices to serve clients and their unique situations. Our advisors offer a range of life insurance, annuities and wealth management solutions to help you put family first.
>
> * * *
>
> With access to a network of more than 1,100 registered financial advisors, building your secure tomorrow is just a click away.

36.    The Securian Defendants, on their website, also boast: "[we] serve nearly 19 million customers through 5300 employees and representatives."

**B.    Shurwest's Role**

37.    Shurwest was a broker and "Master Brokerage General Agent" for both MLIC and SLIC pursuant to contracts with each. Shurwest was, upon information and belief a member of the Securian Financial Network. Shurwest marketed, promoted and sold life insurance products and FIP Products to insureds and assisted and directed

members of the Securian Financial Network in the marketing, promotion, and sale of life insurance policies.

38.     Shurwest also served as an Independent Marketing Organization ("IMO"). As one court explained the function of IMOs:

> Insurance companies generally do not recruit independent insurance agents to sell their products. Instead, IMOs recruit independent insurance agents to sell [fixed index annuities] and other types of insurance products to the independent agents' clients. An IMO serves as a third-party intermediary between the agents and the insurance companies, providing product education, marketing, and distribution services. Insurance companies generally compensate IMOs for their support services based on a percentage of agent sales volume.

*Mkt. Synergy Group, Inc. v. United States Dep't of Labor*, 16-CV-4083-DDC-KGS, 2016 WL 6948061, at *3 (D. Kan. Nov. 28, 2016). Shurwest, in addition to its contractual relationship with Securian, also served as an IMO between Securian and the brokers and agents within the Securian Financial Network.

39.     In its IMO role to agents and brokers, Shurwest promotes itself as follows:

PROPRIETARY SOLUTIONS

Shurwest gives you access to a complete array of insurance carriers offering the most advances . . . indexed universal life insurance strategies available today. By choosing us as your partner you also gain access to patented limited distribution solutions that set you apart from your competition.

EDUCATION AND TRAINING

- Webinars
- Onsite visits to come to meet our team
- Personal coaching
- Peer to peer idea sharing

http:/shurwest.com/advisor-services# proprietary solutions last accessed November 4, 2019 10:30 pm.

40.     Under its agreements with SLIC and MLIC, Shurwest was authorized to recommend to SLIC and MLIC "producers" who SLIC and/or MLIC should appoint to be their agents.  Shurwest was also authorized under broker and agent agreements to "provide service" to "product owners" of SLIC and MLIC "products."  The services Shurwest provided to "product owners" (*i.e.*, the Plaintiffs and class members) included premium finance products and services.  As the IMO recruited by the Securian Defendants to be their agent, Shurwest provided education, marketing, and distribution services to both agents and brokers in the Securian Financial Network ("Network Agents") and others. When insurance brokers and/or financial advisers who used Shurwest's services sold a Securian Defendant's product, the Securian Defendants paid a portion of the commissions to Shurwest pursuant to the agreements.  Likewise, when Shurwest employees sold FIP Products they received commissions from FIP.

41.     Under the Master Brokerage General Agent ("MBGA") Agreements with MLIC and SLIC, Shurwest contracted to perform "the following activities" (in relevant part):

> 1.2 . . .
>
>> (a) Supervise, insofar as possible, Your Brokers to ensure that they:
>>
>> * * *

> 4. Comply with all applicable insurance laws and regulations governing the sales and servicing of our products
>
>       * * *
>
> (b) Review all applications before submitting them to US . . . and submit only those applications that have been properly completed. . .
>
> 4.11 Anti-Money/Laundering: You shall comply and require your brokers to comply with our anti-money laundering policy and if requested You and Your Brokers shall assist in satisfying Our obligations under our anti-money laundering policy.

42. Shurwest also entered into Broker Sales Contracts with each of MLIC and SLIC.  The Broker Agreement provided in part:

> Section 3 ETHICAL STANDARDS
>
>       * * *
>
> 4.11 Anti-Money Laundering
> You should comply with Our anti-money lending policy and if requested, you shall assist in satisfying our obligations under Our Anti-money laundering policy.

