UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ELEANOR and ROCCO CIOFOLETTI, and LARRY STOSPAL on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURIAN FINANCIAL GROUP, INC., MINNESOTA LIFE INSURANCE COMPANY, SECURIAN LIFE INSURANCE COMPANY, SHURWEST LLC and MINNESOTA MUTUAL COMPANIES, INC.,<br><br>Defendants. | Civil Action No.: 18-cv-03025-JNE-ECW |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHURWEST, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.   Shurwest, LLC ........................................................................................ 3

    B.   Melanie Schulze-Miller and MJSM Financial LLC ....................................... 4

    C.   Future Income Payments, LLC and Receivership Stay ............................... 5

    D.   Plaintiffs' Claims Against Shurwest ......................................................... 6

III. LEGAL STANDARD ....................................................................................... 8

    A.   Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction............. 8

    B.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim .................... 8

IV. ARGUMENT .................................................................................................. 9

    A.   Plaintiffs Have Failed to Establish Personal Jurisdiction. ......................... 9

        1.   This Court Lacks General Personal Jurisdiction Over
            Shurwest. .................................................................................. 10

        2.   This Court Lacks Specific Personal Jurisdiction Over
            Shurwest. .................................................................................. 11

    B.   Plaintiffs Cannot State a Valid Claim Against Shurwest. ......................... 18

        1.   Plaintiffs' Breach of Fiduciary Duty Claim Fails. .......................... 19

        2.   Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty
            Claim Fails. ................................................................................ 21

        3.   Plaintiffs' Vicarious Liability Claim Fails. .................................... 23

        4.   Plaintiffs' Unjust Enrichment Claim Fails. ................................... 24

V.  CONCLUSION ............................................................................................. 25

WEST/289828913

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 8, 9, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 8

*Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*,
53 F.3d 920 (8th Cir. 1995) ......................................................................................... 9

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
No. 05-CV-2310, 2006 WL 3544956 (D. Minn. Dec. 8, 2006) ................................. 20

*Calder v. Jones*,
465 U.S. 783 (1984) ................................................................................................... 12

*Camp v. Dema*,
948 F.2d 455 (8th Cir. 1991) ..................................................................................... 22

*Chamfer Eng'g, Inc. v. Tapco Int'l, Inc.*,
82 F.R.D. 33 (D. Minn. 1979) .................................................................................... 17

*Coen v. Coen*,
509 F.3d 900 (8th Cir. 2007) ....................................................................................... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................... 9, 10

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
702 F.3d 472 (8th Cir. 2012) ....................................................................................... 8

*Deloney v. Chase*,
755 F. App'x 592 (8th Cir. 2018) .............................................................................. 12

*Downing v. Goldman Phipps, PLLC*,
764 F.3d 906 (8th Cir. 2014) ..................................................................................... 11

*Dunlop Tires Ops., S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................................... 9

WEST/289828913

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................. 20

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
    678 F.3d 659 (8th Cir. 2012) ................................................................... 22

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014) ................................................................... 16

*First Nat'l Bank of Minneapolis v. White*,
    420 F. Supp. 1331 (D. Minn. 1976) .............................................. 11, 17, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................................. 10

*Hot Stuff Foods, LLC v. Dornbach*,
    726 F. Supp. 2d 1038 (D. Minn. 2010) ................................................... 19

*Johnson v. Woodcock*,
    444 F.3d 953 (2006) ................................................................................. 12

*Kludt v. MCF-Rush City*,
    No. 17-CV-3842, 2018 WL 3059680 (D. Minn. May 30, 2018), *report
    and recommendation adopted*, Civ. No. 17-3842, 2018 WL 3059675 (D.
    Minn. June 20, 2018), *aff'd*, No. 18-2704, 2019 WL 468892 (8th Cir.
    Jan. 23, 2019 ........................................................................................... 19

*Estate of Lane v. CMC Mortg., Inc.*,
    No. 14-CV-3277, 2015 WL 2195176 (D. Minn. May 11, 2015) ................ 24

*Marquardt v. City of Blaine*,
    136 F. Supp. 3d 1049 (D. Minn. 2015) .................................................. 8, 9

*Miller v. Nippon Carbon Co.*,
    528 F.3d 1087 (8th Cir. 2008) ................................................................... 9

*Mountaire Feeds, Inc. v. Agro Impex, S. A.*,
    677 F.2d 651 (8th Cir. 1982) ................................................................... 15

*In re Municipal Stormwater Pond*,
    --- F. Supp. 3d ----, 2019 WL 8014509 (D. Minn. Nov. 25, 2019) ......... 9, 11

*Page v. Minn. Life Ins. Co.*,
    18-CV-01208, 2018 WL 7501580 (C.D. Cal. Dec. 3, 2018) ........................ 2

iii

*Page v. Minn. Life Ins. Co.*,
   No. 18-CV-01208, 2019 WL 3059561 (C.D. Cal. Mar. 11, 2019)................................ 2

*Parkhill v. Minn. Mut. Life Ins. Co.*,
   174 F. Supp. 2d 951 (D. Minn. 2000) ....................................................................... 22

*Pederson v. Frost*,
   951 F.3d 977 (8th Cir. Mar. 10, 2020) ..................................................................... 11

*Peluso v. N.J. Devils, LLC*,
   No. 17-CV-01299, 2018 WL 4054108 (D. Minn. Aug. 24, 2018) ......................... 8, 10

*Schneeweis v. Nw. Tech. Coll.*,
   No. 97-1742, 1998 WL 420564 (D. Minn. June 1, 1998) ...................................... 8, 12

*In re: Scott A. Kohn Future Income Payments, LLC*,
   No. 6:19-CV-01112, Dkt. 41 (D.S.C. Mar. 3, 2020) ................................................ 6, 7

*Stevens v. Spegal*,
   No. 09-CV-1394, 2010 WL 106603 (E.D. Mo. Jan. 6, 2010) .................................... 22

*Tatone v. SunTrust Mortg., Inc.*,
   857 F. Supp. 2d 821 (D. Minn. 2012) ....................................................................... 19

*United States v. Kohn, et al.*,
   No. 6:19-cr-00239 (D.S.C. Mar. 12, 2019) .................................................................. 6

