Exhibit 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| In re Receiver for Scott A. Kohn, Future | ) | |
| Income Payments, LLC, Joseph P. Hipp, | ) | Civil Action No.  6:19-cv-01112-BHH |
| Kraig S. Aiken, and David N. Kenneally | ) | |
| | ) | |

**<u>PETITION FOR A RULE TO SHOW CAUSE AS TO DLA PIPER, LLC</u>**

This Court appointed Receiver Beattie B. Ashmore to collect documents and information, trace and recover funds, and take other steps to investigate a massive Ponzi scheme that was orchestrated and carried out by Scott A. Kohn ("Kohn"), Future Income Payments, LLC ("FIP"), Joseph P. Hipp ("Hipp"), Kraig S. Aiken ("Aiken"), David N. Kenneally ("Kenneally"), and numerous others, including a variety of entities that they controlled and were their alter egos.  In the Court's March 3, 2020 most recent Order concerning the Receiver's appointment ("Order"), these individuals and companies are referred to as the "FIP Receivership Entities." (Order, at 2-4).

In the course of performing his duties, the Receiver has learned that the FIP Receivership Entities retained various law firms during the course of the Ponzi scheme.  It is clear that many law firms received substantial sums of money from the FIP Receivership Entities.  As part of his duties, and standing in the shoes of these FIP Receivership Entities that hired and paid these law firms, the Receiver has requested documents, invoices, and information from the law firms about the services they performed and has sought an accounting of the funds they received.

While DLA Piper, LLC ("DLA") has produced invoices for one matter, they have

refused to produce other information, including but not limited to invoices for the remaining matters involving FIP Receivership Entities, despite multiple requests and explanations from the Receiver concerning his authority and obligation to investigate these matters. DLA was paid over $1,800,000.00 by the FIP Receivership Entities. As such, the Receiver respectfully requests that this Court enter an Order for a Rule to Show Cause as to why DLA should not be compelled to immediately produce the requested information, and for a further order requiring DLA to reimburse the Receiver for costs and attorney fees incurred in bringing this matter to the Court's attention.

BACKGROUND

On March 12, 2019, Kohn and FIP were indicted on counts of conspiracy to commit wire and mail fraud stemming from their involvement in an approximately $300 million criminal Ponzi scheme involving hundreds of victims. Thereafter, on July 9, 2019, Hipp, Aiken and Kenneally were named in a Superseding Indictment. The underlying criminal case is *United States v. Kohn, et al*, 6:19-cr-239-BHH, and is well known to the Court.

Through a series of Orders, the Court tasked the Receiver with assuming management and control over all the financial and business affairs for these Defendants as well as all other FIP Receivership Entities. The Court's most recent Order, entered March 3, 2020, requires and authorizes the Receiver to take a number of important steps to investigate and trace the proceeds of the scheme. These steps include authorizing the Receiver to "[t]ake immediate possession of all property, assets and estates owned, controlled, used, accessed or authorized by or for the benefit of the FIP Receivership Entities," including any books and records, and to [i]nvestigate the manner in which the affairs of the FIP Receivership Entities were conducted." (Order, at 4-5).

The Order also directs the FIP Receivership Entities' attorneys and agents to "deliver forthwith upon demand … books and records to the Receiver….," to "cooperate fully with the Receiver, including, if requested, appearing for deposition testimony and producing documents, upon two business days' notice (which may be sent electronically or by facsimile)," and to take "no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, or choses in action" described in the Order. (Order, at 9-10). The Order further notes that "[t]itle to all property, contracts, rights of action, and books and records of the FIP Receivership Entities, and their respective principals, wherever located, is vested by operation of law in the Receiver." (Order, at 11).

The Receiver sent letters to dozens of law firms requesting information about their work for the FIP Receivership Entities, in particular, seeking an understanding of how money sent to the law firms was spent. The Receiver stands in the shoes of the FIP Receivership Entities as the client of these law firms, and he has the right to access the same records and information that the FIP Receivership Entities would have had as original clients of the law firms. Just as the FIP Receivership Entities would have been entitled to documents, books, and records concerning the law firms' work for them and their invoices, the Receiver is entitled to that same access.

