UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eleanor Ciofoletti, Rocco Ciofoletti, and Larry Stospal, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

Securian Financial Group, Inc., Minnesota Life Insurance Company, Securian Life Insurance Company, Shurwest, LLC, and Minnesota Mutual Companies, Inc.,

        Defendants.

Case No. 18-cv-3025 (JNE/ECW)
ORDER

Based on recommendations from financial advisors in the Securian Financial Network, Plaintiffs used a purported investment tool to fund life insurance policies. Unbeknownst to Plaintiffs, these investment tools, offered through Future Income Payments, LLC ("FIP"), were funding a multi-million-dollar fraudulent loan scheme. Shurwest, a third-party marketing organization, allegedly promoted the FIP products to Plaintiffs' financial advisors. Now, Plaintiffs seek to recover the money they lost through this scheme. They argue that by allowing financial advisors to sell the policies in conjunction with FIP products, Securian Financial Group ("Securian"), Minnesota Life Insurance Company ("MLIC"), Securian Life Insurance Company ("SLIC"), and Shurwest breached their fiduciary obligations.

Shurwest has moved to dismiss for lack of personal jurisdiction and for failure to state a claim. For the reasons discussed below, the Court may exercise specific personal jurisdiction over Shurwest because of its long history of contacts with Minnesota.

1

Although Plaintiffs have stated a claim against Shurwest for aiding and abetting a breach of fiduciary duty, they have failed to state claims for breach of fiduciary duty, vicarious liability, and unjust enrichment.

## BACKGROUND

Plaintiffs brought this class action on behalf of individuals who unwittingly invested in a predatory fraud scheme to fund indexed universal life insurance ("IUL") policies, which they purchased through Securian's network of agents and brokers, the Securian Financial Network. Second Am. Compl. ("SAC") ¶¶ 4, 16. IUL policies provide a benefit after the policyholder's death but "also offer[] tax-advantaged cash value growth" accessible throughout the policyholder's life. *Id.* ¶ 29. The interest on the cash value of the IUL is tied to a stock market index. *Id.* Securian offered these policies through two wholly-owned subsidiaries: MLIC and SLIC. *Id.* ¶¶ 11–12.

Defendant Shurwest served as an independent marketing organization ("IMO") for MLIC and SLIC. *Id.* ¶¶ 37–38. IMOs are third-party intermediaries that recruit independent insurance agents to sell particular insurance products. *Id.* When an independent agent or financial advisor sold an MLIC or SLIC policy through Shurwest, Shurwest received part of a commission from the insurer. *Id.* ¶ 40. The agent would send the application and first premium payment to Shurwest, which would screen the application to ensure it was properly completed. *Id.* ¶ 41. Then, Shurwest would send the application and payment to MLIC or SLIC. *Id.* ¶ 50.

To help Plaintiffs fund IUL premiums, Shurwest allegedly promoted investment products through Future Income Payments, LLC, ("FIP") and its subsidiaries. *Id.*

2

¶¶ 2, 46, 56. FIP would use money from investors, like Plaintiffs, to purchase a portion of a consumer's future pension income. *Id.* ¶¶ 46–47. FIP would then give the pensioner a lump sum but require it to be paid back at a high rate of interest. *Id.* Since 2014, FIP has been investigated for misconduct by government regulators, including several state attorneys general. *Id.* ¶¶ 64–66.

FIP and its founder, Scott Kohn, have been indicted by the United States for operating a Ponzi scheme. *See* Superseding Indictment, *United States v. Kohn*, 6:19-cr-239 (D.S.C. July 9, 2019), ECF No. 22. To protect funds to which the victims of the Ponzi scheme could be entitled, the court established a receivership to seize and hold any property owned, controlled, or used by Kohn and his co-conspirators. Order, *In re Receiver for Scott A. Kohn*, 6:19-cv-1112-BHH (D.S.C. Apr. 15, 2019), ECF No. 1. Although Defendants in this case are not listed as receivership entities, the receiver has noted that Shurwest "was integrally involved in the underlying Ponzi scheme." Pet. for a Rule to Show Cause, *In re Receiver for Scott A. Kohn*, 6:19-cv-1112-BHH, at 5 n.2 (D.S.C. May 12, 2020), ECF No. 45.

