UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eleanor Ciofoletti, Rocco Ciofoletti, and Larry Stospal, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

Securian Financial Group, Inc., Minnesota Life Insurance Company, Securian Life Insurance Company, Shurwest, LLC, and Minnesota Mutual Companies, Inc.,

    Defendants.

Case No. 18-cv-3025 (JNE/ECW)
ORDER

Plaintiffs seek to represent a class of individuals who invested in an alleged Ponzi scheme operated by Future Income Payments, LLC ("FIP"). These investments were used to finance the purchase of life insurance policies sold and marketed by Defendants. The proposed class members made these transactions through their financial advisors, who were agents authorized to sell life insurance from Minnesota Life Insurance Company. Shurwest, LLC was contracted by Minnesota Life to market these insurance policies and to provide training to the insurance brokers.

Plaintiffs have sued Securian Financial Group, Inc., Minnesota Life, Securian Life Insurance Company, Minnesota Mutual Companies, Inc. (collectively the "Securian Defendants"), and Shurwest to recover the losses they suffered when FIP collapsed. Now, they seek class certification under Federal Rule of Civil Procedure 23(b)(3) on their breach of fiduciary duty claim against the Securian Defendants and on their aiding and

1

abetting claim against Shurwest. Because the individualized inquiries required to determine whether the Securian Defendants owed the class members a fiduciary duty will predominate over the common questions presented, Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs seek to represent individuals who purchased indexed universal life insurance ("IUL") policies through Securian's network of agents and brokers, the Securian Financial Network. Second Am. Compl. ("SAC") ¶ 1. IUL is a form of life insurance that provides a benefit after the policyholder's death but "also offers tax-advantaged cash value growth" accessible throughout the policyholder's life. *Id.* ¶ 29; Decl. of Wade Allen ("Allen Decl.") ¶ 3.

According to Wade Allen, an Advanced Marketing Consultant at Minnesota Life, the advisors in the Securian Financial Network operate as independent agents who have contracted with Minnesota Life to sell its products. Allen Decl. ¶¶ 1, 6. The brokerage contracts these agents have with Minnesota Life define a limited scope of authority and authorize agents to sell Minnesota Life products. Allen Decl. Ex. C § 4.2. The "independent agents are not captive to Minnesota Life" and can sell products from multiple insurers. Allen Decl. ¶ 6; *see* Allen Decl. Ex. C. § 4.1. For example, J. Christopher Dixon, who sold a Minnesota Life IUL policy to Plaintiff Eleanor Ciofoletti, owns a financial advising company called Black Harbor Wealth Management and sells products for many insurers. Decl. of Lee Squitieri ("Squitieri Decl.") Ex. 29 ("Eleanor Ciofoletti Dep.") 17:1–9; Decl. of Kathy Huang ("Huang Decl.") Ex. A ("Dixon Dep.") 25:19–26:9.

A searchable network of financial professionals authorized to sell Securian products is available to the public on Securian's website. Squitieri Decl. Ex. 3. The website states: "At Securian Financial, we equip our financial professionals with suitable choices to serve clients and their unique situations. Our professionals offer a range of life insurance, annuities and wealth management solutions to help you put family first." *Id.*

Defendant Shurwest was appointed as an independent marketing organization for Minnesota Life products in September 2012. SAC ¶ 38; *see* Allen Decl. ¶ 13. When an independent agent or financial advisor sold a Minnesota Life policy through Shurwest, Shurwest received a commission from the insurer. SAC ¶ 40. The agent would send the application and first premium payment to Shurwest, which would send the application and payment to Minnesota Life. *Id.* ¶¶ 41, 50.

To help individuals pay premiums, Shurwest allegedly promoted FIP loans for agents to propose to their clients. *Id.* ¶ 55. FIP would purchase a portion of the client's future pension income in exchange for a lump sum payment. *Id.* ¶ 46. FIP and its founder, Scott Kohn, have been indicted by the United States for operating a Ponzi scheme in violation of federal fraud laws. Second Superseding Indictment, *United States v. Kohn*, 6:19-cr-239 (D.S.C. Aug. 11, 2020). Plaintiffs allege that Shurwest deliberately marketed FIP products to insurance brokers and advertised them as safe and reliable financing vehicles that could fund IUL policies. SAC ¶¶ 50–54. When FIP stopped making payments to those clients in April 2018, the clients could no longer fund the life insurance policies. *Id.* ¶ 60. As a result, the policies lapsed and Plaintiffs faced surrender charges and other penalties. *Id.*

3

Beginning in 2017, Minnesota Life prohibited the use of structured cash flows, like FIP products, as a funding source for policy premiums. Allen Decl. ¶ 21; Allen Decl. Ex. F § 3.K. Minnesota Life's Wade Allen testified that the company "learned that individual agents affiliated with Shurwest recommended to Plaintiffs and putative class members that they invest in 'structured cash flows' offered by an entity unrelated to Minnesota Life called Future Income Payments, LLC ('FIP') and that, in some circumstances, they used the investment to fund the premiums on their Minnesota Life IUL policies." Allen Decl. ¶ 14. Minnesota Life determined that there were sixty-eight "Shurwest-affiliated agents who sold Minnesota Life IUL policies that were linked to an investment in FIP." *Id.* ¶ 15. Those agents' contracts with Minnesota Life were terminated. *Id.*