43. Shurwest, at all times acted within the scope of the agent and broker agreements referred to above with the actual or apparent authority of the Securian Defendants, and its actions relative to the FIP Products described below were known or should have been known to the Securian Defendants.

**C. <u>Securian Promotes The Use Of Their "Financial Advisors" To Advise Insureds With Respect To IUL</u>**

44.     Securian's   website   page   entitled   "Universal   Life   Insurance" (securian.com/products-services/life-insurance/universal-life-insurance.html(As  of  10:24 a.m.  cst.11/6/2019)  acknowledges  that  its  IUL  products  are  complicated  financial instruments for which insureds will require the services of financial advisors, it states:

> Types of universal life insurance.  What type is right for you?
> If  you  and  your  financial  advisor  determine  universal  life
> insurance is a good choice, Securian offers three variations to
> choose from – fixed, indexed and variable.
>
> The main difference between the products is the risk/return
> associated  with  their  cash  value  growth  potential.   When
> choosing  the  ideal  product  for  your  needs,  you  and  your
> advisor should consider your level of risk tolerance.

45.     In  its  website  page  specifically  referencing  "Indexed  universal  life," Securian invites visitors to "Ask a professional" "A financial advisor can help you analyze your needs and help you choose the insurance that's rights for you." The site contains a "live" box labeled, "Find an advisor," which when clicked directs a visitor to a member of the Securian Financial Network in the visitors' vicinity.

**D.     The FIP Illegal Loan Scheme**

46.     From 2012 through 2018, FIP engaged in an illegal loan scheme that involved FIP's "purchase" of a portion of a consumer's future pension stream at a "discount" in exchange for providing the consumer with a lump sum payment ("purchase transaction").   The consumer was obligated to repay FIP through a series of monthly payments.  In the aggregate, that series of payments always exceeded the amount of the lump sum received by the consumer.  FIP represented to the consumer, among other things, that (i) these lump-sum payments were not "loans," (ii) there was no applicable

interest rate, and (iii) the cost of the lump-sum advance was less than that of potential alternative sources of funds, such as credit cards.

47.     FIP Products were the income streams FIP acquired from consumers, which FIP then sold to "investors" such as Plaintiffs and class members.  FIP Products were typically 60- or 120-month cash flow payments, at interest rates between 7% and 12%.

48.     The purchase transactions in which FIP engaged were, in fact, illegal usurious loans significantly more costly to consumers than alternative financial products to which FIP drew comparisons.  FIP misrepresented material aspects of the purchase transactions and engaged in deceptive acts and practices as well as other violations of federal consumer financial law, leading to its shutdown and placement in receivership.

### E.      Defendants' Participation In The FIP Scheme Helps Life Policy Sales

49.     FIP obtained "investors" in FIP Products through referrals from financial advisors including Shurwest and its employees.  *Bureau of Consumer Financial Protection v. Future Income Payments, LLC et al.* (C.D. Cal.), Case No. 8:18-cv-01654, Complaint ¶ 45.

50.     To offer MLIC and SLIC life insurance policies financed by FIP Products, Network Agents signed broker agreements with MLIC or SLIC wherein Shurwest was the Master Broker Agent.  Among other things, those agreements required Network Agents to remit policy applications and initial premiums to Shurwest, which in turn forwarded them to the Securian Defendants. At all relevant times, Network Agents acted within the scope their respective agency agreements with Shurwest and the Securian

Defendants, with the actual or apparent authority of both Shurwest and the Securian Defendants.

51.     Under its own practices,and policies, Securian allowed only brokers under contract to MLIC or SLIC to market and offer IUL products to insureds.

52.     Using typical Securian marketing material, Shurwest marketed the FIP Products to MLIC and SLIC brokers at conferences, webinars and face to face meetings as a method for financing the premiums of life insurance policies issued by the Securian Defendants.  In its capacity as the Securian Defendants' agent and/or broker, Shurwest marketed FIP Products as one of many investment products available for Securian brokers to sell to Plaintiffs and class members.