*Varga v. U.S. Bank Nat'l Ass'n*,
   764 F.3d 833 (8th Cir. 2014) ............................................................................... 21, 22

*Varga v. U.S. Bank Nat'l Ass'n*,
   952 F. Supp. 2d 850 (D. Minn. 2013) .................................................................. 22, 23

*Vetta-Zelo, Inc. v. Ideum, Inc.*,
   No. Civ. 13-367, 2013 WL 3177804 (D. Minn. June 24, 2013) ........................... 15, 16

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ................................................................................. 8, 9

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................................... 11, 12, 18

*Wash. Sci. Indus., Inc. v. Am. Safeguard Corp.*,
   308 F. Supp. 736 (D. Minn. 1970) ........................................................................... 17

iv

*Yellow Brick Road, LLC v. Childs*,
   36 F. Supp. 3d 855 (D. Minn. 2014) ............................................................... 9

**Other State Cases**

*Caldas v. Affordable Granite & Stone, Inc.*,
   820 N.W.2d 826 (Minn. 2012) ..................................................................... 24

*Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*,
   597 N.W.2d 905 (Minn. 1999) ..................................................................... 23

*Hagen v. Burmeister & Assocs., Inc.*,
   633 N.W.2d 497 (Minn. 2001) ..................................................................... 15

*Hansen v. U. S. Bank Nat'l Ass'n*,
   934 N.W.2d 319 (Minn. 2019) ..................................................................... 19

*Kasner v. Gage*,
   161 N.W.2d 40 (Minn. 1968) ....................................................................... 15

*Marshall v. Inn on Madeline Island*,
   610 N.W.2d 670 (Minn. Ct. App. 2000) ..................................................... 10

*Nadeau v. Melin*,
   110 N.W.2d 29 (Minn. 1961) ....................................................................... 23

*Rodillas v. Minn. Life, et al.*,
   No. 19-ST-CV-21497 (Los Angeles Cty. Super. Ct. Jan. 6, 2020) .......... 2, 14

*Schumacher v. Schumacher*,
   627 N.W.2d 725 (Minn. Ct. App. 2001) ..................................................... 24

*St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*,
   738 N.W.2d 401 (Minn. Ct. App. 2007) ..................................................... 21

*Stark v. Equitable Life Assur. Soc'y*,
   285 N.W. 466 (Minn. 1939) ......................................................................... 20

*Stemmer v. Estate of Sarazin*,
   362 N.W.2d 406 (Minn. Ct. App. 1985) ..................................................... 24

*Witzman v. Lehrman, Lehrman & Flom*,
   601 N.W.2d 179 (Minn. 1999) ..................................................................... 21

WEST/289828913

**Other Statutes and Authorities**

Fed. R. Civ. P. 8 ........................................................................................... 23

Fed. R. Civ. P. 12(b)(2) ..................................................................... 1, 3, 8, 25

Fed. R. Civ. P. 12(b)(6) ............................................................................ *passim*

Minn. Stat. § 543.19 ...................................................................................... 16

WEST/289828913

Defendant Shurwest, LLC ("Shurwest") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (Doc. 94, the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.   <u>INTRODUCTION</u>

Named Plaintiffs Eleanor Ciofoletti, Rocco Ciofoletti, and Larry Stospal allege that they were ripped off, but they do not (and cannot) allege that Shurwest had anything to do with it because Shurwest did not. Plaintiffs seek to represent a class of individuals who, on the advice of independent financial advisors (not Shurwest), purchased indexed universal life insurance policies ("IUL") that would be funded through a further investment in structured cash flows through Future Income Payments, LLC ("FIP"). Plaintiffs state that these FIP products have now been determined to be unlawful loan products. Yet rather than focus on the alleged misconduct of Plaintiffs' own advisors and FIP itself, Plaintiffs attempt to shift the blame to third parties such as Shurwest, who has nothing to do with the FIP products and, importantly, nothing to do with Minnesota.

The Complaint should be dismissed as to Shurwest because Plaintiffs have failed to plead facts sufficient to establish personal jurisdiction in Minnesota over Shurwest, which is an Arizona limited liability company headquartered in Arizona, with no offices, employees, or business operations in Minnesota. Plaintiffs bear the burden of demonstrating that the exercise of personal jurisdiction over Shurwest does not run afoul of due process. Plaintiffs realize they cannot meet this burden, and they thus attempt to impute other Defendants' jurisdictional contacts onto Shurwest through vague allegations

of some undefined collective participation in the alleged misconduct.  Other courts have rejected such attempts.  In a recent case with similar claims against Shurwest, the Superior Court of California sustained Shurwest's challenge to personal jurisdiction, concluding that Melanie Schulze-Miller—the former Shurwest employee promoting FIP products outside the scope of her employment with Shurwest, for her own benefit, and without Shurwest's authorization—"is not an agent of Shurwest," that "she does not provide the 'contact' requirement" necessary for the court to exercise personal jurisdiction over Shurwest, and that there is "insufficient evidence of any other claimed entity being an agent of Shurwest."  *Rodillas v. Minn. Life, et al.*, No. 19-ST-CV-21497, at 2 (Los Angeles Cty. Super. Ct. Jan. 6, 2020) (Rodillas Minute Order Sustaining Motion to Quash) (attached as Exhibit 1 to the Declaration of Jason Lewis ("Lewis Decl.")) (the "*Rodillas* Order"); *see also Page v. Minn. Life Ins. Co.*, 18-CV-01208, 2018 WL 7501580, at *3–4 (C.D. Cal. Dec. 3, 2018) (granting Shurwest's motion to dismiss for lack of personal jurisdiction due to insufficient allegations of Shurwest's contacts with California); *Page v. Minn. Life Ins. Co.*, No. 18-CV-01208, 2019 WL 3059561, at *5 (C.D. Cal. Mar. 11, 2019) (granting Shurwest's motion to dismiss for lack of personal jurisdiction after giving plaintiffs an opportunity to replead).