DLA was hired by the FIP Receivership Entities and was paid over $1,800,000.00 in funds, all of which came from money deposited by victims of the Ponzi scheme. On November 11, 2019, the Receiver's counsel contacted DLA and requested (a) a return of any funds currently held in retention on matters for the FIP Receivership Entities, (b) all file

material, to include all emails, documents, and other correspondence, and (c) an accounting of all invoice payments and retention funds sent to DLA, with supporting documents such as copies of checks and wires.  (November 11, 2019, letter to DLA attached hereto as Ex. A).[1]

DLA said it has no further funds in retention, and offered 8 pages of a "ledger summary" showing very basic information about payments going to DLA.  (Jan. 30, 2020 email from DLA, attached hereto as Ex. C).  As to actual invoices, DLA provided invoices for one matter out of the many it handled.  DLA has refused production of any further information, arguing incorrectly that the Receiver lacks authority to recover this information and that all other information is privileged, despite refusing to provide a privilege log, more detailed information to support such a claim, or materials that redact allegedly privileged information.  DLA explained: "We are not obligated to justify privilege assertions or provide a privilege log.  The Receiver is simply not entitled to receive confidential client data related to entities that the Receiver's authority does not encompass."  (April 23, 2020 email from DLA, attached hereto as Ex. D).

The Receiver was ordered by this Court to investigate the FIP Receivership Entities and collect funds and information, and he is left with no reasonable alternative but seeking this Court's intervention to require DLA's compliance.  At this point, the Receiver asks only that the Court order DLA to provide complete invoices and additional payment information concerning all matters it handled involving any of the FIP Receivership Entities and that, once DLA provides this information, the Receiver be permitted to obtain additional documents he deems appropriate.  As an initial production, the Receiver has simply

---

[1] Copies of relevant correspondence are attached hereto as Exhibits A through D.

requested the invoices for each matter, but should be entitled to review additional documents as his investigation proceeds.

The Receiver further respectfully requests that DLA be required to reimburse the Receiver for his costs and expenses incurred in bringing this matter to the Court's attention, as it ultimately serves to dwindle the recovery that is being sought for the ultimate benefit of the Ponzi scheme's victims.[2]

ARGUMENT

1.     <u>The Court Granted the Receiver Authority to Obtain the Information from DLA</u>

The Court's March 3, 2020 Order authorizes the Receiver to obtain the files related to DLA's representation of the FIP Receivership Entities.  The Order directs the Receiver to "[t]ake immediate possession of all property, assets and estates owned, controlled, used, accessed or authorized by or for the benefit of the FIP Receivership Entities," including any books and records, and to [i]nvestigate the manner in which the affairs of the FIP Receivership Entities were conducted."  (Order, at 4-5). The Order also directs the FIP Receivership Entities' attorneys and agents to "deliver forthwith upon demand … books and records to the Receiver…." and to "cooperate fully with the Receiver, including, if requested, … producing documents."  (Order, at 9-10).  The Order confirms that any records that the FIP Receivership Entities could have accessed can now be accessed by the Receiver, explaining that "[t]itle to all property, contracts, rights of action, and books and records of the

---

[2] The Receiver has learned that DLA recently appeared in this Court to represent Shurwest, LLC in connection with FIP receivership matters.  Shurwest, LLC was integrally involved in the underlying Ponzi scheme.  Shurwest, LLC has been sued by a substantial number of FIP victims across the country and was the employer for Melanie Jo Schulze-Miller, a person listed in the Court's Order.  (Order, at 3).

FIP Receivership Entities, and their respective principals, wherever located, is vested by operation of law in the Receiver." (Order, at 11).

There can be no legitimate dispute that the FIP Receivership Entities that retained DLA would have a right to see their own client records and files, including detailed invoices and payment information. The FIP Receivership Entities paid over $1,800,000.00 to DLA for its services, and they would have been entitled to receive – and likely did receive – invoices detailing how these funds were spent. Given the Receiver's role and the Court's Order, there is no reason that these records are beyond the scope of the Receiver's authority.

DLA's initial argument for refusing production was that it only had to produce client files on matters where only FIP and Kohn were clients, and that matters involving other FIP Receivership Entities were not within the Receiver's authority. DLA argued that the Receiver only stands in the shoes of Kohn, Hipp, Keneally and FIP, and that DLA did not have to produce all of the requested information because "[m]ost of the matters we handled for Future Income Payments involved other, third-parties as clients (i.e., clients who are not among the[se] Defendants). Accordingly, these other clients do not fall within the scope of the Receiver's authority." (*See*, *e.g.*, Jan. 27, 2020 email from DLA, attached hereto as Ex. B).