Plaintiffs allege that Shurwest deliberately marketed FIP products to insurance brokers and advertised them as safe and reliable financing vehicles that could fund IUL policies. SAC ¶¶ 50–54. At conferences, webinars, and in-person meetings, Shurwest employees would promote FIP products. *See, e.g.*, *id.* ¶¶ 55–57. Approximately 370 financial advisors steered their clients to FIP products to finance insurance premiums. *Id.* ¶ 59. When FIP stopped making payments to those clients in April 2018, they could no

longer fund their IUL policies. *Id.* ¶ 60. As a result, the policies lapsed and Plaintiffs faced surrender charges and other penalties. *Id.*

According to Plaintiffs, Defendants knew or should have known about the FIP scheme because their high-ranking employees attended Shurwest events promoting these products. *Id.* ¶ 63. Additionally, FIP had been subject to state regulatory investigations and enforcement actions since 2014. *Id.* ¶ 64. Plaintiffs point out that SLIC and MLIC had legal obligations under the Patriot Act and the Bank Secrecy Act to identify and mitigate the promotion and use of fraudulent financial products. *Id.* ¶¶ 67–72.

Plaintiffs brought this class action on behalf of those who used FIP products to finance Defendants' insurance policy premiums from 2012 through the present. *Id.* ¶ 16. They raised five common law claims against Securian, MLIC, SLIC (collectively, the "Securian Defendants") and Shurwest: (1) breach of fiduciary duty against the Securian Defendants; (2) breach of fiduciary duty against Shurwest; (3) aiding and abetting breach of fiduciary duty against Shurwest, (4) vicarious liability for the actions of their agents against all Defendants; and (5) unjust enrichment against all Defendants.

## DISCUSSION

Shurwest has moved to dismiss the claims made against it for lack of personal jurisdiction and failure to state a claim. Shurwest is an Arizona LLC and argues that its connections with Minnesota are too attenuated for the Court to exercise personal jurisdiction consistent with due process. Should the Court exercise personal jurisdiction, Shurwest argues that any involvement in the FIP scheme was merely the work of rogue employees and the claims against it should be dismissed.

## I.     Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, a plaintiff must first establish a prima facie case that the court can exercise jurisdiction over the defendants. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Where personal jurisdiction is challenged, "the plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quotations omitted). Without an evidentiary hearing to resolve factual disputes, the court must view the facts in the light most favorable to plaintiffs and resolve all factual disputes in their favor. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

A federal court may exercise personal jurisdiction for the purposes of a specific case if it is consistent with the law of the forum state and due process. *See id.* In this case, because "Minnesota's long-arm statute authorizes courts to exercise jurisdiction to the full extent of the Due Process Clause," the only question for the Court is whether exercising jurisdiction violates due process. *Id.* at 980 (citing *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016)). A court may exercise specific jurisdiction consistent with due process if the "defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro*, 340 F.3d at 562. This standard is satisfied where a defendant has "sufficient 'suit-related' contacts to 'create a substantial connection with' Minnesota." *Pederson*, 951 F.3d at 980 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). To evaluate these contacts, the Eighth Circuit has established a

5

five-factor test, the first three factors of which are considered primary: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). This analysis considers contacts initiated by the defendant that target "the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85.

A contract between an in-state plaintiff and out-of-state defendant alone is insufficient to establish personal jurisdiction. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014). Similarly, a choice-of-law provision in a contract is not determinative, although it may "provide further evidence of a defendant's deliberate affiliation with the forum State." *Id.* at 821–22. For example, specific jurisdiction existed where a contract established a "20-year relationship that envisioned continuing and wide-reaching contacts" by the defendant in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985); *see also Walden*, 571 U.S. at 285.

To establish minimum contacts, Plaintiffs allege that Shurwest engaged in business with Securian in Minnesota, acquired licenses to do business in Minnesota, sent insurance applications and premiums to Securian in Minnesota, and recruited and sponsored Minnesota agents to sell Securian products. As evidence of a specific instance of this activity, Plaintiffs filed a broker appointment application Shurwest submitted on behalf of a Minnesota broker. *See* Squitieri Decl. Ex. 8.