According to testimony of a Securian Financial Group Compliance Manager, Ruth Hallock, Minnesota Life has determined that 371 IUL policies sold between 2014 and 2018 "have been linked to the FIP premium funding strategy." Decl. of Ruth Hallock ¶ 3. 257 of those policies were sold between April 1, 2016, and September 30, 2018, the time period included in the class definition. *Id.* ¶ 4. Ms. Hallock testified that "Minnesota Life has offered to rescind all Minnesota Life IUL policies purchased in association with an investment in FIP and to refund premiums paid for those policies." *Id.* ¶ 5. Policyholders owning 202 of those policies have reached settlements with Minnesota Life and signed releases of liability. *Id.* ¶ 7; *see* Huang Decl. ¶ 2.

Three named Plaintiffs brought this case. Plaintiff Eleanor Ciofoletti purchased a Minnesota Life IUL policy through her financial advisor, Mr. Dixon. Eleanor Ciofoletti

Dep. 25:3–8. Her husband, Plaintiff Rocco Ciofoletti, managed her finances. *Id.* 46:5–12. Mr. Ciofoletti has never owned a Minnesota Life policy but was a beneficiary to his wife's policy. Squitieri Decl. Ex. 18 ("Rocco Ciofoletti Dep.") 8:24–9:1, 32:4–10. Ms. Ciofoletti gave Mr. Dixon money to invest so that she could pay the IUL premiums. *Id.* 22:17–24. Mr. Dixon told Mr. Ciofoletti that the money was invested in FIP because he thought it was a safe investment. *Id.* 25:18–23. Plaintiff Larry Stospal purchased a Minnesota Life IUL policy through a financial advisor and decided to fund the premiums through an investment in FIP. Decl. of Daniel Nordin Corrected Ex. 30 ("Stospal Dep.") 23:23–25, 32:20–33:1. Mr. Stospal testified that he paid the premiums himself because he did not receive payments from FIP. *Id.* 84:17–19, 85:13–15.

On Shurwest's Motion to Dismiss, the Court dismissed the claims against Shurwest for breach of fiduciary duty and vicarious liability. The remaining claims are (1) breach of fiduciary duty against the Securian Defendants; (2) aiding and abetting against Shurwest; (3) strict vicarious liability against the Securian Defendants; and (4) unjust enrichment against the Securian Defendants. Plaintiffs have now moved for class certification on the breach of fiduciary duty and aiding and abetting claims.

## DISCUSSION

Plaintiffs seek to certify a class of the following individuals:

> All purchasers of Indexed Universal Life insurance policies issued by Minnesota Life Insurance Company and/or Securian Life Insurance Company through Shurwest from April 1, 2016 through September 30, 2018, whose Indexed Universal Life insurance policy premiums were funded in whole or part with FIP Products brokered through Shurwest.

5

To certify a class action for damages, Plaintiffs bear the burden of satisfying the requirements of Rule 23(b)(3) and the prerequisites of Rule 23(a). *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830 (8th Cir. 2016).

Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Day*, 827 F.3d at 833 (quoting *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013)). Thus, a predominance analysis begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

An analysis under Rule 23 "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013). Accordingly, the question on class certification is not whether the plaintiffs will succeed on the merits of their claim, but whether their proof with respect to each class member "will prevail or fail in unison." *Id.* at 460.

I.  **Breach of Fiduciary Duty**

Plaintiffs have moved to certify a class on their breach of fiduciary duty claim against the Securian Defendants. The elements of a breach of fiduciary duty claim under Minnesota law are the existence of a fiduciary duty, breach, causation, and damages. *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). Whether a fiduciary relationship exists is a question of fact. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985). A fiduciary relationship exists "when confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* (quoting *Stark v. Equitable Life Assurance Soc'y*, 285 N.W. 466, 470 (Minn. 1939)). "Evidence of business experience disparities, financial control, repeated assurances and invited confidences may suffice to show a fiduciary relationship." *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, Civil No. 05-2310 (DSD/JJG), 2006 WL 3544956, at *6 (D. Minn. Dec. 8, 2006).

Plaintiffs argue that common evidence will prove that Securian Defendants owed them a per se fiduciary duty as financial planners. "Persons who represent that they are financial planners have a fiduciary duty to persons for whom services are performed for compensation." Minn. Stat. § 45.026, subd. 2. A "financial planner" is defined as an individual or entity that "on advertisements, cards, signs, circulars, letterheads, or in another manner, indicates that the person is a 'financial planner,' 'financial counselor,' 'financial adviser,' 'investment counselor,' 'investment adviser,' 'financial consultant,' or other similar designation." Minn. Stat. § 45.026, subd. 1(b).