53.     Shurwest employees introduced brokers/advisers, including Network Agents, to the FIP Products during meetings at the Shurwest's corporate headquarters and/or conferences held nearby.  At these events, Shurwest specifically pitched the FIP Products to agents, brokers and Securian Defendants' employees as a means of funding life insurance policies issued by the Securian Defendants. The Shurwest employees conducting these meetings and otherwise pitching FIP Products in conjunction with the sale of the Securian Defendants' life insurance policies, were at all times acting within the scope of their employment with Shurwest, with the actual or apparent authority of Shurwest, and their actions relative to the FIP Products were known or should have been known to Shurwest.

54.     Shurwest employees recommended and facilitated the use of the FIP Products as premium financing vehicles  as safe and reliable products that would provide

16

a consistent stream of income that would fund the payment of the Securian Defendants' life insurance policies.

55.     One of the conferences sponsored by Shurwest took place in early March, 2017.   At that conference, Shurwest marketed the use of FIP Products to fund the purchase of MLIC and SLIC universal life insurance policies.   "Special guest speakers" at the conference included Wade Allen, Advanced Marketing Consultant, Securian Financial Group, whose topic was noted as "Premium Finance"; and David McCoy, Senior Life Product Research Specialist, Securian Financial Group.

56.     At the meetings and conferences it sponsored, Shurwest promoted FIP Products to SLIC and/or MLIC financial advisors and brokers who had been introduced to Securian by Shurwest.   These advisors and brokers then offered FIP products to Plaintiffs and the Class as a vehicle to finance the premiums for life insurance policies issued by the Securian Defendants. Network Agents were further directed by Shurwest to arrange for Plaintiffs and members of the Class to pay a lump sum to FIP to obtain the stream of structured cash flows it was offering, which – in turn – would be used to purchase the life insurance policies.

57.     Shurwest communicated with and directed Network Agents in effectuating the transactions, and accepted and transferred to the Securian Defendants, Plaintiffs' and Class members' premium payments for the insurance policies in connection with those transactions.

58.     Using the misinformation provided to them by the Securian Defendants through Shurwest and acquiesced in by the Securian Defendants, the Network Agents

sold FIP Products to Plaintiffs and the Class to finance the premiums for life insurance policies issued by the Securian Defendants, and structured the sales so that the payment stream from the FIP would be used to pay the Securian Defendants for the life insurance policies.

59.     According to published reports, approximately 370 financial advisors put their clients in FIP Products and steered those clients to utilize the FIP monthly payments to fund insurance products such as the Securian Defendants' indexed life insurance policies.

60.     In or about April 2018, FIP ceased making payments to income stream purchasers, i.e., Plaintiffs and Class members. As a result, Plaintiffs and the Class could no longer fund the life insurance policies sold to them by Defendants.  Consequently, Plaintiffs and other Class members suffered the lapse of their policies, incurred surrender charges and other penalties, and had paid for policies which never accumulated enough value to provide the Plaintiffs and Class members with a source of retirement income, the objective of the life insurance policy purchase.  At the same time, Plaintiffs and Class members lost whatever they had paid to FIP, which was supposed to – but did not -- yield a steady stream of cash flows that would have funded the life insurance now lapsed.

**F.**   **Defendants Had Actual And Constructive Notice Of The FIP Scheme**

61.   Defendants had actual and constructive knowledge of the illegal FIP loan scheme.

62.   Indeed, Shurwest claimed it had vetted the FIP Products, and it was also responsible for structuring the FIP Products and facilitating the use of the FIP Products for the purchase of the Securian Defendants' life insurance policies.