The Complaint should also be dismissed as to Shurwest for failure to state a claim, as those same vague and conclusory statements are insufficient to tie Shurwest to the alleged scheme.  Plaintiffs' allegations against Shurwest are likely vague because more specificity would have been fatal to their claims against it.  Shurwest did not promote or sell the FIP product underlying Plaintiffs' claims.  Shurwest did not authorize others to

2

promote it, and Shurwest did not receive payments from FIP or any other entity that actually was selling and referring FIP products. To the extent rogue Shurwest employees promoted or referred such products, as alleged, they did so through an independent and unaffiliated business, without Shurwest's knowledge or authorization, and outside the scope of their employment with Shurwest.

Plaintiffs' claims center around the activities of FIP and the financial advisors who allegedly recommended and caused Plaintiffs to purchase the FIP products. Plaintiffs seek to impose liability on Shurwest for something it did not do in an effort to cobble together a class action lawsuit. However, there is nothing tethering Shurwest to Minnesota (or this action) except for conclusory allegations that do not come close to meeting Plaintiffs' burden under Rules 12(b)(2) and 12(b)(6). The Court should therefore grant Shurwest's motion to dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

## II.   STATEMENT OF FACTS

### A.   Shurwest, LLC

Shurwest is an Arizona company that has not engaged in any continuous or systematic activities in Minnesota, nor has it had any contacts in Minnesota out of which Plaintiffs' claims arise. Plaintiffs do not allege otherwise. Shurwest is an independent marketing organization that markets annuities and life insurance products to financial planners and licensed insurance agents. *See* Declaration of Jim Maschek ("Maschek Decl.") ¶ 2; Compl. ¶ 38. Shurwest is based in Arizona, has its principal place of business in Scottsdale, Arizona, and is registered as a limited liability company under the

3

laws of the State of Arizona.  Maschek Decl. ¶ 3.  It does not have any offices or employees in Minnesota.  *Id*. ¶ 4.  Shurwest has never communicated with Plaintiffs.  *Id*. ¶ 6.

In early 2016, Shurwest employee Melanie Schulze-Miller ("Schulze-Miller") sought approval from Shurwest management to establish a relationship between Shurwest and FIP through which Shurwest would refer financial and investment advisors to FIP and promote FIP's structured cash flow products.  Maschek Decl. ¶¶ 9–10; Ex. A to Maschek Decl., Declaration of Melanie Schulze-Miller ("Schulze-Miller Decl.") ¶¶ 3–4. Shurwest management rejected that request.  Maschek Decl. ¶ 9; Schulze-Miller Decl. ¶ 5.  Shurwest management never approved using FIP as a funding source for individuals to make life insurance premium payments.  *Id*.  By FIP's own admission, Shurwest has "never referred any business to FIP," "contracted with FIP," or "made any compensation off the sales of FIP."  Ex. D to Maschek Decl., Letter from Michelle Garnett, FIP Senior Transaction & Operations Manager, April 7, 2018 ("Garnett Letter"); *see also* Schulze-Miller Decl. ¶¶ 6–11; Maschek Decl. ¶¶ 16–17.   Simply put, Schulze-Miller's unauthorized FIP activities were concealed and entirely separate from her employment with Shurwest.  *See id*.

### B.     Melanie Schulze-Miller and MJSM Financial LLC

On May 3, 2016, after Shurwest rejected Schulze-Miller's request to establish a referral relationship with FIP, Schulze-Miller, without Shurwest's knowledge, formed a separate entity, MJSM Financial LLC ("MJSM"), so she could become an FIP referrer separate and apart from Shurwest.  Schulze-Miller Decl. ¶ 6.  Schulze-Miller established

4

MJSM so that she could refer FIP products and obtain commissions from FIP for the sale of any such products without involving Shurwest. *Id.* Schulze-Miller formed MJSM with the express intention of keeping her FIP-related activities separate, and hidden, from Shurwest. *Id.* She did not disclose those FIP-related activities to Shurwest management. *Id.* ¶ 7. Instead, Schulze-Miller and two others acting in concert with her informed FIP, advisors, and others that their work related to FIP was separate from Shurwest. *Id.* ¶¶ 10–12; Maschek Decl. ¶¶ 11–13; Ex. B to Maschek Decl., Declaration of Michael Seabolt ("Seabolt Decl.") ¶ 12; Ex. C to Maschek Decl., Declaration of Nicholas Johnson ("Johnson Decl.") ¶ 12. In sum, Schulze-Miller wanted to conduct her FIP work on the side (because Shurwest had rejected it), reap all the commissions for herself, and keep Shurwest in the dark about her illicit extracurricular activities.

All commissions FIP paid to Schulze-Miller and her cohorts in relation to their referral of FIP products were paid directly to MJSM. Schulze-Miller Decl. ¶ 9; Seabolt Decl. ¶ 7; Johnson Decl. ¶ 7. Shurwest received no referral fees from FIP or MJSM for Schulze-Miller's or anyone else's FIP-related activities. *Id.* Thus, all acts performed by Schulze-Miller or her cohorts in relation to the promotion of FIP products were performed without the knowledge or approval of Shurwest, and outside the scope of any employment with Shurwest. Schulze-Miller Decl. ¶ 10; Seabolt Decl. ¶ 8; Johnson Decl. ¶ 8; Maschek Decl. ¶ 14.

## C.   Future Income Payments, LLC and Receivership Stay

Plaintiffs' lawsuit is the result of FIP's dubious and illegal investment products, not any actions by Shurwest. FIP bought pensions, disability payments, and other

revenue streams from veterans, retirees, and other vulnerable groups.  It then sold those revenue streams to investors—like Plaintiffs—who were seeking significant returns of the kind too good to be true.

Plaintiffs have pointedly omitted from the Complaint the individuals and entities that defrauded them.  Plaintiffs neglected to name FIP, Schulze-Miller, or MJSM.  This omission was intended to circumvent the Order issued by the U.S. District Court for the District of South Carolina, staying any action involving FIP and other FIP entities, including Schulze-Miller and MJSM.  Pending before that court is a federal criminal action against FIP based on these activities.  *See United States v. Kohn, et al.*, No. 6:19-cr-00239 (D.S.C. Mar. 12, 2019).  A receiver has been appointed over all entities with responsibility for investor losses.  Those entities include FIP, Schulze-Miller, and MJSM, but not Shurwest.  Ex. 2 to Lewis Decl., *In re: Scott A. Kohn Future Income Payments, LLC*, No. 6:19-CV-01112, Dkt. 41 at 3 (D.S.C. Mar. 3, 2020) ("Stay Order").