To support this argument, DLA disclosed the following file numbers, with the DLA clients listed:

- 391904-000001: Scott A. Kohn; Future Income Payments, Inc. (FIP); Pensions, Annuities and Settlements, LLC; & Cash Flow Investment Partners LLC

- 391904-000003: TBD – awaiting confirmation from responsible partner.

- 391904-000004: TBD – awaiting confirmation from responsible partner.

- 391904-000005: Scott A. Kohn; Future Income Payments, Inc. (FIP); Cash Flow Investment Partners LLC; Car Champs Finance, LLC; & AAA Auto Lease to Own Holdings LLC

- 391904-000006: Scott A. Kohn; Future Income Payments, LLC; & Cash Flow Outsourcing Services, Inc.

- 391904-000007: Scott A. Kohn & Future Income Payments, LLC

- 391904-000008: Scott A. Kohn; Future Income Payments, LLC; Buysell Annuity, Inc.; Cash Flow Investment Partners, LLC; Pension Advance, LLC; PAS California LLC; & London Square Specialty Services, LLC.

- 391904-000009: Scott A. Kohn; Future Income Payments, LLC; Pensions, Annuities and Settlements, LLC; & Cash Flow Investment Partners, LLC.

(Jan. 30, 2020 email from DLA, attached hereto as Ex. C).

DLA believes that, because the only matter where only FIP and Kohn were clients was 391904-000007 as listed above, it did not have to produce information on other files where alleged "third-parties" were joint clients with FIP and Kohn. However, the "third-parties" DLA identified included Pensions, Annuities and Settlements, LLC, Cash Flow Investment Partners LLC, AAA Auto Lease to Own Holdings LLC, and Cash Flow Outsourcing Services, Inc. – which are included in the Court's Order as being FIP Receivership Entities. (*See* Order, at 2-4). DLA has no basis for withholding information on these matters, as the Court has already determined that those clients were controlled by or alter egos of Kohn, FIP, and the other Defendants, and are therefore within the scope of the Receiver's authority.

There are two matters DLA identified that involved Car Champs Finance, LLC and Pension Advance, LLC, which are entities that are not listed as FIP Receivership Entities under the Court's Order, but this fact does not permit DLA to refuse production. Rather, Car

Champs Finance, LLC and Pension Advance, LLC were joint clients with the FIP Receivership Entities, with payment provided by FIP.  In any such joint client representation, law firms typically share information with all joint clients, lest the firms run into ethical complications about withholding information from their clients.[3]

The Receiver is simply seeking the same access to the FIP Receivership Entities' invoices and file materials that the FIP Receivership Entities once had and would have been entitled to see as DLA clients.  This is precisely the type of authority granted by the Court's Order, which confirms that "[t]itle to all property, contracts, rights of action, and books and records of the FIP Receivership Entities, and their respective principals, wherever located, is vested by operation of law in the Receiver."  (Order, at 11).  The Receiver stands in the shoes of the FIP Receivership Entities, as the client of these law firms, and has the right to access the same records and information that the FIP Receivership Entities would have had as original clients of the law firms.  *See id*.  DLA cannot legitimately refuse to provide its own clients with information about how it spent their money, and for the same reason, it cannot refuse to provide this information to the Receiver.

2.     <u>DLA Cannot Rely on Privilege to Refuse Production</u>

When the Receiver explained to DLA that the Court's Order covered all FIP Receivership Entities, not just FIP and Kohn, DLA offered a second reason why it should not have to comply, claiming the information was privileged.  This argument is misplaced and again fails to recognize that privilege is not being broken or waived, because the Receiver stands in the shoes of the FIP Receivership Entities, who were clients of the firm.  Just as it

---

[3] Engagement letters between DLA and the FIP Receivership Entities may provide information related to the sharing of information with joint clients.

would not implicate privilege if a client of a firm requests his own files and invoices, it would not implicate privilege for the Receiver standing in that client's shoes to request the same information.