Each of these contacts (the premium payments, the applications, the contracts, the business licenses, and the insurance agent) took place in the context of a long-term relationship between Shurwest and Securian. When viewed in the aggregate, Shurwest's contacts reveal ongoing relationships and "continuing obligations" in Minnesota. *Burger King Corp.*, 471 U.S. at 475–76. For example, in its agreements with MLIC and SLIC, Shurwest created an ongoing obligation to submit insurance applications and payments to Minnesota. SAC ¶ 41. Shurwest intentionally filed a broker appointment application on behalf of a Minnesota broker and sought licenses to do business in the state. This course of conduct was not a set of random or attenuated contacts. *Cf. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (concluding that scattered emails, phone calls, and a single money transfer were too random and attenuated to satisfy the minimum contacts test). Rather, these contacts were a direct result of Shurwest's deliberate decision to market the Securian Defendants' products and screen applications on their behalf.

Shurwest argues that these contacts were unrelated to the causes of action in this case and, therefore, the Court lacks specific personal jurisdiction. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). Asserting that it had nothing to do with the fraud scheme, Shurwest claims that any potential involvement is based on the actions of a rogue Shurwest employee, Melanie Schulze-Miller. Shurwest submitted affidavits from a manager and from Schulze-Miller herself that argue that Shurwest had nothing to do with the scheme alleged by Plaintiffs. *See* Maschek Decl. ¶¶ 9–16.

7

Furthermore, Shurwest argues, the jurisdictional contacts of these employees should not be imputed to Shurwest.

On a motion to dismiss, the Court may consider affidavits from the parties but, absent an evidentiary hearing, must resolve any factual disputes in favor of Plaintiffs. *See Pederson*, 951 F.3d at 979; *Johnson*, 614 F.3d at 793–94. Shurwest's conclusory affidavits conflict with the facts alleged in Plaintiffs' complaint, which does not mention Schulze-Miller or the other employees Shurwest blames for any misconduct. Plaintiffs have alleged that Shurwest was involved in the predatory scheme by instructing financial advisors to promote IUL products in conjunction with FIP products. *See, e.g.*, SAC ¶ 52. Shurwest took these actions, in part, by contracting with the Securian Defendants, recruiting agents in Minnesota, sending premiums and applications to Securian in Minnesota, and securing business licenses in Minnesota. Viewing the facts in the light most favorable to Plaintiffs, Shurwest's contacts with Minnesota gave rise to the legal claims in this case.

In short, Plaintiffs have established that Shurwest had contacts with Minnesota related to the causes of action in this case of the nature, quality, and quantity required for the Court to exercise specific personal jurisdiction.[1] *See Johnson*, 614 F.3d at 794.

## II.     Failure to State a Claim

On a motion to dismiss under Rule 12(b)(6), the Court must determine if Plaintiffs' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a

---

[1] Because the Court has specific jurisdiction here, it will not evaluate Plaintiffs' arguments claiming that the Court has general jurisdiction over Shurwest.

8

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unlike in a challenge to personal jurisdiction, the Court should "ignore materials outside the pleadings but may consider materials that are part of the public record or do not contradict the complaint, and materials that are necessarily embraced by the pleadings." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020) (quotations omitted).

### A. Breach of Fiduciary Duty

To raise a breach of fiduciary duty claim, Plaintiffs must allege the existence of a fiduciary duty, breach, causation, and damages. *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). Whether a fiduciary relationship exists is a question of fact. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985). A fiduciary duty exists "when one person trusts and confides in another who has superior knowledge and authority." *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009). Some relationships are of a fiduciary nature per se. *See id.* (listing examples of per se relationships, including trustee-beneficiary, attorney-client, and director-corporation). In other relationships, special circumstances can give rise to de facto fiduciary obligations. *Id.* For example, although ordinary business relationships typically do not create fiduciary duties, "[e]vidence of business experience disparities, financial control, repeated assurances and invited confidences may suffice to show a fiduciary relationship." *Best Buy Stores, L.P. v. Devs. Diversified Realty Corp.*, Civil No. 05–2310 (DSD/JJG), 2006 WL 3544956, at *6 (D. Minn. Dec. 8, 2006) (collecting Minnesota

9

cases); *see St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 406 (Minn. Ct. App. 2007).

Shurwest argues that because it never interacted with Plaintiffs, it owed them no fiduciary duty. It also contends that even if it owed a duty, it did not breach that duty or cause harm. Plaintiffs argue that Shurwest had an obligation to supervise the advisors under its contracts with Securian. Funding IULs with FIP products was such a complex process, they argue, that the advisors placed a special degree of trust and confidence in Shurwest. Plaintiffs argue that this disparity between Shurwest and the advisors gave rise to a fiduciary relationship between Shurwest and Plaintiffs.