7

To establish that Securian held itself out as a financial planner, Plaintiffs cite to life insurance policy illustrations that were generated for them by Securian. *See, e.g.*, Squitieri Decl. Ex. 8. These illustrations provided an annual estimate of the future value of their policy based on their age and premiums paid. *Id.* The cover page of these illustrations stated:

> [W]e are one of the nation's largest and strongest financial services providers. Securian provides retirement solutions, investments and insurance through our subsidiaries, including Minnesota Life. Minnesota Life issues our life insurance policies and has been a respected presence in the industry for more than a century.

*Id.* Additionally, Plaintiffs argue that Securian held itself out as a financial planner by advertising the Securian Financial Network on its website.

Plaintiffs have not identified class-wide evidence to show that Securian received compensation for providing financial advising services to the proposed class. Proof of compensation is a necessary element of proving a fiduciary duty under Minn. Stat. § 45.026, subd. 2. Plaintiffs would need to present individualized evidence for each class member to show that they paid Securian for financial planning services. Moreover, Plaintiffs have not shown that there is common evidence to answer whether Securian held itself out as a financial planner. The material on Securian's website and the illustrations describe Securian as a "financial services company" but do not answer whether the company held itself out as a financial planner, counselor, or advisor. *See* Minn. Stat. § 45.026, subd. 1(b). Securian's website advertising IUL policies and the IUL illustrations explain that it issues IUL policies as an insurance company.

For these reasons, Plaintiffs have not shown that there is evidence available that would answer whether the Securian Defendants owed them a per se fiduciary duty as financial planners on a class-wide basis. Alternatively, they argue that other factual indicia establish a fiduciary duty that could be proven on a class-wide basis with common evidence. They argue that Securian's superior business experience establishes that it acted as a fiduciary with respect to the IUL purchase and FIP investment.

While "there is no per se rule precluding the existence of a fiduciary relationship between an insurer and an insured," *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 959 (D. Minn. 2000), an insurer does not generally owe a fiduciary duty absent special circumstances, *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007) (noting that "the relationship between the insurer and the insured is primarily contract-based and not special or confidential"). Establishing special circumstances would require proof about the relationship between each class member and Securian. *See, e.g.*, *Toombs*, 361 N.W.2d at 809. For example, evidence of a "[d]isparity of business experience and invited confidence could be a legally sufficient basis for finding a fiduciary relationship." *Murphy v. Country House, Inc.*, 240 N.W.2d 507, 512 (Minn. 1976). To measure a disparity of business experience between Securian and each class member, a factfinder would need to consider each class member's understanding of IUL policies and investments. Thus, special circumstances could not be proven without analyzing evidence unique to each class member.

Each Plaintiff purchased their IUL policy through a financial advisor or insurance agent. Determining whether special circumstances existed in that situation would also

9

require analysis of each class member's relationship with his or her financial advisor. Some questions, such as the scope of each advisor's authority to act on Securian's behalf, could be answered with common evidence. However, establishing the special circumstances required for a fiduciary relationship would also require analysis of each class member's perception of and confidence in Securian.

Based on the allegations in this case, establishing a fiduciary duty would require an individualized analysis of specific evidence about each class member. Depending on the facts specific to each class member, Securian could be found to owe a fiduciary duty to some class members but not others. Thus, the breach of fiduciary duty claim would not "prevail or fail in unison." *Amgen Inc.*, 568 U.S. at 460. These individualized determinations would predominate, notwithstanding the presence of some common questions. Plaintiffs have presented some common questions, including whether Securian approved of pairing IUL policies with FIP investments and whether Securian allowed its insurance agents to promote FIP investments. But because the existence of a fiduciary duty is a fact question that is a prerequisite to reaching the other issues in this case, those issues would overwhelm the common questions and undermine the efficiencies gained by a class action. Therefore, Plaintiffs have not shown that common questions predominate on their breach of fiduciary duty claim.

## II. Aiding and Abetting

Plaintiffs have sued Shurwest for aiding and abetting in Securian's breach of fiduciary duty. To allege an aiding and abetting claim, Plaintiffs must show: (1) the Securian Defendants breached their fiduciary duties to Plaintiffs, (2) Shurwest knew

about that breach, and (3) Shurwest substantially assisted or encouraged the Securian Defendants' breach. *See Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 839 (8th Cir. 2014) (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999)). The first element of this claim requires proof that the Securian Defendants owed Plaintiffs a fiduciary duty and breached that duty. Because this essential element of the aiding and abetting claim cannot be proven on a class-wide basis for the reasons discussed above, Plaintiffs' proposed class cannot be certified on this claim. The individualized evidence that would need to be presented to establish a fiduciary duty between each class member and Securian would overwhelm any common questions about Shurwest's role in aiding and abetting Securian.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Certify Class [ECF No. 195] is DENIED.

Dated: August 12, 2021

                                      s/ Joan N. Ericksen
                                      JOAN N. ERICKSEN
                                      United States District Judge