63.   Furthermore, the Securian Defendants knew or should have known of FIP's illegal loan scheme by the presence of their high-ranking employees at Shurwest events promoting the scheme as a means of funding life insurance premiums, as well as through reports of actions by state regulatory agencies' enforcement actions against FIP and its convicted felon founder Scott Kohn. In addition, the Securian Defendants had a legal obligation under the USA Patriot Act and/or the Bank Secrecy Act to be aware that the Securian Financial Network was utilizing the FIP illegal loan scheme to finance the purchase of life insurance policies issued by the Securian Defendants.  Finally, the Securian Defendants had ample opportunity and ability to bar its agents and brokers in the Securian Financial Network from using the FIP illegal loan scheme to finance life insurance policy purchases by Plaintiffs and Class members.

64.   FIP has been the subject of state regulatory investigations since 2014, with various states including New York, alleging that FIP's business model of "buying pensions" was an illegal scheme.

65.   Numerous other state and local regulators and agencies also have ordered FIP to cease its operations.   These agencies include the California Department of

Business Oversight; the Los Angeles City Attorney's Office; the Minnesota Attorney General; the Colorado Attorney General; the Massachusetts Attorney General; the North Carolina Attorney General; the Iowa Attorney General; the Virginia Attorney General; the Oregon Attorney General; the Oregon Department of Consumer and Business Services; the Illinois Attorney General; the Illinois Department of Financial and Professional Regulation; the Maryland Attorney General; the Maryland Commissioner of Financial Regulation; the Pennsylvania Department of Banking and Securities; the New York State Department of Financial Services; and the State of Washington Department of Financial Institutions.

66.    In mid-2017, Minnesota Attorney General Lori Swanson filed a lawsuit against FIP and a subsidiary alleging that FIP was making illegal loans disguised as purchases of pensions which obligated the borrowers ("sellers" of pension rights) to repay the loans, termed "purchases," at effective rates of 240% and at average rates of 139% annually.

67.    Securian also would have acquired knowledge of FIP illegal activities through Securian's procedures to ensure compliance with various federal anti-money laundering rules and regulations.  Insurers who issue "covered products" such as the Securian Defendants are subject to compliance and reporting requirements of the USA Patriot Act.  The "covered products" include life insurance products with cash value or investment features and/or non-group annuity contracts.  Under these regulations, each insurance company must develop and implement a risk-based anti-money laundering ("AML") policy reasonably designed to prevent the company from being used to

facilitate money laundering "and other financial crimes associated with the insurance company's products."

68.     The scope and objective of these AML laws is not limited to money laundering or terrorist financing only.  In or about 2005, Director of Financial Crimes Enforcement Network ("FinCEN") William J. Fox announced:

> These rules represent key steps in ensuring that the Bank Secrecy Act is applied appropriately to these businesses and in protecting the insurance industry from potential abuse by those seeking to launder money or finance terrorism or other illicit activity.

69.     Also, according to regulators, the insurer's AML program must encompass the activities of agents or brokers who sell "covered products" because "insurance agents and` brokers are an integral part of the insurance industry due to their direct contact with customers" and therefore the insurer's AML "policies, procedures and internal controls" must be designed "to integrate its agents and brokers into its anti-money laundering program and to monitor their performance with its program."

70.     SLIC and MLIC agent and broker contracts with Shurwest required Shurwest to comply with AML Laws and to assist MLIC and SLIC's compliance therewith.

71.     In early 2012, FinCEN and the National Association of Insurance Commissioners ("NAIC") reached an agreement to incorporate the initial BSA/AML examination within the regulatory examinations performed by the Department of Insurance of each company's domiciliary state.  NAIC Financial Condition Examination Handbook 2012, Section 1.c., pp. 98–101.

72.    The United States Treasury Department's "bottom line" was explained in its "Frequently Asked Questions," Anti Money Laundering Program And Suspicious Activity Reporting Requirements For Insurance Companies":

> Under the Bank Secrecy Act, financial institutions are required to identify assess, and mitigate risk that their businesses will be abused by criminals.

73.    Accordingly, Defendants MLIC and SLIC were legally mandated to monitor their own activities as well as those of the Securian Financial Network to prevent FIP's and broker/agent's promotion of financial crimes utilizing Defendants' products.