### D.     Plaintiffs' Claims Against Shurwest

Plaintiffs' claims center around the activities of FIP as well as the individuals and entities that allegedly solicited Plaintiffs and recommended and caused them to purchase the FIP products.  *See* Compl. ¶¶ 2, 8–9.  Specifically, Plaintiffs complain of the use of "structured cash flows" sold by FIP to fund the premiums on their life insurance policies. *Id*. ¶ 2.  Shurwest, however, has never promoted or sold the FIP product underlying Plaintiffs' claims.  Maschek Decl. ¶¶ 7–8.  Shurwest did not authorize others to promote it, and Shurwest did not receive payments from any entity that was sold and/or referred FIP products.  *Id*. ¶¶ 9, 14, 16; Garnett Letter.

6

Because the Stay Order prevents Plaintiffs from suing FIP, they now bring suit against Shurwest instead of FIP and their own financial advisors and brokers. Plaintiffs claim that Shurwest breached fiduciary duties to Plaintiffs and the putative class members, aided and abetted the breaches of fiduciary duties of other defendants, is vicariously liable for others' breaches of fiduciary duties, and was unjustly enriched, but they fail to provide more than conclusory statements and threadbare allegations to support their claims. Plaintiffs instead make reference to various alleged bad actors, most of which are not named or even identified in the Complaint, and attempt to impute their bad acts to Shurwest to paint a picture of some grand conspiracy among Defendants in this lawsuit.[1] There are simply no facts to support this theory.

Not only are Plaintiffs' allegations insufficient, but they also fail to tie Shurwest to this forum. Plaintiffs fail to allege sufficient minimum contacts by Shurwest with Minnesota subjecting Shurwest to the personal jurisdiction of this Court. Plaintiffs do not allege that Shurwest had any direct contact with Plaintiffs or the putative class members, or that Shurwest had any other contacts in Minnesota related to Plaintiffs' claims. Indeed, Plaintiffs do not identify a single action taken by Shurwest in Minnesota. The Complaint against Shurwest should therefore be dismissed.

---

[1] In support of these efforts, Plaintiffs refer to various actors throughout the Complaint without explaining their identity and confusingly define some terms but not others, making it unclear when the terms are being used interchangeably and to whom Plaintiffs are referring in each allegation. For example, at various points throughout the Complaint, Plaintiffs refer to: "Securian Defendants"; "the Securian Financial Network"; "Securian agents"; "Securian brokers"; "Network Agents"; "the agents/brokers"; "advisors"; "financial advisors"; and "brokers/advisers."

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

When a non-resident defendant such as Shurwest challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists.  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011).  Plaintiffs' assertion of jurisdiction "is subject to testing not solely on the pleadings and matters embraced by the pleadings, but 'by the affidavits and exhibits presented with the motions and in opposition thereto.'"  *Peluso v. N.J. Devils, LLC*, No. 17-CV-01299, 2018 WL 4054108, at *1 (D. Minn. Aug. 24, 2018) (quoting *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012)).  Plaintiffs may not rely on conclusory allegations or allegations of "information and belief" to establish "minimum contacts."  *Schneeweis v. Nw. Tech. Coll.*, No. 97-1742, 1998 WL 420564, at *8–9 (D. Minn. June 1, 1998).

#### B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It "must provide more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'"  *Marquardt v. City of Blaine*, 136 F. Supp. 3d 1049, 1054 (D. Minn. 2015) (quoting *Iqbal*, 556 U.S. at 678).  This Court is not required to accept as true legal conclusions couched as factual allegations.  *Marquardt*, 136 F. Supp. 3d at 1054 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "'Where a complaint pleads facts

8

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility,' and therefore must be dismissed." *Marquardt*, 136 F. Supp. 3d at 1054 (quoting *Iqbal*, 556 U.S. at 678).

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs Have Failed to Establish Personal Jurisdiction.**

This Court has explained that a Minnesota federal court may assume jurisdiction over a non-resident defendant only to the extent permitted by the Due Process Clause. *In re Municipal Stormwater Pond*, --- F.Supp.3d ----, 2019 WL 8014509, at *3 (D. Minn. Nov. 25, 2019) (citing *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007)). Due process "requires a showing that (1) defendant has had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction is in accordance with the notions of fair play and substantial justice." *Yellow Brick Road, LLC v. Childs*, 36 F. Supp. 3d 855, 866 (D. Minn. 2014); *accord Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995); *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

Courts classify cases involving out-of-state corporate defendants as within the categories of either "general" or "specific" jurisdiction. *Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011). General jurisdiction refers to the power of a state to adjudicate any cause of action involving the defendant in question, regardless of where the cause of action arose, whereas specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. *Viasystems*, 646 F.3d at 593 (citing *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Plaintiffs have not established the existence of either specific or general

9

personal jurisdiction over Shurwest in this action, and the Complaint should therefore be dismissed as to Shurwest.

**1.      This Court Lacks General Personal Jurisdiction Over Shurwest.**

Courts have established an "<u>extraordinarily</u> high threshold . . . for general jurisdiction." *Peluso*, 2018 WL 4054108, at *5 (emphasis added).  General jurisdiction exists in Minnesota over a non-resident defendant only where the defendant has "continuous and systematic" contacts with the forum state.  *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 674 (Minn. Ct. App. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)).  These contacts with Minnesota must be "so constant and pervasive as to render [it] essentially at home in the forum State."  *Daimler AG*, 571 U.S. at 122.  For this reason, general jurisdiction is typically limited to the state(s) where a corporation has "its formal place of incorporation or principal place of business."  *Id.* at 139 n.19.  Plaintiffs cannot meet this "extraordinarily high threshold."