Even if privilege could be an issue here, and it is not, the Order specifically permits the Receiver to "waive any attorney-client or other privilege held by Defendants." (Order, at 7). DLA has attempted to narrowly construe "Defendants" to apply just to the "named Defendants," presumably FIP, Kohn, Hipp, Aiken, and Kenneally, but this is incorrect and ignores the Court's determination that the FIP Receivership Entities were "controlled by and/or alter egos" of these Defendants. It would be non-sensical to interpret the Order as allowing the Receiver to waive privilege as to FIP, but not to any company the Court has already determined was an alter ego or controlled by FIP. Regardless, the question of privilege is a red herring, because the Receiver does not need to "waive" privilege to have the FIP Receivership Entities' law firm provide their records to him – by operation of law and the Court's Order, the Receiver stands in the shoes of these FIP Receivership Entities and has a right to these materials. A client is not "waiving privilege" when requesting its own files from a law firm.

Moreover, DLA cannot rely on privilege because it has failed to provide anything other than a blanket argument, without offering any additional information such as a privilege log or redacted documents. Generally, "the burden of establishing the applicability of the attorney-client privilege rests on the proponent of the privilege." *Zeus Enters v. Alphin Aircraft, Inc.*, 190 F.3d 238, 244 (4th Cir. 1999). Further, "[t]he proponent of the privilege must establish not only that an attorney-client relationship exists, but also that the specific communications at issue are privileged…." *Id.*

As to invoices and billing records specifically, *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999), explained that "[t]ypically, the attorney-client privilege does not extend to billing records and expense reports, unless they "also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Chaudhry*, 174 F.3d at 402 (citations omitted). Even with this possible exception, our courts have noted that a blanket assertion of privilege is not proper. *See generally*, *Baker v. Bogwarner Morse Tec*, 2012 U.S. Dist. LEXIS 203016, *5 (S.D. W. Va. May 3, 2012) ("Plaintiff's billing records are not properly withheld in their entirety on blanket assertions of attorney-client privilege and work product protection."). Similarly, in litigation between adverse parties, a party invoking the privilege has to produce a privilege log with sufficient information, along with possibly redacted documents, to carry the burden of showing why a particular privilege applies.[4]

Despite this clear authority and practice, DLA makes the assertion that "[w]e are not obligated to justify privilege assertions or provide a privilege log. The Receiver is simply not entitled to receive confidential client data related to entities that the Receiver's authority does not encompass." (April 23, 2020 email from DLA, attached hereto as Ex. D). Privilege is not a consideration here given that the Receiver has authority to seek documents and information belonging to the FIP Receivership Entities. Moreover, DLA cannot make a blanket refusal without offering any other information to carry its burden, whether in the

---

[4] Of course, the whole point here is that the Receiver is not adverse to DLA at this time. The Receiver stands in the shoes of DLA's clients, the FIP Receivership Entities.

form of a privilege log or redacted materials.[5]

3.    <u>DLA Should Produce Invoices for All Matters, Permitting the Receiver to Determine What Additional Documents Should be Provided</u>

At a minimum, and given the Receiver's charge to determine where and how the funds of the Ponzi scheme were spent, DLA should first produce all invoices from its representation of matters involving the FIP Receivership Entities.  FIP paid for the firm's services and undoubtedly did receive – or would have been entitled to receive – the invoices for these matters.  DLA has no legitimate claim to withhold their production, and should do so immediately.  After these invoices are received, the Receiver can then determine what additional documents are needed.  To avoid future disputes with DLA concerning the Receiver's authority, however, the Receiver respectfully requests that the Court enter an order confirming that DLA must provide the invoices, backup documentation (e.g., checks, wire transfers, etc.), files, communications, and any other documents concerning DLA's representation of the FIP Receivership Entities, including the matters in which the FIP Receivership Entities are jointly represented with other clients.

CONCLUSION

DLA cannot refuse to produce to the Receiver the invoices and other documents concerning its representation of the FIP Receivership Entities.  For the foregoing reasons, the Receiver respectfully requests that the Court enter a Rule to Show Cause as to why DLA should not be ordered to comply with the Receiver's requests, and ordering DLA to reimburse the Receiver for his fees and expenses incurred in bringing this matter to the

---

[5]    DLA claimed it would produce client information if the Court "ultimately amend[ed] the Order to expand the Receiver's authority."  (April 23, 2020 email from DLA, attached hereto as Ex. D).

Court's attention.  At a minimum, DLA should be ordered to produce the invoices and back up documents concerning them for any matters where DLA represented a FIP Receivership Entity, including any matter in which a FIP Receivership Entity was represented with other client(s), permitting the Receiver to review this information and thereafter request and receive any additional documents concerning the DLA representation.