First, Plaintiffs have not alleged that Shurwest is a financial planner with per se fiduciary obligations. By statute, financial planners owe fiduciary duties to their clients. Minn. Stat. § 45.026, subd. 2. A "financial planner" is an individual or entity that indicates it is "engaged in the business of financial planning." *Id.*, subd. 1(b). There are no allegations that Shurwest promoted itself as a financial planner or that it advertised directly to consumers. *See* SAC ¶¶ 56–58. Instead, Shurwest promoted itself as a marketing organization that offered access to IUL policies and provided education and training about those policies. *See id.* ¶ 39. Because Plaintiffs do not allege that Shurwest promoted itself as a financial planner, they have not established that Shurwest owed Plaintiffs a fiduciary duty under Minn. Stat. § 45.026.

Second, Plaintiffs have not established that Shurwest owed de facto fiduciary duties. *See Swenson*, 764 N.W.2d at 601. Apart from a conclusory allegation that Plaintiffs "placed their trust and confidence in Shurwest," nothing in the complaint

alleges a direct relationship between Shurwest and Plaintiffs. SAC ¶ 91. The complaint describes Shurwest's communications with financial advisors, but not consumers. *See, e.g.*, *id.* ¶¶ 41, 55. For Plaintiffs to establish that they trusted and confided in Shurwest, they must show that they, at a minimum, had some knowledge of Shurwest. *See, e.g.*, *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972) (considering the defendant's direct relationship to the plaintiff to determine whether a de facto fiduciary obligation existed); *Swenson*, 764 N.W.2d at 602–603 (same). Here, there is no allegation that Plaintiffs even knew Shurwest existed. MLIC and SLIC had hired Shurwest to educate and supervise brokers, not to advertise products directly to consumers. *See* SAC ¶¶ 41–43. Absent allegations of any contact between Plaintiffs and Shurwest, Plaintiffs could not have plausibly placed their trust in Shurwest to the degree required to form a fiduciary relationship. *See Vacinek v. First Nat'l Bank of Pine City*, 416 N.W.2d 795, 800 (Minn. Ct. App. 1987) (requiring that the party had actually placed trust in the alleged fiduciary to establish a de facto fiduciary relationship).

Furthermore, a fiduciary relationship does not exist where one party clearly represents another party's interests. *See Swenson*, 764 N.W.2d at 602–03; *see also St. Paul Fire & Marine Ins. Co.*, 738 N.W.2d at 407. Here, Shurwest was acting as a marketing agent for MLIC and SLIC. SAC ¶¶ 40–41. As such, Shurwest was not solely representing the Plaintiffs' interests. Rather, it was expressly contracted to represent the insurers' interests by promoting and selling their products.

For these reasons, Plaintiffs have failed to establish a fiduciary relationship with Shurwest and their breach of fiduciary duty claim against Shurwest is dismissed.

## B. Aiding and Abetting a Breach of Fiduciary Duty

To allege an aiding and abetting claim, Plaintiffs must show that (1) the Securian Defendants breached a fiduciary duty to Plaintiffs, (2) Shurwest knew about that breach, and (3) Shurwest substantially assisted or encouraged the breach. *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 839 (8th Cir. 2014) (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999)). The second two elements are evaluated together, so that "where there is a minimal showing of substantial assistance, a greater showing of scienter is required." *Witzman*, 601 N.W.2d at 188 (quoting *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)).

Shurwest argues that the Securian Defendants did not breach their fiduciary duties because they were acting as insurers, not fiduciaries. Under Minnesota law, there is generally no fiduciary relationship between an insurer and insured unless special circumstances exist. *See Parkhill v. Minn. Mut. Life. Ins. Co.*, 174 F. Supp. 2d 951, 959 (D. Minn. 2000) (citing *Stark v. Equitable Life Assurance Soc'y*, 285 N.W. 466, 470 (Minn. 1939)).