74.    Although Defendants had actual and constructive knowledge of the illegal FIP loan scheme, the brokers who were involved in the sales process were assured by Shurwest employees that FIP Products were appropriate for the insureds who were purchasing ILU products.   Securian's presence at and participation in, webinars and conferences wherein Securian representatives spoke about premium financing vehicles and advantages where FIP products were being promoted conveyed Securian's implied grant of authority to Shurwest to promote FIP products as a premium financing vehicle for IUL policies offered by MLIC and SLIC.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty against the Securian Defendants)

75.    Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

76.    Securian promotes itself and its Network as "financial advisors" which offer financial advice to clients in connection with  sale of MLIC and SLIC policies.

77.    As a result of Securian Defendants' promotions  of financial advisory services  and Securian Defendants' superior knowledge, skill and resources, the Securian Defendants became fiduciaries to Plaintiffs and the Class.

78.    Among the fiduciary duties owed to Plaintiffs and the Class were duties to avoid conflicts of interests with Plaintiffs and Class members; resolve conflicts in favor of Plaintiffs and Class members where conflicts arise; to always act in the best interest of Plaintiffs and the Class; to make full fair and accurate disclosure of all facts material to the relationship and transactions with Plaintiffs and members of the Class.

79.    The Securian Defendants' duties to Plaintiff and Class members were, and are, non-delegable.

80.    The Securian Defendants had a duty to Plaintiffs and members of the class not to sell, or allow its agents to sell, to Plaintiffs and class members the illegal FIP loan products.

81.    Securian was required by law to have procedures in place to ensure compliance with AML and BSA laws both for itself and to impose such procedures upon its agents and brokers.

82.    These regulatory imperatives which were placed upon Securian resulted in Securian's knowledge (if proper compliance procedures were implemented and followed) regarding the illegal FIP Products that were being offered in conjunction with SLIC and MLIC products and which were being used as premium financing vehicles.

83.    The Securian Defendants had actual or constructive knowledge of the illegal FIP loan scheme and knew they were reaping consistent and unlawful profits from the scheme at the expense of Plaintiffs and the Class.

84.    The Securian Defendants' acts and omissions constitute a breach of fiduciary duties owed to Plaintiffs and members of the Class.

85.    The Securian Defendants' fiduciary breaches and participation in Shurwest's promotion and sale of FIP products was a proximate cause of the Plaintiffs and Class members' injuries.

86.    As a direct and proximate result of the Securian Defendants' activities, Plaintiffs and the Class suffered loss and damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty (Against Shurwest))

87.    Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

88.    Shurwest recruited and solicited financial advisors to utilize Shurwest services and its insurance broker and agent facilities with Securian and recommended financial advisers to be appointed as Securian insurance agents pursuant to the Master Brokerage General Agency Agreements between Shurwest and MLIC and SLIC.

89.    Shurwest undertook to market to and educate Network Agents on how to influence Plaintiffs and Class members regarding the purchase of FIP products as a means of paying premiums for insurance issued by MLIC and SLIC.

90.    In so acting, Shurwest had and took advantage of the opportunity to influence and thus assumed a fiduciary duty to Plaintiffs and the Class.

91.    As Network Agents learned from Shurwest about and how to promote, describe, and sell the FIP Products structured to finance Plaintiffs' and Class members' life insurance policies, Plaintiffs and Class members placed their trust and confidence in Shurwest by virtue of, among other things, Shurwest's superior knowledge.

92.    Because Shurwest owed Plaintiffs and Class members a fiduciary duty, either directly, or as the agent of Securian, Shurwest was required to observe the utmost good faith toward Plaintiffs and Class members in all of its transactions in accordance with fiduciary standards of care, skill, and judgment.

93.    Shurwest knew, or had reason to know, that Plaintiffs and Class members placed their trust and confidence in Shurwest to counsel and inform Plaintiffs with respect to the FIP Products used to finance their life insurance policies.