Plaintiffs admit that Shurwest is an Arizona limited liability company. Compl. ¶ 14.  Not only is Shurwest a company registered under the laws of the State of Arizona, but it also has its principal place of business in Arizona.  Maschek Decl. ¶ 3.  On this basis alone, it is evident that Shurwest is "at home" in Arizona and not Minnesota. Moreover, Shurwest does not have any offices or employees in Minnesota.  *Id.* ¶ 4.  It does not have assets or property in Minnesota.  *Id.* ¶ 5.  Accordingly, this Court lacks general personal jurisdiction over Shurwest.

WEST/289828913

### 2. This Court Lacks Specific Personal Jurisdiction Over Shurwest.

Plaintiffs appear to allege that Shurwest is subject to personal jurisdiction in Minnesota because of certain "acts" in connection with Defendants' offerings, solicitation, sales, and issuance of insurance investment products from the State of Minnesota and/or because Shurwest is allegedly the agent of other Defendants based in Minnesota.   Compl. ¶¶ 6–7.   Plaintiffs' vague and conclusory allegations fail to demonstrate the minimum contacts needed to subject Shurwest to specific jurisdiction in this forum.   Further, the evidence submitted by Shurwest demonstrates that it did not engage in any acts in Minnesota (or elsewhere) out of which Plaintiffs' claims arise.

The Eighth Circuit considers five factors in assessing specific jurisdiction: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the forum state's interest in the litigation; and (5) the convenience to the parties.  *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. Mar. 10, 2020).  These factors overlap with those identified by the Supreme Court, and the first three are most important.  *See In re Municipal Stormwater Pond*, 2019 WL 8014509, at *3 (citing *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014)).  In short, Plaintiffs must show that Shurwest's "suit-related conduct" creates "a <u>substantial</u> connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).  They have not done so.

The first three contact-based factors from the Eighth Circuit test weigh heavily against the exercise of personal jurisdiction here for two main reasons.  *First*, though Plaintiffs' statement of jurisdiction and venue vaguely asserts that this Court has personal

11

jurisdiction over "all Defendants," including Shurwest, "as a result of acts of Defendants occurring in this State in connection with Defendants [*sic*] offerings, solicitation, sales, and issuance of insurance investments products from the State of Minnesota," Plaintiffs fail to identify what those "acts" are, nor do they include any acts specifically taken by Shurwest in Minnesota.   Compl. ¶ 7.   Such vague and conclusory allegations are insufficient to establish personal jurisdiction.  *Johnson v. Woodcock*, 444 F.3d 953, 956 (2006) (affirming dismissal because "conclusory allegations do not satisfy [the] burden to establish a prima facie case of specific jurisdiction"); *Schneeweis*, 1998 WL 420564, at *8–9.   Moreover, "[e]ach defendant's contacts with the forum State must be assessed individually."  *Calder v. Jones*, 465 U.S. 783, 790 (1984); *accord Deloney v. Chase*, 755 F. App'x 592, 596 (8th Cir. 2018) (a court has specific jurisdiction over a defendant when the plaintiff's claims "arise out of contacts that the 'defendant *himself*' creates with the forum State") (quoting *Walden*, 571 U.S. at 284).  Even if other Defendants are subject to this Court's jurisdiction, that does not make it so for Shurwest.

The remaining allegations related to Shurwest fail to mention any connection with Minnesota, much less a "substantial connection"—for example:

- Shurwest markets, promotes, and sells insurance policies to consumers and insurance professionals (Compl. ¶¶ 28, 37);

- Shurwest served as an independent marketing organization between Securian and brokers and agents (*id.* ¶ 38);

- Shurwest provided education, marketing, and distribution services to agents and brokers (*id.* ¶ 40);

- Shurwest marketed the FIP Products (it did not) to brokers at conferences, webinars, and face-to-face meetings (*id.* ¶¶ 52, 55); and

12

- ▪ Shurwest communicated with agents and brokers in effectuating transactions (*id.* ¶ 57).

Even if these allegations were true, none of them demonstrates contacts by Shurwest with Minnesota.  Plaintiffs do not allege that the brokers and agents were located in Minnesota, that any alleged meetings or conferences took place in Minnesota, or that Shurwest markets its products in Minnesota.  Indeed, the only specific conduct attributed to Shurwest for which Plaintiffs provide a location is in Paragraph 53, in which Plaintiffs claim that Shurwest employees introduced brokers and agents to the FIP Products "during meetings at the [*sic*] Shurwest's corporate headquarters and/or conferences held nearby." Shurwest's corporate headquarters are in Arizona.  Maschek Decl. ¶ 3.  In short, Plaintiffs do not and cannot allege that any of Shurwest's purported acts took place in, or have any connection to, Minnesota.

Nor did Shurwest have anything to do with the underlying misconduct related to the FIP products, which is the basis for Plaintiffs' claims.  As a result, even if Shurwest had a substantial connection with Minnesota—it does not—its contacts would be unrelated to Plaintiffs' claims and thus would be insufficient to hale it into court here. Plaintiffs' allegations focus on the conduct of certain "Shurwest employees"—employees who acted for their own benefit, outside the scope of their employment, without Shurwest's knowledge, and in direct contravention of Shurwest's policies.  *See* Compl. ¶ 40 ("[W]hen Shurwest employees sold FIP Products they received commissions from FIP."); *see also*, *e.g.*, *id*. at ¶¶ 53–54, 74 (allegations regarding Shurwest *employees*).

13

Indeed, Shurwest flatly rejected Schulze-Miller's request to establish a relationship between Shurwest and FIP through which Shurwest would refer financial and investment advisors to FIP and promote FIP's structured cash flow products. Schulze-Miller Decl. ¶¶ 3–5. Shurwest management never approved any FIP product, never referred any business to FIP, never contracted with FIP, and never made any compensation off the sales of FIP. *Id*. ¶¶ 5–11; Garnett Letter; Maschek Decl. ¶¶ 7, 16. Moreover, Schulze-Miller and her cohorts informed FIP and financial advisors that their work related to FIP was separate from Shurwest, and they never disclosed those FIP-related activities to Shurwest management. Schulze-Miller Decl. ¶¶ 7, 10–12; Seabolt Decl. ¶¶ 10, 12; Johnson Decl. ¶¶ 10, 12. In sum, Shurwest did not promote or benefit from the sale of FIP products in any way, and it did not allow its employees to do so.