Respectfully submitted,

**THE TOLLISON LAW FIRM, P.A.**

/s/<u>L. Walter Tollison, III</u>
L. Walter Tollison, III
Federal Bar No. 4117
<u>Walt.tollison@thetollisonlawfirm.com</u>
/s/<u>Lauren S. Price</u>
Lauren S. Price
Federal Bar No. 10406
<u>Lauren.price@thetollisonlawfirm.com</u>
18-B S. Markley Street
Greenville, South Carolina 29601
Phone:   (864) 451-7038
Fax:      (864) 451-7591

**VANDERBLOEMEN LAW FIRM, P.A.**

Thomas E. Vanderbloemen
Federal Bar No. 9858
<u>tom@vanderbloemenlaw.com</u>
330 East Coffee Street
Greenville, South Carolina 29601
Phone:  (864) 250-9530

*Attorneys for the Receiver*

May 12, 2020
Greenville, South Carolina

12

# EXHIBIT A

# The Tollison Law Firm, P.A.

**18-B S. Markley Street**
**Greenville, South Carolina  29601**
**Tel: 864-451-7038 | Fax: 864-451-7591**

| | |
|---|---|
| L. Walter Tollison, III.<br>Tel:  864-451-7038<br>Fax:  864-451-7591<br>walt.tollison@thetollisonlawfirm.com | Lauren S. Price<br>Tel:  864-451-7038<br>Fax: 864-451-7591<br>lauren.price@thetollisonlawfirm.com |

November 11, 2019

**<u>VIA UPS</u>**

Elisha King
General Counsel
DLA Piper LLP
500 Eighth Street, NW
Washington, DC  20004

RE:    In Re: Receiver for Scott A. Kohn, Future Income Payments, LLC
6:19-cv-01112-BHH

Dear Ms. King,

I am counsel to the Receiver, Beattie B. Ashmore, in the above referenced matter. Consistent with the authority set forth in the enclosed United States District Court Order most recently issued on July 18, 2019.  The Receiver is in the process of compelling the return of money obtained from an illegal Ponzi scheme orchestrated and carried out, in part, by Scott Kohn and Future Income Payments, LLC ("FIP").  Records indicate that DLA Piper received a significant amount of money from FIP and/or Kohn for legal services.  On behalf of the Receiver, I am hereby requesting the following:

1.   A return of any funds currently held in retention.
2.   All file material, to include all email, documents and other correspondence, related to or provided by Kohn and FIP.  This can be provided in electronic format.
3.  An accounting of all invoice payments and retention funds sent to DLA Piper by Kohn/FIP along with copies of all checks/wires submitted.  This would include copies of any funds sent by DLP Piper to Kohn/FIP.

Please contact me if you have any questions or would like to discuss further.

Very truly yours,

L. Walter Tollison, III

LWT:sbn
Enclosure
cc:    Beattie B. Ashmore, Receiver FIP-Kohn

# EXHIBIT B

**From:**         Dagostino, Alida <alida.dagostino@dlapiper.com>
**Sent:**          Monday, January 27, 2020 9:44 AM
**To:**             Walt Tollison
**Cc:**             Lauren Price; Stacy Nixon (snixon@receiverfip.com); Elizabeth Clark
                    (eclark@receiverfip.com); Peterson, Joseph
**Subject:**      RE: Scott A. Kohn, Future Income Payments

Mr. Tollison,

I appreciate your follow up and patience while we've been evaluating the Receiver's request. The receivership order granted the Receiver authority over the "Defendants" defined to include Messrs. Kohn, Hipp, Keneally and Future Income Payments LLC. The Receiver does not stand in the shoes of other entities related to one or more of these Defendants, or, by extension, appear to have authority on the basis of this order to receive their client file documents.

This poses a complication. Most of the matters we handled for Future Income Payments involved other, third-parties as clients (i.e., clients who are not among the Defendants). Accordingly, these other clients do not fall within the scope of the Receiver's authority. There is only one matter we have identified that we believe involved the representation of only Mr. Kohn and Future Income Payments. We are confirming that with the relationship attorney, and if that is accurate, we will transfer documents related to that one matter as quickly as possible.

In the meantime, per your request, I have confirmed with our finance department that there are no funds related to Future Income Payments in our client trust account.