Here, Plaintiffs have alleged that the Securian Defendants owed them a fiduciary duty by acting as a financial advisor as defined by statute. Under Minn. Stat. § 45.026, a corporation that advertises itself as a financial planner owes fiduciary duties to its clients. Plaintiffs alleged that Securian promoted its network of employees and representatives as financial advisors. SAC ¶¶ 34–36. Securian and its subsidiaries offered IUL policies as an investment tool and recommended that customers seek financial advice. *Id.* ¶¶ 44–45. Although Securian offered these services through individual advisors and brokers, the

12

statute broadly defines "financial planner" to encompass corporate entities that purport to be "engaged in the business of financial planning." *See* Minn. Stat. § 45.026, subd. 1(a)–(b). Securian indicated that it was engaged in this business by advertising its financial planning services on its website. *See* SAC ¶ 34. Therefore, Plaintiffs have alleged that the Securian Defendants were not acting as insurers, but as financial advisors. *See, e.g.*, *State ex rel. Swanson v. Am. Family Prepaid Legal Corp.*, No. A11-1848, 2012 WL 2505843, at *5 (Minn. Ct. App. 2012) (holding that defendants, including an insurance company that sold annuities, were acting as financial advisors under Minn. Stat. § 45.026).

In addition to alleging that the Securian Defendants owed Plaintiffs fiduciary duties, Plaintiffs have adequately alleged that Securian breached those duties.[2] They alleged that FIP products were known to be illegal and predatory and, by permitting its agents to promote FIP investments, the Securian Defendants failed to act in the best interests of Plaintiffs. SAC ¶¶ 63–66. In the context of the aiding and abetting claim against Shurwest, the complaint therefore alleges a breach of fiduciary duty against the Securian Defendants.

Next, Shurwest argues that Plaintiffs have not alleged that Shurwest knew the Securian Defendants breached a fiduciary duty. *See Varga*, 764 F.3d at 839. When evaluating the degree of knowledge and level of assistance in an aiding and abetting claim, courts will consider "[f]actors such as the relationship between the defendant and

---

[2] The Securian Defendants have not moved to dismiss Plaintiffs' breach of fiduciary duty claim against them and Shurwest has not argued that the complaint fails to allege a breach of fiduciary duty against the Securian Defendants. Instead, Shurwest has only argued that the Securian Defendants owed no fiduciary duty.

13

the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind." *Witzman*, 601 N.W.2d at 188.

Here, Plaintiffs allege that Shurwest promoted FIP loans as a funding mechanism for IUL premiums and encouraged brokers to use FIP products. SAC ¶¶ 52–54, 58. Shurwest claimed to have vetted FIP products and encouraged their use, even though FIP had been investigated for misconduct by state regulators since 2014. *Id.* ¶¶ 62–67. Shurwest argues that these allegations alone are insufficient to establish knowledge. However, when evaluating this element, the Court may also consider the relationship between Shurwest and the Securian Defendants and nature of the tortious activity. *See Witzman*, 601 N.W.2d at 188. As an IMO, Shurwest was responsible for promoting Securian products to independent brokers and did so, in part, by pitching FIP products as a financing tool. *See, e.g.*, SAC ¶¶ 52–55. Shurwest supported IUL sales by offering financial products that would help cover IUL premiums. *Id.* ¶ 40. Shurwest also provided education to independent brokers about FIP products. *Id.* ¶ 53. The nature of Shurwest's activity promoting FIP products and its relationship to the Securian Defendants support Plaintiff's claim that Shurwest knew about the alleged breach of fiduciary duty.

Finally, the knowledge element must be evaluated in conjunction with the third element, which requires Plaintiffs to allege that Shurwest substantially assisted or encouraged the Securian Defendants' breach of fiduciary duty. *Witzman*, 601 N.W.2d at 188. Plaintiffs' allegations related to Shurwest's knowledge of the breach also support the claim that Shurwest assisted in the Securian Defendants' breach of fiduciary duty. In fact,

14

Plaintiffs allege that agents in the Securian Financial Network would not have known about FIP products without Shurwest's involvement. SAC ¶ 103. The allegations related to Shurwest's FIP-related marketing, education, and promotion efforts further establish that Shurwest encouraged the Securian Defendants' agents to use FIP products. *See, e.g.*, *id.* ¶¶ 52–57. For example, Plaintiffs alleged that Shurwest hosted events recommending the use of FIP products. *Id.* ¶ 55.

After evaluating the knowledge and substantial assistance elements together, the Court concludes that Plaintiffs have adequately alleged these elements and have therefore stated an aiding and abetting claim against Shurwest.