94.    Shurwest also knew that it had the opportunity to influence Plaintiffs and the Class through its education of Network Agents.

95.    Shurwest, through its officers, employees, and agents breached the fiduciary duty it owed to Plaintiffs and Class members in numerous ways, including, without limitation, failing to properly vet the FIP Products while claiming that it had done so; failing to supervise its employees and/or agents regarding the sale of FIP Products; failing to disclose material facts about the FIP Products to Plaintiffs, Class members, Network Agents, and other broker/agents, including that the FIP Products were part of an illegal loan scheme; failing to provide Plaintiffs and Class members with

undivided loyalty; failing to disclose at relevant times that the FIP Products were deteriorating as "investments" and could no longer sustain the premium payments on Plaintiffs' and Class members' life insurance policies; continuing to structure, market, and facilitate the sale of FIP Products to finance Plaintiffs and Class members' life insurance policies despite knowledge that the FIP Products were part of an illegal loan scheme; and acting in bad faith, with negligence, gross negligence, willful misconduct, and/or reckless disregard of its duties.

96.     As a result of Shurwest's breach of fiduciary duty, Class members lost millions of dollars.

## THIRD CAUSE OF ACTION

### (Aiding And Abetting Breach Of Fiduciary Duty Against Shurwest)

97.     Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if set forth fully herein.

98.     Plaintiffs bring this claim against Shurwest for aiding and abetting the breaches of fiduciary duty committed by the Securian Defendants.

99.     The Securian Defendants were in a fiduciary relationship with Plaintiffs and the Class and were in a superior position over the Class which required Class members to repose trust and confidence in the Network Agents who were operating on the Securian Defendants' behalf.

100.    Shurwest knew that the Securian Defendants had fiduciary duties to Class members and knowingly participated in the breach of those duties, rendering substantial assistance and causing harm to Plaintiffs and the Class.

101.    Specifically, as the agent for the Securian Defendants, Shurwest educated and marketed to the Network Agents the FIP Products as a legal and appropriate way for clients of the agents and brokers to finance the purchase of the Securian Defendants' life insurance policies.  The agents and brokers looked to Shurwest, an IMO, for product education, marketing, and distribution services with regard to the Securian Defendants' life insurance policies and the information provided by Shurwest aided and abetted breaches of the Securian Defendants' fiduciary duties by promoting the sale of illegal FIP Products in conjunction with the Securian Defendants' life insurance policies.

102.    At all times, Shurwest was the agent for the Securian Defendants, and thus Shurwest participated in, and provided substantial assistance to, the Securian Defendants' breaches.

103.    Shurwest's assistance was a proximate cause of the breaches.  Without Shurwest's assistance, Network Agents would not have even known to sell the FIP Products in conjunction with the Securian Defendants' life insurance policies, much less promote them as a legitimate vehicle for financing premiums.

104.    As a result of Shurwest's aiding and abetting this breach of fiduciary duty, Class members lost millions of dollars.

## FOURTH CAUSE OF ACTION

**(Against The Securian Defendants And Shurwest Under The Doctrine Of Respondent Superior Giving Rise To Strict Vicarious Liability)**

105.    Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

106.   At all times relevant to this action a principal/agent relationship existed between the Securian Defendants on the one hand, and Shurwest and the Network Agents on the other hand.

107.   The Securian Defendants are liable for any acts or omissions of its agents Shurwest and the Network Agents with respect to the sale of FIP Products to finance the premium payments for MLIC and SLIC policies purchased by Plaintiffs and Class members.

108.   Shurwest and the Network Agents owed fiduciary duties to Plaintiffs and Class members in connection with the transactions at issue herein.  Shurwest and the Network Agents acted as financial advisors in connection with the use of FIP Products to finance the premium payments for MLIC and SLIC policies purchased by Plaintiffs and Class members.