As a result, any alleged actions by Shurwest employees were not related to their employment duties and were outside the limits of their work for Shurwest. Maschek Decl. ¶ 14. Faced with similar allegations against Shurwest based on the conduct of Schulze-Miller, the Superior Court of California refused to impute Schulze-Miller's conduct onto Shurwest and held that she "is not an agent of Shurwest," that "she does not provide the 'contact' requirement" necessary for the court to exercise personal jurisdiction over Shurwest, and that there is "insufficient evidence of any other claimed entity being an agent of Shurwest." *Rodillas* Order at 2. In sum, "[t]he entirety of [Schulze-Miller's, Seabolt's, and Johnson's] relationship with FIP and all the work that [they] did related to FIP was done for MJSM and not for Shurwest." Schulze-Miller Decl. ¶ 11; Seabolt Decl. ¶ 11; Johnson Decl. ¶ 11. As soon as Shurwest discovered the

14

unauthorized conduct of Schulze-Miller, Seabolt, and Johnson, they were terminated. Maschek Decl. ¶ 14.  Their FIP-related conduct cannot be imputed to Shurwest.  *See Hagen v. Burmeister & Assocs., Inc.*, 633 N.W.2d 497, 504–05 (Minn. 2001) (employer not vicariously liable for employee's misconduct where outside scope of employment and employer did not know or have reason to know about it); *Kasner v. Gage*, 161 N.W.2d 40, 42–44 (Minn. 1968) (corporation not liable for employee's conduct, carried out without its knowledge and outside scope of employment).  Moreover, because Shurwest rejected the promotion or sale of FIP and did not know that any employees were violating its policies, it had no reason to suspect that FIP-related conduct was occurring.  Shurwest thus has not established a connection with Minnesota based on the unauthorized conduct of rogue employees working under the guise of a separate entity.

Plaintiffs also assert that Shurwest entered into contracts with Defendants Minnesota Life Insurance Company ("MLIC") and Securian Life Insurance Company ("SLIC") (Compl. ¶¶ 37, 42), which Plaintiffs allege are "domiciled in the state of Minnesota" (*id.* ¶¶ 11–12).  But Shurwest cannot be pulled into this lawsuit merely because it may have conducted business with some of the other defendants.  *Vetta-Zelo, Inc. v. Ideum, Inc.*, No. Civ. 13-367, 2013 WL 3177804, at *5 (D. Minn. June 24, 2013) ("The fact that [Defendant] entered into a contract and transacted business with a Minnesota company does not alone subject [Defendant] to personal jurisdiction in Minnesota."); *see also Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 655 (8th Cir. 1982) (finding no personal jurisdiction where defendant entered into contract with forum resident but was not otherwise connected to the forum, because it did not

15

maintain offices, agents, or employees in the forum); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state.").  In *Vetta-Zelo*, for example, the defendant was a corporation located and operating in New Mexico that had contracted with the plaintiff, a Minnesota marketing agency, to act as a vendor and provide certain tables for one of the plaintiff's clients.  The plaintiff cited as evidence of the defendant's Minnesota contacts the fact that the defendant contracted with a Minnesota resident, the deal was negotiated and confirmed via telephone calls and emails between individuals in Minnesota and New Mexico, and the defendant's invoices were addressed to the plaintiff in Minnesota.  The Court found these contacts insufficient and held that the defendant was not subject to personal jurisdiction in Minnesota.  *Vetta-Zelo, Inc.*, 2013 WL 3177804, at *5–6.  A contract and interstate communications, without more, do not confer jurisdiction.  *Id.*  Plaintiffs allege nothing more here, and, more importantly, these contacts are not the contacts out of which Plaintiffs' claims arise because Shurwest had no involvement with FIP.

*Second*, Shurwest cannot be subjected to the jurisdiction of this Court simply because Plaintiffs offer conclusory allegations that "Shurwest was the Securian Defendants' agent" and the Securian Defendants are based in Minnesota.  Compl. ¶ 6. The Minnesota long-arm statute allows a court sitting in Minnesota to exercise jurisdiction over a non-resident who transacts business in Minnesota.  Minn. Stat. § 543.19.  "However, the business transacted must be that of the agent on his own behalf,

16

not on behalf of a disclosed principal." *Chamfer Eng'g, Inc. v. Tapco Int'l, Inc.*, 82 F.R.D. 33, 35 (D. Minn. 1979) (citations omitted). "[T]he actions of an agent acting for a disclosed principal bind only the principal and not the agent, subjecting only the principal to jurisdiction on the basis of contacts with the forum." *First Nat'l Bank of Minneapolis v. White*, 420 F. Supp. 1331, 1336 (D. Minn. 1976) (citing *Wash. Sci. Indus., Inc. v. Am. Safeguard Corp.*, 308 F. Supp. 736, 738 (D. Minn. 1970)). Where a defendant's "only alleged activities in Minnesota were on behalf of [its principal], those activities do not sustain the exercise of personal jurisdiction over him." *Chamfer Eng'g*, 82 F.R.D. at 35.

Plaintiffs allege that "Shurwest was the Securian Defendants' agent <u>and at all times acted on behalf of the Securian Defendants</u>." Compl. ¶ 6 (emphasis added); *see also* ¶ 43 ("Shurwest, at all times acted . . . with the actual or apparent authority of the Securian Defendants."). Even if this allegation were true (it is not), it would be insufficient to subject Shurwest to jurisdiction here because Plaintiffs contend all actions were taken on behalf of the principals (not Shurwest). Shurwest cannot be subject to personal jurisdiction in Minnesota merely because its alleged principals are Minnesota residents. And again, even if such jurisdictional contacts existed, they would have no connection to Plaintiffs' claims because Shurwest expressly refused to promote or benefit from FIP products.

The final two, non-contact-based factors of the Eight Circuit's personal jurisdiction test also weigh against Plaintiffs. Plaintiffs themselves are not Minnesota residents, so Minnesota has no real interest in providing them with a forum to litigate their claims. Even if some putative class members may be Minnesota residents—a fact

17

Plaintiffs have not pleaded—"mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. Finally, Minnesota is not a convenient forum for Shurwest. Shurwest's principal place of business is located in Arizona, and it maintains no offices, employees, assets, or property in Minnesota. Maschek Decl. ¶¶ 3–5. As a result, access to witnesses and records—predominantly located in Arizona—would be burdensome. Shurwest would incur great expense and inconvenience in defending itself in this forum.