Thank you, and I'm copying my colleague, Joe Peterson, as he will assist as we proceed.


Alida Dagostino
(312) 368-7293

# EXHIBIT C

| | |
|---|---|
| **From:** | Peterson, Joseph <joseph.peterson@dlapiper.com> |
| **Sent:** | Thursday, January 30, 2020 1:51 PM |
| **To:** | Walt Tollison; Dagostino, Alida |
| **Cc:** | Lauren Price; Stacy Nixon (snixon@receiverfip.com); Elizabeth Clark (eclark@receiverfip.com) |
| **Subject:** | RE: Scott A. Kohn, Future Income Payments |
| **Attachments:** | DLA_0000001.pdf; DLA_0000002.pdf; DLA_0000003.pdf; DLA_0000004.pdf; DLA_0000005.pdf; DLA_0000006.pdf; DLA_0000007.pdf; DLA_0000008.pdf |

Dear Mr. Tollison:

Following up on your January 27, 2020 message - we are willing to provide a ledger summary detailing the fees and costs billed and collected for each of the 8 matters for which time was billed. Attached are those reports. Below is a list identifying the clients for each respective matter:

391904-000001:  Scott A. Kohn; Future Income Payments, Inc. (FIP); Pensions, Annuities and Settlements, LLC; & Cash Flow Investment Partners LLC

391904-000003:  TBD – awaiting confirmation from responsible partner.
391904-000004:  TBD – awaiting confirmation from responsible partner.

391904-000005:  Scott A. Kohn; Future Income Payments, Inc. (FIP); Cash Flow Investment Partners LLC; Car Champs Finance, LLC; & AAA Auto Lease to Own Holdings LLC

391904-000006:  Scott A. Kohn; Future Income Payments, LLC; & Cash Flow Outsourcing Services, Inc.

391904-000007:  Scott A. Kohn & Future Income Payments, LLC

391904-000008:  Scott A. Kohn; Future Income Payments, LLC; Buysell Annuity, Inc.; Cash Flow Investment Partners, LLC; Pension Advance, LLC; PAS California LLC; & London Square Specialty Services, LLC.

391904-000009:  Scott A. Kohn; Future Income Payments, LLC; Pensions, Annuities and Settlements, LLC; & Cash Flow Investment Partners, LLC.

As you can see, the only matter that involved solely named Defendants is matter no. 7 so we are preparing file documents for that matter.   We will follow up with you when we have a better understanding of volume and our anticipated production timeline.

Regards,

**Joseph Peterson**
Attorney, Office of General Counsel

**T** +1 410.580.4679
**F** +1 410.580.3679
**M** +1 410.294.6517
**E** joseph.peterson@dlapiper.com



# EXHIBIT D

| | |
|---|---|
| **From:** | Peterson, Joseph <joseph.peterson@dlapiper.com> |
| **Sent:** | Thursday, April 23, 2020 12:58 PM |
| **To:** | Walt Tollison |
| **Cc:** | Dagostino, Alida; Lauren Price; Stacy Nixon |
| **Subject:** | RE: Future Income Payments |

Dear Walt:

On behalf of the Receiver, you requested certain client file information related to those former DLA clients whom the Court has placed within the Receiver's authority. The Receiver's authority is derived from the March 3, 2020 Court Order, which does not provide the Receiver with privilege waiver authority over any of the entities not defined as "Defendants." *See* March 3, 2020 Amended Order of Appointment at para. 6 (docket no. 41). We have provided you with the requested ledger summary and a set of invoices for the matter that DLA handled for those named Defendants. We have satisfied our ethical obligations. The additional information you seek is client confidential data for Firm clients who do not fall into the scope of the Receiver's authority. This is not a discovery issue; this is a client confidentiality issue. We are not obligated to justify privilege assertions or provide a privilege log. The Receiver is simply not entitled to receive confidential client data related to entities that the Receiver's authority does not encompass.

If the Court ultimately amends the Order to expand the Receiver's authority over these other entities, please let us know and we'll be happy to provide client file information at that time.

Regards,

**Joseph Peterson**
Attorney, Office of General Counsel

**T** +1 410.580.4679
**F** +1 410.580.3679
**M** +1 410.294.6517
**E** joseph.peterson@dlapiper.com



DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
United States
www.dlapiper.com