## C. Vicarious Liability

Plaintiffs seek to hold Shurwest liable for actions of independent brokers who sold FIP-financed IUL policies. They argue that the brokers breached their fiduciary duties to Plaintiffs while acting as Shurwest's agents. Principals may be held liable for torts committed by their agents. *See Urban ex rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 160 (Minn. Ct. App. 2005) (citing *Nadeau v. Melin*, 110 N.W.2d 29, 34 (Minn. 1961)). A principal-agent relationship exists where the principal holds the right to control the work of the agent. *Id.* "The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done." *Id.* (emphasis in original) (quoting *Frankle v. Twedt*, 47 N.W.2d 482, 487 (Minn. 1951)). Whether an agency relationship exists is a fact question. *PMH Props. v. Nichols*, 263 N.W.2d 799, 802 (Minn. 1978).

Here, Plaintiffs have not alleged that Shurwest controlled the work of Securian Network brokers. They allege that "Shurwest provided education, marketing, and distribution services to both agents and brokers" and that the brokers "were further directed by Shurwest to arrange for Plaintiffs . . . to pay a lump sum to FIP." SAC ¶¶ 40, 56. While Shurwest gave some direction to the brokers, these allegations do not demonstrate that Shurwest had control over their daily activities. *See Halsne v. Avera Health*, No. 12-cv-2409 (SRN/JJG), 2014 WL 1153504, at *8 (D. Minn. Mar. 21, 2014) (concluding that even where an entity had general control over the governance of another organization, it could not establish a principal-agent relationship without control over the organization's daily activities). Therefore, Plaintiffs have not stated a claim for vicarious liability against Shurwest on a theory of respondeat superior.[3]

## D.  Unjust Enrichment

To state a claim for unjust enrichment, Plaintiffs must allege that Shurwest "knowingly received something of value to which [it] was not entitled and that the circumstances are such that it would be unjust for [it] to retain the benefit." *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004). This equitable doctrine requires Plaintiffs to establish a quasi-contract or a contract implied-in-law. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). The doctrine does not apply where there is an enforceable contract or where an incidental

---

[3] Because only Shurwest has brought this motion to dismiss, the claim for vicarious liability, described in Count 4 of the Second Amended Complaint, survives with respect to all other defendants.

16

third party seeks to enforce a contract. *Id.* at 838–39. An unjust enrichment claim lies where "a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). "Unjust enrichment may be founded on failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another." *Mon-Ray, Inc.*, 677 N.W.2d at 440 (quotations omitted).

Here, Plaintiffs allege that Shurwest received commissions from the Securian Defendants and from FIP at their expense. SAC ¶ 40. The complaint notes that IMOs like Shurwest are generally compensated "based on a percentage of agent sales volume." *Id.* ¶ 38. These allegations are insufficient to establish the direct relationship required for an unjust enrichment claim. *See Caldas*, 820 N.W.2d at 838 (collecting cases that require a direct, quasi-contractual relationship between the parties). There was no implied agreement or payment between Plaintiffs and Shurwest. *Cf. Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 494 (Minn. 1971) (holding that a quasi-contract existed where there was an implied agreement regarding a payment between a landlord and tenant). On the contrary, the complaint suggests that Shurwest did not receive any payments from Plaintiffs but was instead paid by the Securian Defendants based on total sales volume. *See* SAC ¶ 38. Without a direct connection to Shurwest, Plaintiffs are attempting to allege an unjust enrichment claim against Shurwest based on its relationship with the Securian Defendants, which was governed by contract. But as a third party to those contracts, Plaintiffs cannot raise a claim for unjust enrichment. *See*

17

*Caldas*, 820 N.W.2d at 838. Therefore, their unjust enrichment claim against Shurwest is dismissed.[4]

## CONCLUSION

The Court may exercise specific personal jurisdiction over Shurwest with respect to the actions alleged in this case. Plaintiffs' claims against Shurwest for breach of fiduciary duty, vicarious liability, and unjust enrichment against Shurwest are dismissed.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Shurwest, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 134] is GRANTED IN PART AND DENIED IN PART.

2. Count 2 of Plaintiffs' Second Amended Complaint is DISMISSED.

3. Count 4 of Plaintiffs' Second Amended Complaint is DISMISSED with respect to Defendant Shurwest.

4. Count 5 of Plaintiffs' Second Amended Complaint is DISMISSED with respect to Defendant Shurwest.

Dated: September 21, 2020

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge

---

[4] Like their claim for vicarious liability, Plaintiffs' claim for unjust enrichment is dismissed only with respect to Shurwest.