109.   Shurwest and all Network Agents had actual and/or apparent authority to use FIP Products to fund the premium payments on SLIC and MLIC policies purchased by Plaintiffs and Class members. The Network Agent's inclusion in the Securian Financial Network caused Plaintiffs and Class members to reasonably and objectively believe that the Network Agents had the Securian Defendants' authority to put Class members into the FIP Products to finance the premium payments for the MLIC and SLIC policies purchased by Class members.

110.   The Securian Defendants are liable for the acts of Shurwest and agents/brokers in the Securian Financial Network because such acts (i) inured to the benefit of Defendants who sold more policies than they otherwise would have; (ii) were

ratified by MLIC and SLIC; (iii) Defendants created the appearance that such acts were authorized; (iv) such acts were within the actual and/or apparent authority of Shurwest and the Network Agents; (v) it was only with Shurwest's participating and the Network Agent's role in the Securian Financial Network that the Network Agents could sell the FIP products to finance the insurance policies issued by MLIC and SLIC.

111.   The acts or omissions of Shurwest and the agents/brokers in the Securian Financial Network in connection with the loan scheme to finance premium payments to MLIC and/or SLIC all occurred within the scope of the agreement between Defendants (other than Shurwest) and Shurwest and the agents/brokers and/or was ratified by the Securian Defendants, expressly or impliedly, through their consent or knowing acquiescence.

112.   Although Shurwest had actual and constructive knowledge of the illegal FIP loan scheme, the Network Agents and other broker/agents lacked the information known to Defendants and, in selling the FIP Products in conjunction with the Securian Defendants' life insurance Products, were the unwitting instrumentalities of Defendants.

113.   Shurwest is vicariously liable for the fiduciary breaches of the Securian brokers whom Shurwest had recommended to Securian be appointed as Securian agents.

114.   As a result of the acts or omissions by the Shurwest and the Network Agents, Plaintiffs and Class members have suffered loss and damage.

115.   As a result of the foregoing, the Securian Defendants are jointly and severally liable to Plaintiffs and the Class for damages to be proven at trial.

## FIFTH CAUSE OF ACTION

## (Unjust Enrichment Against All Defendants)

116.   Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

117.   Defendants have unjustly benefitted through their illegal loan scheme by obtaining monies from Plaintiffs and the Class which, but for Defendants' deceit and participation in the illegal scheme, they would not have obtained.

118.   Defendants earned these benefits at the expense of Plaintiffs and the Class members and cannot justly retain them.

119.   Equity and good conscience require full restitution of the monies received by Defendants, directly and indirectly, from Class members.  This includes not only the monies of the Class members, but also any profits made from its use of this money.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgement against the Defendants, as follows:

A.   Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiffs and the Class, as a result of the Defendants' liability for wrongful acts;

B.   Order disgorgement of all monies received by Defendants as a result of sales of policies in connection with the illegal loan scheme;

C.   Awarding Plaintiffs and the Class their reasonable attorneys' fees and

costs, to the fullest extent allowed by law; and

      D.     Granting all such additional or further relief as this court deems just and equitable under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  December 3, 2019

          s/Daniel J. Nordin
          Daniel E. Gustafson (#202241)
          Karla M. Gluek (#238399)
          Amanda M. Williams (#341691)
          Daniel J. Nordin (#392393)
          **GUSTAFSON GLUEK PLLC**
          Canadian Pacific Plaza
          120 South Sixth Street, Suite 2600
          Minneapolis, MN  55402
          Tel: (612) 333-8844
          dgustafson@gustafsongluek.com
          kgluek@gustafsongluek.com
          awilliams@gustafsongluek.com
          dnordin@gustafsongluek.com

          Lee Squitieri (*pro hac vice*)
          **SQUITIERI & FEARON, LLP**
          32 East 57th Street
          12th Floor
          New York, New York 10022
          Tel: (212) 421-6492
          lee@sfclasslaw.com

Kenneth A. Wexler (*pro hac vice*)
Kara A. Elgersma (*pro hac vice*)
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

***Interim Co-Lead Counsel for
Proposed Class***