The contacts alleged by Plaintiffs are simply insufficient to meet the constitutional minimum required for the Court to exercise personal jurisdiction over Shurwest, and Shurwest has established that it had no connection to the FIP-related conduct out of which Plaintiffs' claims arise. Shurwest therefore should be dismissed from this lawsuit.

**B.     Plaintiffs Cannot State a Valid Claim Against Shurwest.**

Even if the Court does not dismiss this action as to Shurwest for lack of personal jurisdiction, the Complaint should still be dismissed because Plaintiffs' vague and conclusory allegations are insufficient to state a claim against Shurwest under Rule 12(b)(6).

Plaintiffs attempt to impermissibly impute to Shurwest the actions of other entities and individuals—including Plaintiffs' financial advisors, whom they failed to include in this lawsuit—through vague allegations of some convoluted collective participation in the alleged misconduct. "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."

18

*Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) (collecting cases); *see id.* at 840 (granting motion to dismiss where allegations failed to "distinguish between the defendants").   Plaintiffs make generalized allegations regarding the conduct of all Defendants without identifying the specific conduct for which they seek to hold Shurwest liable.   *See, e.g.*, Compl. ¶ 60 ("Plaintiffs and the Class could no longer fund the life insurance policies sold to them by Defendants"); *id.* at ¶¶ 117–18 ("Defendants have unjustly benefitted through the illegal loan scheme . . ." and "Defendants earned these benefits at the expense of Plaintiffs . . . .").   On this basis alone, the claims against Shurwest should be dismissed.   *See Kludt v. MCF-Rush City*, No. 17-CV-3842, 2018 WL 3059680, at *4 (D. Minn. May 30, 2018), *report and recommendation adopted*, Civ. No. 17-3842, 2018 WL 3059675 (D. Minn. June 20, 2018), *aff'd*, No. 18-2704, 2019 WL 468892 (8th Cir. Jan. 23, 2019) (granting motion to dismiss and concluding plaintiff "has not asserted facts that explain what each defendant did to allegedly harm him").

### 1.     Plaintiffs' Breach of Fiduciary Duty Claim Fails.

Plaintiffs' claim for breach of fiduciary duty against Shurwest fails because the alleged "illegal loan scheme" from which their allegations arise was perpetrated by FIP and related entities and individuals—not Shurwest.   A fiduciary duty can arise only out of a fiduciary relationship, which does not exist here between Plaintiffs and Shurwest.   To establish a claim for breach of fiduciary duty against Shurwest under Minnesota law, Plaintiffs must show: (1) the existence of a fiduciary duty <u>to Plaintiffs</u>; (2) a breach of that duty; (3) causation; and (4) damages.   *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010); *Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d

19

319, 327 (Minn. 2019).   Proximate cause requires a direct relationship between the plaintiff's injury and the defendant's allegedly injurious conduct.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343–46 (2005).  Plaintiffs have not established that they or the putative class members had any fiduciary relationship with Shurwest, much less that Shurwest breached alleged duties in a way that proximately and directly caused Plaintiffs' injuries.   Indeed, there was no relationship at all between Shurwest and Plaintiffs, and Shurwest owed no duty of care to Plaintiffs.   Contrary to Plaintiffs' conclusory (and false) allegations, Shurwest did not "assume a fiduciary duty to Plaintiffs and the Class" simply because it "undertook to market to and educate" so-called "Network Agents" regarding FIP products.  *See* Compl. ¶¶ 89–90.  Even if the allegations of Shurwest's actions were true, Plaintiffs attempt to manufacture a duty where none exists.   It appears Plaintiffs are attempting to assign the duties of their own financial advisors to Shurwest.  This is not supported by the law.

A fiduciary relationship requires that "confidence is reposed on one side and there is resulting superiority and influence on the other."  *Stark v. Equitable Life Assur. Soc'y*, 285 N.W. 466, 470 (Minn. 1939).  Facts that may suffice to show a fiduciary relationship include financial control, repeated assurances, and invited confidences (although a fiduciary relationship does not exist by one party merely having faith and confidence in another). *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-CV-2310, 2006 WL 3544956, at *6 (D. Minn. Dec. 8, 2006).  Plaintiffs here do not allege that they placed faith or confidence in Shurwest as their fiduciary or that Shurwest invited such confidence or made assurances.   Nor could they, because at the time they decided—on

20

the advice of their financial advisors—to purchase the FIP products, they were likely unaware Shurwest even existed.  Moreover, as explained in detail above, Shurwest had no involvement in, or knowledge of, the sale of any FIP products.  Instead, Plaintiffs attempt to impermissibly impute the actions of other individuals—including their own financial advisors, whom they fail to include in this lawsuit—to Shurwest.  This does not satisfy their burden, and they have failed to state a breach of fiduciary duty claim against Shurwest.

### 2.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails.

Plaintiffs' conclusory statements also fail to plausibly allege that Shurwest aided and abetted the other Defendants' alleged breaches of fiduciary duty.  Under Minnesota law, Plaintiffs must show that (1) the so-called Securian Defendants committed a tort that caused an injury to Plaintiffs; (2) Shurwest knew that the Securian Defendants' conduct constituted a breach of duty; and (3) Shurwest substantially assisted or encouraged the Securian Defendants in achieving the breach(es).  *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 839 (8th Cir. 2014).  Courts have "relied on strict interpretation of the elements of aiding and abetting to preclude meritless claims."  *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186–87 (Minn. 1999).

*First*, Plaintiffs have not established that the Securian Defendants owed Plaintiffs a fiduciary duty.  "[A]t its inception, the insurer-insured relationship is not fiduciary."  *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007).  Minnesota law allows for the possibility of a fiduciary relationship between an insured

21

and an insurer only under special circumstances. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 959 (D. Minn. 2000) (dismissing breach of fiduciary duty claim by insured against MLIC where no special circumstances). But Plaintiffs allege no special circumstances here, and none exist.

*Second*, "[k]nowledge is a 'crucial element in aiding and abetting cases'" and, even assuming the Securian Defendants owed and breached fiduciary duties, Plaintiffs do not plausibly allege that Shurwest had knowledge of those breaches. *Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d 850, 857 (D. Minn. 2013) (quoting *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012)), *aff'd*, 764 F.3d 833 (8th Cir. 2014); *accord Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991) ("[T]he knowledge element is critical."). Courts stress that <u>actual</u> knowledge is required, and any circumstantial evidence must demonstrate that the alleged "aider-and-abettor *actually knew* of the underlying wrongs committed." *Varga*, 952 F. Supp. 2d at 857.

Plaintiffs state in conclusory fashion that "Defendants had actual and constructive knowledge of the illegal FIP loan" and thus breached their alleged fiduciary duties to Plaintiffs and the putative class by allegedly marketing and selling the FIP products. Compl. ¶¶ 2, 61. Absent from the Complaint, however, are any facts to support the assertion that Shurwest had actual knowledge of the "FIP illegal loan scheme." *Id.* ¶ 63. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss based on failure to state a claim. *Iqbal*, 556 U.S. at 678; *accord Stevens v. Spegal*, No. 09-CV-1394, 2010 WL 106603, at *6 (E.D. Mo. Jan. 6, 2010) (conclusory statements unsupported by factual

allegations are not entitled to an assumption of truth and do not satisfy the requirements of Rule 8).  Moreover, it is not enough to plead mere awareness of the conduct in question, that the conduct raised "red flags," or even that it amounted to gross negligence. *Varga*, 952 F. Supp. 2d at 857 (citations omitted).  And, importantly, "<u>constructive knowledge will not suffice</u>." *Id*. (emphasis added).  Plaintiffs' aiding and abetting claim should therefore be dismissed.

### 3.  Plaintiffs' Vicarious Liability Claim Fails.

Plaintiffs also claim that Shurwest is vicariously liable under the doctrine of respondeat superior for the fiduciary breaches of "Securian brokers whom Shurwest had recommended to Securian."  Compl. ¶ 113.  "Under the well-established principle of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) (citations omitted).  Vicarious liability may also be imposed when a principal-agent relationship exists between the tortfeasor and a third party. *Nadeau v. Melin*, 110 N.W.2d 29, 34 (Minn. 1961). Vicarious liability cannot be imposed on Shurwest, however, for the acts of the "Securian brokers," because Plaintiffs fail to allege: (1) either an employer-employee or a principal-agent relationship between the two; and (2) that the "Securian brokers"—who are mentioned only one other time in the Complaint and not defined—breached, or even owed, fiduciary duties to Plaintiffs.  This claim should also be dismissed.

WEST/289828913

### 4.      Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim suffers deficiencies similar to their other claims against Shurwest.  "Under Minnesota law, 'to prevail on a claim of unjust enrichment, a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful.'"  *Estate of Lane v. CMC Mortg., Inc.*, No. 14-CV-3277, 2015 WL 2195176, at *9 (D. Minn. May 11, 2015) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012)); *accord Stemmer v. Estate of Sarazin*, 362 N.W.2d 406, 408 (Minn. Ct. App. 1985) (holding that equitable doctrines of relief did not apply where there was "no mutual intention to contract so as to warrant fashioning a contract implied in fact" and where actor "made no promises to [claimant] which would have induced any action by them").  Plaintiffs do not allege an implied-in-law or quasi-contract with Shurwest.  The Complaint alleges no relationship with Shurwest or its employees, and the illegal loan scheme of which Plaintiffs complain was perpetrated by FIP, not Shurwest.  *See* Compl. ¶ 36 ("From 2012 through 2018, FIP engaged in an illegal loan scheme"). Plaintiffs allege that they lost money paid to FIP but not that Plaintiffs paid any money to Shurwest.  Moreover, an unjust enrichment "claimant must show that another party knowingly received something of value to which he was not entitled."  *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001) (emphasis added).  As above, Plaintiffs fail to plausibly allege such knowledge on Shurwest's part.  The Court should thus dismiss Plaintiffs' unjust enrichment claim along with the rest of their claims against Shurwest.

WEST/289828913

## V.      <u>CONCLUSION</u>

Shurwest had no involvement in, or knowledge of, the FIP-related fraud of which Plaintiffs complain, and Shurwest certainly was not involved in any conduct related to FIP or its products in Minnesota.  Because Plaintiffs fail to allege any factual predicate for the exercise of personal jurisdiction over Shurwest, Shurwest respectfully requests that the Court grant its motion to dismiss the Complaint as to Shurwest pursuant to Rule 12(b)(2).  Even if the Court could exercise personal jurisdiction over Shurwest consistent with constitutional due process, Plaintiffs fail to state a claim against Shurwest for which relief can be granted.  Shurwest thus requests that, in the alternative, the Court grant its Rule 12(b)(6) motion and dismiss the Complaint as to Shurwest.

Dated: April 27, 2020                    Respectfully submitted,

                                         */s/ Jason S. Lewis*
                                         _____

                                         Brooke D. Anthony (#0387559)
                                         Philip J. Kaplan (#0389351)
                                         **ANTHONY OSTLUND**
                                         **BAER & LOUWAGIE P.A.**
                                         3600 Wells Fargo Center
                                         90 South Seventh Street
                                         Minneapolis, Minnesota 55402
                                         Tel: (612) 349-6969
                                         Fax: (612) 349-6996
                                         Email: banthony@anthonyostlund.com
                                                 pkaplan@anthonyostlund.com

                                         *and*


                                         Jason S. Lewis
                                         (Texas No. 24007551 *pro hac vice*)
                                         Jason M. Hopkins
                                         (Texas No. 24059969 *pro hac vice*)
                                         **DLA PIPER LLP (US)**
                                         1900 N. Pearl St., Ste. 2200
                                         Dallas, Texas 75201
                                         Tel: (214) 743-4500
                                         Fax: (214) 743-4545
                                         Email: jason.lewis@dlapiper.com
                                                 jason.hopkins@dlapiper.com

                                         ***Attorneys for Defendant Shurwest, LLC***